Andrew G. Deiss (Utah Bar # 7184)
Corey D. Riley (Utah Bar # 16935)
Andrew D. Miller (Utah Bar # 19625)
DEISS LAW PC
10 West 100 South, Suite 700
Salt Lake City, UT 84101
Telephone: (801) 433-0226
deiss@deisslaw.com
criley@deisslaw.com
amiller@deisslaw.com
*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN WEBER; GAYLE WEBER; CLUB FITNESS, INC.; PETER ROSS WEBER; YOLANDA ALTAGRACIA COSME DE WEBER; COMPOSTELA LIMITED, LLC; DAVID ELTON; ALYCE WEBER; JAMES BLAISDELL; BRYSON OCKEY; KRISTINE OCKEY; CLAUDIA GRIFFIN; ERIC STAMM; THE BETTY L. GRIFFIN 1999 REVOCABLE TRUST; <br><br> *Plaintiffs,* <br><br> v. <br><br> COLLIERS INTERNATIONAL GROUP, INC.; COLLIERS INTERNATIONAL HOLDINGS (USA), INC.; COLLIERS INTERNATIONAL INTERMOUNTAIN, LLC; KEVIN LONG; MILLCREEK COMMERCIAL PROPERTIES, LLC; MILLROCK INVESTMENT FUND 1, LLC; MILLROCK INVESTMENT FUND 1 MANAGEMENT, LLC; BLAKE MCDOUGAL; SPENCER TAYLOR; SPENCER STRONG; BRENT SMITH; | **PLAINTIFFS' OPPOSITION TO THE MACHLIS DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 2:25-cv-00162 <br><br> Judge David Barlow |

MARK MACHLIS; GREEN IVY REALTY, INC.; 13 INVESTMENTS, LLC; LADY MIRA BLUE MACHLIS; THOMAS SMITH; LEW CRAMER; MATTHEW HAWKINS; GIL BOROK; DAVID JOSKER; JERALD ADAM LONG; KGL REAL ESTATE DEVELOPMENT, PLLC; SMART COVE, LLC; GTR HOLDINGS, LLC; LONG HOLDINGS, LLC; KGL ADVISORS, LLC; MARY STREET; CAMS REALTY, LLC; MOUNTAIN WEST COMMERCIAL, LLC; STEVE CATON; SARC DRAPER, LLC; ROBERT M. LEVENSON BLACKACRE 1031 EXCHANGE SERVICES LLC; ADP-MILLCREEK 2, LLC; ADP-MILLCREEK 3, LLC;

     *Defendants.*

Plaintiffs respectfully submit the following Opposition to Defendants Mark Machlis, Green Ivy Realty, Inc., Lady Mira Blue Machlis, and 13 Investments LLC's (collectively herein, the "Machlis Defendants" or simply "Defendants") Motion to Dismiss (the "Motion") (Dkt. 40).

## INTRODUCTION

The Motion asks the Court the dismiss Plaintiff's Fourth, Fifth, and Sixth Causes of Action (each based in securities fraud under state law) because, the Motion asserts, the Colliers/Long TIC interests in the Pine Bluff, Draper, Lehi, and Crockett Properties

at issue in this case are subject to a particular Utah statutory carveout[1] excluding them from the definition of securities under Utah law.  But this determination as a matter of law shouldn't be decided on a motion to dismiss, for several reasons:

Defendants' argument that Utah's statutory carveout applies is an affirmative defense, not a part of Plaintiffs' case in chief or affirmative pleading. The First Amended Complaint ("FAC") (Dkt. 4) pleads in detail that the TIC interests in this case were investments in a common enterprise with an expectation of profits dependent primarily on the efforts of others, and so were securities under federal law.  The Motion doesn't challenge this conclusion.  And because Utah securities law generally follows federal securities law in statutory language and case law interpretation, and because the FAC[2] pleads that they are securities under Utah law, the TIC interests in this case are presumptively securities under Utah law too—unless Defendants can show otherwise.

In order to do that—to show that the TIC interests here are subject to the specific Utah statutory carveout referenced—Defendants need to present specific facts about the number of owners of the TIC interests in this case and the terms of the management agreement for each.  Without establishing those facts, it can't be decided

---

[1] Utah Code § 61-1-13(1)(ee)(ii)(C).

[2] Dkt. 4.

if the carveout applies here or not.  And these facts aren't directly addressed in the FAC[3].  They are extrinsic factual questions that require discovery and so can't be ruled on through a 12(b)(6) motion.

Relatedly, the Motion doesn't present those facts or plug them into the statutory carveout analysis to reach Defendants' desired conclusion.  Even if the factual issues were addressed in the four corners of the pleadings, the Motion doesn't even assert their truth, nor perform sufficient analysis under the statute to dispositively conclude that the TIC interests in this case aren't securities under Utah law.  There isn't (and can't be) enough material in the Motion to prevail on the sought-for statutory carveout defense, and so not enough material to prevail on the Motion overall.

Finally, if the Court does find that it can conclude under 12(b)(6) standards, from the pleadings, as a matter of law, that the TIC interests in this case are subject to Utah's statutory carveout, the Motion should still not be granted in its entirety.  A finding that the TIC interests in this case aren't securities under Utah law wouldn't dispose of the Fourth, Fifth, and Sixth Causes of Action entirely, which plead for relief under multiple state statutes besides Utah's.  At most, the Motion would only warrant a limited ruling on those claims as to Utah law, but would not otherwise affect the

---

[3] Dkt. 4.

Fourth, Fifth, and Sixth Causes of Action under other state statutes, which should therefore not be dismissed.

## ARGUMENT

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if true, state a claim to relief that is plausible on its face." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1274 (10th Cir. 2023) (cleaned up).  In doing so, a court "assume[s] the truth of all well-pleaded facts in the complaint, and draw[s] all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).  "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Id.* (cleaned up).  In the Tenth Circuit, "[t]here is a low bar for surviving a motion to dismiss." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (cleaned up).

Specifically in this instance, the Motion does not appear to argue there is a failure to plead a plausible, sufficiently detailed claim.  Rather, it seeks a determination of law, based on what has been pleaded, about whether the investments in this case were securities under Utah law.  As set forth herein, that determination cannot be made without reaching matters outside of the pleadings and drawing unreasonable inferences in the Machlis Defendants' favor.  Accordingly, the Motion should be denied and the case allowed to proceed.

I.  **The FAC states a claim for securities fraud under federal law and under Utah state law (which generally follows federal securities law).**

The FAC states a case for securities fraud under federal and Utah law against the Machlis Defendants:  The TIC offerings at issue were securities; each of the Machlis Defendants was a culpable participant in marketing and selling them to Plaintiffs under false pretenses; Plaintiffs suffered damages thereby when the investment failed.[4]  Utah law additionally provides a cause of action for sale of securities by unlicensed brokers or investment advisers, which the FAC pleads against the Machlis Defendants.[5]  Utah law also provides a cause of action against those who control or materially aid primary violations, which the FAC also pleads against the Machlis Defendants.[6]  The only aspect of these three Causes of Action that the Motion challenges is whether the TIC offerings in this case were securities under Utah law.

Notably, the Motions don't contend that the TIC offerings in this case weren't securities under federal law.  This is important, because Utah securities fraud law generally follows federal securities fraud law both as to statute and case law.  *State v.*

---

[4] FAC ¶¶ 585-597, 604-614; 17 C.F.R. § 240.10b-5; Utah Code § 61-1-1.

[5] FAC ¶¶ 627-633; Utah Code § 61-1-3.

[6] FAC ¶¶ 634-638; Utah Code § 61-1-22.

*Schwenke*, 2009 UT App 345, 222 P.3d 768, 772.[7]  Specifically, the language defining securities is comparable between the Utah and federal statutes, including specific inclusion of "investment contracts" as securities.[8]  And Utah courts have formally adopted the federal *Howey* test for defining and identifying securities. *See Payable Acct. Corp. v. McKinley*, 667 P.2d 15 (Utah 1983).  If the TIC offerings are securities under federal law (which the FAC pleads, and the Motion does not dispute), then, due to identical statutory inclusion of "investment contracts," adoption of the *Howey* test, and Utah's general policy of following federal securities law in applying its own state securities fraud statute, they are presumptively securities under Utah law, as well.

The Machlis Defendants' argument to the contrary rests on a particular statutory carveout in Utah law[9]—essentially, an exception to the norm that might constitute an affirmative defense in their favor.  Under this carveout, certain types of real estate offerings (not all) which might otherwise constitute securities under Utah statute and

---

[7] "Although these federal cases are not dispositive when we are interpreting our state's securities legislation, *see State v. Larsen*, 865 P.2d 1355, 1360 (Utah 1993) ('[T]he Utah legislature has not required the courts to interpret the Utah Uniform Securities Act in lockstep with federal decisions.'), reliance on federal cases is certainly proper, *see Payable Accounting Corp. v. McKinley*, 667 P.2d 15, 17 (Utah 1983) (discussing that the Utah statute setting forth the definition of a security came from the federal version and stating that '[b]ecause most state blue sky laws and the federal securities acts are similar, states frequently rely on federal case law in interpreting state security acts')."

[8] 15 U.S.C.A. § 77b(a)(1); Utah Code §§ 61-1-13(1)(s) & (ee)(i).

[9] Utah Code § 61-1-13(1)(ee)(ii)(C).

caselaw are specifically exempted from the definition of a security. The Machlis

Defendants' Motion has the burden of showing that the carveout applies here, based

solely on the materials in the pleadings and with all reasonable inferences in Plaintiffs'

favor. As set forth below, it does not.

## II. The Motion doesn't (and can't) show sufficient facts or conduct requisite analysis to conclude that the carveout applies as a matter of law.

The specific statutory carveout is as follows, in pertinent part:

(ii)    "Security" does not include:

[...]

(C)    [...]

    (II)    an undivided fractionalized long-term estate in real property that consists of 10 or fewer owners; or

    (III)    an undivided fractionalized long-term estate in real property that consists of more than 10 owners if, when the real property estate is subject to a management agreement:

        (Aa)    the management agreement permits a simple majority of owners of the real property estate to not renew or to terminate the management agreement at the earlier of the end of the management agreement's current term, or 180 days after the day on which the owners give notice of termination to the manager; and

        (Bb)    the management agreement prohibits, directly or indirectly, the lending of the proceeds earned from the real property estate or the

use or pledge of its assets to a person or entity affiliated with or under common control of the manager. [10]

Thus (and contrary to the Motion's assertion) the carveout doesn't apply to *all* fractionalized real estate offerings.  It only applies to those which are subject to the terms of either subsections (II) or (III), and if (III), also subject to (Aa) and (Bb) thereunder.

To show that the carveout applies, the Motion would need to show how many owners there are at each relevant property (in order to determine if (II) or (III) applies based on their numerical ownership requirements), and (if there are more than 10 owners), whether the specific terms of any applicable "management agreement" match those described in (III)(Aa) or (Bb).  And because the posture is a rule 12(b)(6) motion, it needs to do so only from the allegations in the FAC itself. *Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261 (10th Cir.1991).

But the Motion doesn't address these issues at all.  The Motion completely fails to carry its burden to take a position on these factual questions and conduct the analysis on them under the statute.  Conclusory assertions that these TIC offerings were subject to some undefined management agreement won't do.  It must point to a specific management agreement with specific terms (again, from the pleadings), and

---

[10] *Id.*

explain why that agreement qualifies as a "management agreement" under Utah Code § 61-1-13(1)(ee)(ii)(C).  It must then analyze and explain how those facts, assumed from the pleadings, make the TIC offerings in this case—securities by every other measure— eligible for the carveout under the subsections of Utah Code § 61-1-13(1)(ee)(ii)(C) described above.  The Motion doesn't do any of this.

And it can't.  These facts—the total number of owners at each property, whether there was any "management agreement" under the meaning of the statute (or indeed, more than one such agreement), and whether any such undefined agreement(s) contained any of the specific terms required in subsections (Aa) and (Bb) aren't addressed in the FAC and can only be brought in through extrinsic evidence.  Findings about these factual matters would necessarily require generous inferences in the Machlis Defendants' favor.  Whether the statutory carveout applies here can't be the subject of a rule 12(b)(6) motion.

The closest the Motion comes to showing that any of the facts which the Machlis Defendants need are contained in the four corners of the FAC is that ¶¶499-500 supposedly alleges that the Colliers/Long TIC Properties were subject to a management agreement.[11]  But even to get that far, the Motion stretches beyond what the FAC actually says.  The FAC alleges that Mary Street had significant responsibilities as

---

[11] Motion at 6.

property manager, which she discharged not to Plaintiffs' advantage but knowingly to the Colliers/Long Parties benefit as a culpable participant in the overall scheme—but it doesn't mention a "management agreement," much less provide any details about one.

The existence of any such agreement (or agreements), their qualification as "management agreements" for the purposes of Utah Code § 61-1-13(1)(ee)(ii)(C), and their specific terms aren't an exception to the general rule that rule 12(b)(6) motions only contemplate matters within the four corners of the pleadings. In particular, any such agreement (or agreements) aren't "central to the plaintiff's claim," nor is it the case that "the parties do not dispute the documents' authenticity," as would be required to introduce them in a 12(b)(6) context. *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007). Nor is there any specific agreement before the Court on this argument. For the Machlis Defendants to prevail on the Motion would require numerous inferences in their favor about the existence and terms of a yet-only-hypothetical "management agreement." These issues could be the subject of discovery and further litigation, but there isn't enough material here to make the factual and legal determinations that the Motion asks for.

### III.   Plaintiffs' Fourth, Fifth, and Sixth Causes of Action survive on non-Utah legal theories.

As set forth above, the Motions should not be granted. However, if the Court does find that Utah Code § 61-1-13 applies to the TIC offerings in this case, it still would

not warrant dismissal of the Fourth, Fifth, and Sixth Causes of Action entirely. Plaintiffs have pleaded state law securities fraud based on the statutes of other states besides Utah.[12]  The Motion does not address the other state securities fraud statutes. Thus, even if the Motion is granted, and Plaintiffs are not allowed to amend, the Court's ruling should be limited to a finding as to Utah law only, not as to Plaintiffs' Fourth, Fifth, and Sixth Causes of Action in their entirety.

## CONCLUSION

The Machlis Defendants ask for a determination as a matter of law, based exclusively on what is alleged in the FAC, and with all reasonable inferences in Plaintiffs' favor, that the Colliers/Long TIC Offerings in this case are not securities under Utah Code § 61-1-13.  The Motion doesn't and can't carry that burden.  Plaintiffs respectfully request that the Court deny the Motion.

RESPECTFULLY SUBMITTED this July 18, 2025.

DEISS LAW, P.C.


/s/ Corey D. Riley
Andrew G. Deiss
Corey D. Riley
Andrew D. Miller
Attorneys for Plaintiffs

---

[12] FAC ¶¶ 615-638.