Justin T. Toth (8438)
Maria E. Windham (10761)
Nathan L. Jepson (17141)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: jtoth@rqn.com
       mwindham@rqn.com
       njepson@rqn.com

*Attorneys for Defendant Spencer Taylor*

---

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WEBER; et al., <br><br>      Plaintiffs, <br><br> v. <br><br> COLLIERS INTERNATIONAL GROUP, INC.; et al., <br><br>      Defendants. | **MOTION TO DISMISS DEFENDANTS SPENCER TAYLOR AND SMART COVE, LLC** <br><br> Case No. 2:25-CV-00162-DBB <br><br> Judge David Barlow <br><br> Magistrate Judge Dustin B. Pead |

Defendants Spencer Taylor and Smart Cove, LLC (collectively referred to as "Taylor"), by and through the undersigned counsel of record and pursuant to Rules 12(b)(6), 8(a) and 9(b) of the Federal Rules of Civil procedure, submit this Motion to Dismiss Plaintiffs' First Amended Complaint (the "Amended Complaint" or "FAC").

### RELIEF SOUGHT AND GROUNDS FOR RELIEF

Taylor moves to dismiss all claims against him, including all claims in the names of Spencer Taylor and/or his limited liability company, Smart Cove, LLC, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Spread across eighteen different cause of action, Plaintiffs' claims against Taylor (including Smart Cove, LLC) fall into six general categories: (1) claims sounding in fraud (including securities fraud), (2) other state securities violations, (3) the sale of unregistered securities, (4) state common law claims, (5) elder abuse, and (6) federal civil RICO claims.

As to the first category, each of Plaintiffs' fraud claims should be dismissed against Taylor for failure to plead facts with the particularity required by Federal Rule of Civil Procedure 9(b). The securities fraud claims should also be dismissed for the additional reason that Plaintiffs' claims do not satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").

As to the second category, Plaintiffs' securities claims under state law should be dismissed for the additional reason that they do not involve a security as a matter of Utah state law.

As to the third category, Plaintiffs' claims for sale of unregistered securities should be dismissed because Plaintiffs have failed to meet their pleading burden to show the claims are within the applicable statute of limitations.

As to the fourth category, the Amended Complaint fails to plausibly state a claim for unjust enrichment against Taylor.

As to the fifth category, the Amended Complaint fails pursuant to both Rules 8(a) and 9(b) to state a claim under the sole private cause of action under Utah's elder abuse statutes for "exploitation" of a "vulnerable adult", and certain plaintiffs' claims are barred by the applicable statute of limitations

2

As to the sixth category, the RICO claims are barred by the PSLRA and should be dismissed against Taylor because Plaintiffs assert claims under the federal securities laws.

## INTRODUCTION

The Amended Complaint, which comprises well over 750 separately numbered allegations (including misnumbered paragraphs) and spans 178 pages, is long on generalizations but short on well-pleaded facts that, if true, would state claims for relief against Taylor. Throughout the Amended Complaint, Plaintiffs make repeated, generalized assertions about allegedly fraudulent statements or omissions made by "Defendants" or the "Colliers/Long Parties" that allegedly caused harm to "Plaintiffs" collectively. But the Amended Complaint fails to support its causes of action with well-pleaded facts against Taylor. Each of Plaintiffs' causes of action is asserted by Plaintiffs collectively, even their fraud claims. The law does not permit Plaintiffs to proceed with claims that are so inadequately pleaded.

This Motion asks the Court to ignore Plaintiffs' generalizations and consider the alleged facts against Taylor that are actually set forth in the Amended Complaint. Taylor should not be forced to defend himself against claims that are so ill-defined and vaguely pleaded that he cannot discern what he is alleged to have done and to whom and the harm that allegedly resulted. Accordingly, Plaintiffs' claims against Taylor should be dismissed.

## ARGUMENT

On a motion to dismiss under Rule 12(b)(6), the court assumes that all well-pleaded factual allegations are true. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). But the Court need not consider allegations that are merely conclusory, nor is the Court bound by legal conclusions or opinions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under *Twombly*, a complaint will only survive a motion to dismiss if it pleads "enough facts to state a claim for relief that is

plausible on its face." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiffs' Complaint in this case fails to satisfy this standard.

## I.     PLAINTIFFS' SECURITIES FRAUD CLAIMS SHOULD BE DISMISSED

Plaintiffs' First Cause of Action, asserting a claim for securities fraud under Section 10(b) of the Securities and Exchange Act and Rule 10b-5, should be dismissed because (A) Plaintiffs have not pleaded any alleged false statements or omissions by Taylor with particularity, and (B) Plaintiffs' claim fails to comply with the PSLRA.

### A.     Plaintiffs Failed to Plead Their Securities Fraud Claim with Particularity

Securities fraud claims must be pleaded with particularity under Rule 9(b). *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). This requires well-pleaded factual allegations that "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Kock v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000); *see also St. Mark's Hosp.*, 895 F.3d at 745. Rule 9(b) requires that "'individual plaintiffs should identify particular defendants with whom they dealt directly . . ..'" *Arena Land & Inv. Co. v. Petty*, 906 F. Supp. 1470, 1476 (D. Utah 1994) (quoting *Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986)).

Plaintiffs' claim for securities fraud fails these basic requirements because it relies exclusively on generalized statements about the "Colliers/Long Parties" making misrepresentations to "Plaintiffs." *See, e.g.,* FAC ¶¶ 586-588. The Amended Complaint only identifies a handful of statements that are specifically attributed to Taylor, and none of them are alleged to be false, much less knowingly false. According to the Amended Complaint in November 2022, Taylor made the following representations to Plaintiffs Eric Stamm and Claudia Griffin:

1. "That any maintenance or upgrades listed on the property inspection report had been completed by the Crockett tenant"

2. "That the Crockett tenant had been compliant with achieving the maintenance obligations of its triple-net lease"

3. "That the Crockett tenant had executed a long-term lease"

4. "That the Lehi tenant had executed a long-term lease"

*See* FAC p. 90 ¶ 300.[1]

These alleged statements by Taylor cannot support a claim for securities fraud because nothing in the Amended Complaint alleges that any of these statements were false. In other words, nowhere do Plaintiffs allege that the Crockett tenant did not perform maintenance or upgrades on the property, or that the Crocket tenant failed to do maintenance required under the lease, or that the Crocket or Lehi tenants did not enter into long-term leases. *See* FAC generally.

The only other alleged statement specifically attributed to Taylor is "That McDougals' representations of fact were accurate." *See* FAC p. 90 ¶ 300. This allegation also falls far short of Rule 9(b) standard because it fails to specify the "contents of the false representations." *Kock v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). It is unclear what alleged representations of Blake McDougal Plaintiffs are referring to on page 90 paragraph 300 of the Amended Complaint.

Lacking any specific allegations of misrepresentation against Taylor, Plaintiffs instead rely on generalized statements about the "Colliers/Long Parties" making misrepresentations to "Plaintiffs." *See* FAC ¶¶ 586-588. This improper "shotgun pleading" format is a blanket attempt

---

[1] The FAC contains misnumbering from pages 83 to 91. It repeats previously used paragraph numbers 284-302 on those pages.

to capture all of Defendants without identifying which, if any, of them are responsible for specific material statements and omissions. For example, paragraph 589 of the Amended Complaint alleges that, "[t]he Colliers/Long Parties all made the material misrepresentations and omissions either through verbal or written correspondence with the Plaintiffs, or through the Marketing Materials." With respect to "Marketing Materials," the Amended Complaint recounts alleged inaccuracies in Millcreek's marketing materials at great length. But nowhere does it allege that Taylor was directly involved in any specific marketing materials. *Id.* pp. 62-72, ¶¶ 293-332.

Plaintiffs' improper "shotgun pleading," thereby denies Taylor "fair notice of the factual and legal bases for each claim *against him. See Southwell v. Allstate Property and Cas. Co.,* 2020 WL 4287194, *2 (D. Colo). As the *Southwell* court recognized:

> "The law recognizes a significant difference between notice pleading and 'shotgun' pleading." *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989). "Shotgun pleading is a type of pleading that 'contains several counts or causes of action, each of which incorporates by reference the entirety of its predecessors.'" *Elec. Payment Sys., LLC v. Elec. Payment Sols. of Am., Inc*., No. 14-cv-02624-WYD-MEH, 2018 WL 6790307, at *1 (D. Colo. Nov. 28, 2018) (quoting *Jacobs v. Credit Suisse First Boston*, No. 11-cv-00042-CMA-KLM, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011)). "[T]he shotgun pleader foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1243 (D. Colo. 2014) (quoting Jacobs, 2011 WL 4537007, at *6).

Put simply, Plaintiffs securities fraud claim against Taylor should be dismissed because the only statements specially attributed Mr. Tylor are not alleged to be false. And the remaining allegations against Taylor are in generalized, non-specific pleadings that do not satisfy Rule 9(b).

### B.    Plaintiffs Failed to Plead the Elements Required by the PLSRA

In addition to satisfying Rule 9(b), a federal securities law claim under Section 10(b) of the Exchange Act and Rule 10b-5 must also satisfy the heightened pleading requirements of the

PSLRA. Plaintiffs' claim in this case fails to do so. A plaintiff suing under Section 10(b) "bears a heavy burden at the pleading stage." *In re Level 3 Comm'ns,* 667 F.3d at 1333. To "properly" state a claim under Rule 10b-5, each Plaintiff must allege facts showing:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*In re Gold Resource Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015).

The PSLRA imposes heightened pleading requirements on the first and third elements. As to the first element, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading . . .." 15 U.S.C. § 78u–4(b)(1). As to the third element, which requires that a defendant acted with scienter, a complaint must "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphases added). "A complaint will survive [a Rule 12(b)(6) motion] . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). A court "must dismiss complaints that do not meet these requirements." *Blackmore/Cannon Dev.*, 2010 WL 1816275, *4 (citing 15 U.S.C. § 78u-4(b)(3)).

Here, Plaintiffs' securities fraud claim fails to satisfy *any* of the required elements under the PLSRA. Despite 178 pages and more than 750 individually numbered paragraphs of allegations, Plaintiffs' Amended Complaint fails to identify any allegedly untrue statements or

omissions by Taylor in connection with the purchase or sale of a security on which Plaintiffs claim to have relied to their harm.

Neither does the Amended Complaint allege particular facts showing a strong inference that Taylor acted recklessly or with an intent to defraud with respect to any particular act or omission. The Amended Complaint contains only conclusory recitations of the supposed mental state of the collective "Collier/Long Parties," making assertions about what they collectively "knew or should have known." *See, e.g.*, FAC pp. 59-62, ¶¶ 277, 279, 283, 285, 287, 289, 292. Plaintiffs do not plead facts that could establish a strong inference that any alleged act or omission of Taylor involving any particular Plaintiff was made with the required scienter. Accordingly, Plaintiffs' securities fraud claim should be dismissed.

## II. PLAINTIFFS' CLAIMS FOR THE SALE OF UNREGISTERED SECURITIES SHOULD BE DISMISSED

A plaintiff asserting claims under securities registration violations under Section 13 [15 U.S.C. § 77m] carries the affirmative "burden of pleading that their registration claims fall within the applicable one-year statute of limitations." *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1115 (N.D. Okla. 2003); *In re Biozoom, Inc. Sec. Litig.*, 93 F. Supp. 3d 801, 809 (N.D. Ohio 2015) ("In a claim for a Section 12(a)(1) violation, compliance with the statute of limitations must be affirmatively pleaded."); *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir.1985).

In this case, the Amended Complaint alleges that "Defendants" (including Taylor) engaged in the sale of unregistered securities. *See* FAC ¶¶ 598-603. These allegations are based on sales that took place in in 2020, 2021, 2022. *See* FAC ¶ 376. Plaintiffs did not file their original complaint in this matter until March 4, 2025, approximately three years after the last identified

sale. *See* Docket No. 1. Despite this significant delay, Plaintiffs make no attempt to plead any facts to show their timely compliance with Section 13. *See generally,* FAC.

In short, Plaintiffs have not carried their affirmative burden to show how the alleged securities violations fall within the one-year period, and therefore their Second Cause of Action for the sale of unregistered securities should be dismissed.

## III.    PLAINTIFFS' CONTROL PERSON LIAIBLITY CLAIMS SHOULD BE DISMISSED

Because Plaintiffs have failed to allege facts to plausibly show that Taylor had control over Millcreek Commercial, Colliers International, or any other Defendant, Plaintiffs' Third Cause of Action for control person liability under the Securities Exchange act should be dismissed.

"[T]o state a prima facie case for control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Combs v. SafeMoon LLC*, 2024 WL 1347409, at *23 (D. Utah Mar. 29, 2024), *citing Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998). "SEC regulations define 'control' as 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *Id.* at *23, *citing* 17 C.F.R. § 230.405.

In their claim for control person liability, Plaintiffs allege "Defendants" generally had control over the "Liable Persons." And "Liable Persons" is defined to refer generally to nearly all the Defendants, as they are identified in Plaintiffs' First and Second Causes of Action. *See* FAC ¶ 604. But nowhere do Plaintiffs identify the "primary violator." *Combs,* 2024 WL 1347409, at *23. And with respect to Taylor, Plaintiffs "do not plausibly allege that he had control over the management or policies" of the primary violator. *See id.* The allegations that Taylor was an

"employee" of Millcreek, an "agent" of Millrock, and a "close business associate" of some other Defendants are far from sufficient. *See* FAC ¶¶ 50, 51, 153. Likewise, Plaintiffs' generalized allegations that "Defendants" had control over the "Liable Parties" fails to satisfy *Maher*. *See* FAC ¶ 152. In cases like this, when a "plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person," then "dismissal is [the] appropriate" remedy. *Maher,* 144 F.3d at 1306; *see also Combs, LLC*, 2024 WL 1347409, at *25 (same). Accordingly, Plaintiffs' control person liability claim should be dismissed.

## IV.    PLAINTIFFS' STATE SECURITIES FRAUD AND VIOLATIONS CLAIMS SHOULD BE DISMISSED

Plaintiffs' claims for securities fraud and securities violations under Utah law, including their Fourth, Fifth, and Sixth Causes of Action, should be dismissed because the "TIC interests" at issue in this case are not securities under Utah law.

The Utah Uniform Securities Act defines a "security" to NOT include the following:

(II)    an undivided fractionalized long-term estate in real property that consists of 10 or fewer owners; or

(III)   an undivided fractionalized long-term estate in real property that consists of more than 10 owners if, when the real property estate is subject to a management agreement: (Aa) the management agreement permits a simple majority of owners of the real property estate to not renew or to terminate the management agreement at the earlier of the end of the management agreement's current term, or 180 days after the day on which the owners give notice of termination to the manager; and (Bb) the management agreement prohibits, directly or indirectly, the lending of the proceeds earned from the real property estate or the use or pledge of its assets to a person or entity affiliated with or under common control of the manager.

Utah Code Ann. § 61-1-13(1)(ee)(ii).

The Amended Complaint alleges that Plaintiffs purchased TIC interests in the Millcreek properties located at Pine Bluff, Draper, Lehi, and Crocket, subject to a management agreement

and long-term lease. Such undivided, fractionalized, long-term interests in real property are explicitly exemption from the definition of a "security" under Utah law. *See* Utah Code Ann. § 61-1-13(1)(ee)(ii). Therefore, Plaintiffs' Fourth Cause of Action alleging state law securities fraud, Fifth Cause of Action alleging state laws securities violations, and Sixth Cause of Action alleging aiding and abetting state law securities fraud should each be dismissed.

## V.    PLAINTIFFS' COMMON LAW FRAUD CLAIMS SHOULD BE DISMISSED

Plaintiffs' Seventh Cause of Action for common law fraud and Tenth Cause of Action for fraudulent concealment should be dismissed because Plaintiffs have not pled their claims with the requisite particularity. As previously noted, Rule 9(b)'s heightened pleading standard for fraud claims requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake." *TDC Lending LLC v. Private Capital Group, Inc.*, 340 F. Supp. 3d 1218, 1224 (D. Utah Sept. 13, 2018) (internal citations omitted). To meet this pleading standard, Plaintiffs must "set forth the who, what, when, where and how of the alleged fraud" and describe "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id. See also Summit Mountain Holding Grp., LLC v. Summit Vill. Dev. Lender 1*, LLC, 2024 WL 4905639, at *9 (D. Utah Nov. 27, 2024). "The elements of a fraud cause of action consist of a misrepresentation or material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Summit Mountain Holding Grp., LLC v. Summit Vill. Dev. Lender 1*, LLC, 2024 WL 4905639, at *9 (D. Utah Nov. 27, 2024).

In this case, Plaintiffs' common law fraud and fraudulent misrepresentation pleadings fail to satisfy any of the required fraud elements with respect to Taylor. The Amended Complaint does

not identify any specific miss statements or omissions made by Taylor upon which any Defendant allegedly relied to their detriment. *See generally* FAC. Instead, the Amended Complaint relies on general allegations about the "Colliers/Long Parties" making misrepresentations to "Plaintiffs." *See* FAC ¶¶ 586-588.

Neither does the Amended Complaint allege particular facts showing a strong inference that Taylor acted recklessly or with an intent to defraud with respect to any particular act or omission. Rather, the Amended Complaint contains only conclusory recitations of the supposed mental state of the collective "Collier/Long Parties," making bald assertion about what they collectively "knew of should have known." *See, e.g.*, FAC pp. 59-62, ¶¶ 277, 279, 283, 285, 287, 289, 292.

Plaintiffs do not plead facts that could establish a strong inference that any alleged act or omission of Taylor's was made with the required scienter.  Plaintiffs' vague pleading of common law fraud and fraudulent misrepresentation against Taylor does not satisfy Rule 9(b) and Plaintiffs' seventh and tenth causes of action should be dismissed.

## VI.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED

Plaintiffs' Eighth Cause of Action for negligent misrepresentation relies on the same set of facts as their common law fraud claim. This Court has recognized that under Utah law "negligent misrepresentation constitutes a form of fraud," and therefore, "the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure applies to negligent misrepresentation claims." *Logan v. Bank of Am.*, N.A., 2012 WL 5874364, at *3 (D. Utah Nov. 20, 2012). *See also Eldredge v. SecurityNational Mortg. Co.*, 2012 WL 681786, at *5 (D. Utah Jan. 25, 2012), *report and recommendation adopted sub nom. Eldredge v. Sec. Nat. Mortg. Co.*,

No. 2:11-CV-539 DS-PMW, 2012 WL 676401 (D. Utah Feb. 29, 2012) (dismissing negligent misrepresentation claim that failed to meet "the heightened pleading requirements of rule 9(b).").

Plaintiffs' Amended Complaint fails this clear requirement. For example, Plaintiffs assert that "Defendants made false representations to Plaintiffs as detailed above." *See* FAC ¶ 646. And the immediately preceding section is Plaintiffs' common law fraud claim. *See id*. Notably, Plaintiffs' negligent misrepresentation claim does not include any unique factual allegations that would distinguish it from their common law fraud claim. *See id.* ¶¶ 187-198. For the reasons stated above, Plaintiffs' generalized, non-specific pleading of their negligent misrepresentation claim against Taylor does not satisfy Rule 9(b) and their Eighth Cause of Action should be dismissed.

## VII.    PLAINTIFFS' CONSPIRACY AND AIDING AND ABETTING CLAIMS SHOULD BE DIMISSED.

Plaintiffs' Twelfth Cause of Action for Conspiracy to Engage in Tortious Conduct and Thirteenth Cause of Action for Aiding and Abetting Tortious Conduct should each be dismissed. because they are not supported by any valid claim of an underlying tort. This Court has recognized that civil conspiracy and aiding and abetting are not "viable independent causes of action that can survive on their own." *Hansing v. Utah Dep't of Nat. Res.*, No. 2:24-CV-480 DBP, 2025 WL 1676532, at *9 (D. Utah June 13, 2025). *See also Puttuck v. Gendron*, 2008 UT App 362, ¶ 21 (Finding that a claim for civil conspiracy "requires as one of its elements, an underlying tort" and therefore "in order to sufficiently plead a claim for civil conspiracy, a plaintiff is obligated to adequately plead the existence of such a tort.") (internal quotations and punctuation omitted); *Estrada v. Mendoza*, 2012 UT App 82, ¶¶ 17-18.

Plaintiffs' claims for conspiracy and aiding and abetting each rely on Plaintiffs' underlying fraud allegations. *See* FAC ¶¶ 691, 697. For the reasons stated above, each of Plaintiffs' fraud

claims should be dismissed. Because Plaintiffs' claims for conspiracy and aiding and abetting are not "viable independent causes of action that can survive on their own," they must also be dismissed. *See Hansing v. Utah Dep't of Nat. Res.*, No. 2:24-CV-480 DBP, 2025 WL 1676532, at *9 (D. Utah June 13, 2025).

## VIII.  PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED

Plaintiffs' Ninth Cause of action for breach of fiduciary duty should be dismissed against Taylor for failure to state a claim. Under Utah law, a breach of fiduciary must be based on the following four elements: "(1) a fiduciary relationship; (2) breach of the fiduciary's duty; (3) causation, both actual and proximate; and (4) damages." *First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, 2016 WL 6902473, at *25 (D. Utah Nov. 23, 2016).

To satisfy the first element, a plaintiff must plead facts sufficient to plausibly establish that a fiduciary relationship existed between the plaintiff and the defendant. Under Utah law, a fiduciary relationship only exists under specific, narrow circumstances.

> A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise and does have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.

*Fid. & Deposit Co. of Maryland v. Goran, LLC*, No. 2:17-CV-00604-TC-JCB, 2021 WL 2418624, at *2 (D. Utah June 14, 2021), *citing First. Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990).

In this case, Plaintiffs have not alleged any facts to show there was a fiduciary relationship between Taylor and Plaintiffs. The Amended Complaint contains limited allegations against

Taylor, including that he was an employee or agent of Millcreek and Millrock, is the sole member of Smart Cove, was close business associates with Kevin Long and others, was involved in marketing and selling TIC interests, was not registered with FINRA, was not registered to sell securities in Texas or Arkansas, and communicated with certain Plaintiffs about the Millcreek Properties and provided them with marketing materials. *See* FAC ¶¶ 50, 53, 153, 154, 168, 169, 198, 293, 298, 300. None of these allegations imply a fiduciary duty running from Taylor to Defendants. The mere (alleged) facts that Taylor was an employee or agent of Millcreek and Millrock who interacted with certain Plaintiffs does not create a fiduciary relationship because it does not create any "peculiar confidence" placed in Taylor. Based on these sparse allegations, Taylor was not obligated to "act primarily for the benefit" of Plaintiffs, and no Plaintiff placed their "interest or authority" in his "charge." *Fid. & Deposit Co. of Maryland v. Goran, LLC*, No. 2:17-CV-00604-TC-JCB, 2021 WL 2418624, at *2 (D. Utah June 14, 2021). Because Plaintiffs have failed to demonstrate that Taylor owed them a fiduciary duty, their breach of fiduciary duty claim against him must necessarily fail and be dismissed. *See Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, 2022 WL 36878, at *3 (D. Utah Jan. 3, 2022).

## IX.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

Plaintiffs' Eighteenth Cause of action for unjust enrichment should be dismissed against Taylor for failure to state a claim under Rule 8(a)(2). An unjust enrichment claim must establish the following three elements:

- "First, there must be a benefit conferred on one person by another."

- "Second, the conferee must appreciate or have knowledge of the benefit."

- Third, "there must be acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."

*Groberg v. Housing Opportunities, Inc.*, 68 P.3d 1015, 1019 (Utah Ct. App. 2003).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to "provide a short and plain statement of the claim showing that the pleader is entitled to relief." Under *Iqbal*, the Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and a complaint that merely alleges "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" should be dismissed under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (internal quotations and alteration omitted). With respect to unjust enrichment claims against corporate representatives, Utah federal district courts have recognized that such claims fail when "the benefit, if any, was conferred on the corporation, and not the individual defendants." *Brumbelow v. L. Offs. of Bennett & Deloney*, P.C., 372 F. Supp. 2d 615, 622–23 (D. Utah 2005).

In this case, Plaintiffs' unjust enrichment claim once again relies on generalized allegations, including that "Plaintiffs" conferred a benefit on "Defendants" by investing in the Colliers/Long TIC Properties. *See* FAC ¶ 745. And "Defendants" received a benefit "in the form of commissions or other compensation," and "Defendants" benefited from "direct use" of investment proceeds and "perpetuation of the overall scheme." *See* FAC ¶¶ 746.

These generalized allegations fail to identify any benefit conferred on Taylor, as opposed to Millcreek or other Defendants. Plaintiffs' unjust enrichment claim does not rise above "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further

factual enhancement." *Iqbal,* 556 U.S. at 678. Therefore, it fails to meet the requirements of Rule 8 and should be dismissed with respect to Taylor for failure to state a claim.

## X.    PLAINTIFFS' ELDER ABUSE CLAIM SHOULD BE DISMISSED

Utah's elder abuse statutes create a private right of action *only* for conduct that involves "exploitation" of a "vulnerable adult" by a "perpetrator." *See Williamson v. Farrell,* 2024 UT App 111, ¶¶ 34, 43, 557 P.3d 214 (interpreting Utah Code § 26B-6-213). Because Plaintiffs fail to plead facts to support the elements of a claim for financial exploitation of a vulnerable adult, their claims against Taylor are not sufficient to state a claim under Rule 8(a) and Rule 9(b).

### A.  The Elements of Utah's Private Cause of Action

"Utah Code section 26B-6-213 provides that '[a] vulnerable adult who suffers harm or financial loss as a result of *exploitation* has a private right of action against the perpetrator." *Williamson,* 2024 UT App 111, ¶ 34 (quoting Utah Code § 26B-6-213) (emphasis added). "Exploitation" is defined in Utah Code section 26B-6-201(19) to include the crime of "financial exploitation", which is further defined in section 76-5-111.4.[2] *See* Utah Code §§ 26B-6-201(19), 76-5-111.4; *Williamson,* 2024 UT App 111, ¶¶ 33-34 (citing prior section 26B-6-201(16)).

Interpreting the private cause of action for exploitation of a vulnerable adult in Utah Code section 26B-6-213(1) together with the definition of "financial exploitation" in section 76-5-111.4, the relevant private cause of action requires proof of all of the following elements:

- a plaintiff "vulnerable adult" as defined in Utah Code section 76-5-111.

- a defendant "perpetrator" who acts in one of the following ways defined in section 76-5-111.4 of the Utah's criminal code as financial exploitation of the vulnerable adult:

---

[2] There are two other categories of exploitation not relevant here: sexual exploitation and personal dignity exploitation. *See Williamson,* 2024 UT App 111, ¶ 33;  Utah Code § 26B-6-201(19).

     o   is an "actor" who, pursuant to subsection (2)(a),

is in a position of trust and confidence, or has a business relationship with the vulnerable adult or has undue influence over the vulnerable adult and knowingly, by deception or intimidation, obtains or uses, or endeavors to obtain or use, the vulnerable adult's funds, credit, assets, or other property with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the vulnerable adult's property, for the benefit of someone other than the vulnerable adult;

     o   is an "actor" who, pursuant to subsection (2)(b),

knows or should know that the vulnerable adult lacks the capacity to consent, and obtains or uses, or endeavors to obtain or use, or assists another in obtaining or using or endeavoring to obtain or use the vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the vulnerable adult's property for the benefit of someone other than the vulnerable adult;

     o   is an "actor" who, pursuant to subsection (2)(c),

unjustly or improperly uses or manages the resources of a vulnerable adult for the profit or advantage of someone other than the vulnerable adult.

     o   is an "actor" who, pursuant to subsection (2)(d),

unjustly or improperly uses a vulnerable adult's power of attorney or guardianship for the profit or advantage of someone other than the vulnerable adult; or

     o   is an "actor" who ", pursuant to subsection 2(e),

involves a vulnerable adult who lacks the capacity to consent in the facilitation or furtherance of any criminal activity.

- Harm or financial loss suffered by the vulnerable adult as a result of the exploitation.

*See* Utah Code §§ 26B-6-213(1), 76-5-111.4.

     Utah's three-year statute of limitations for liabilities created by statute applies to this claim.

*See id.* § 78B-2-305(4). And the legislature provides for fee shifting to the prevailing party under certain circumstances. "If the plaintiff prevails in an action brought under this section, the court

may order that the defendant pay the costs and reasonable attorney fees of the plaintiff." *Id.* § 26B-6-213(3). "If the defendant prevails in an action brought under this section, the court may order that the plaintiff pay the costs and reasonable attorney fees of the defendant, if the court finds that the action was frivolous, unreasonable, or taken in bad faith." *Id.* § 26B-6-213(4).

### B. Plaintiffs Do Not Plead Facts to Support Any Claim that Taylor Is the Perpetrator of a Crime of Financial Exploitation of a Vulnerable Adult

Plaintiffs fail to assert facts specific to Taylor to support any of the elements of this private cause of action for financial exploitation. They again rely on improper group pleading together with the sparce and plainly insufficient allegations about Taylor discussed *supra*.

#### i.   Plaintiffs Did Not Invest As "Vulnerable Adults"

Plaintiffs claim three individual plaintiffs qualify as "vulnerable adults" as defined in section 76-5-111, because they were over age 65 and/or had physical infirmities: Plaintiff Griffin[3] and Plaintiffs John and Gayle Weber (together, the "Elder Webers"). FAC ¶¶ 80-81, 677-678. As defined in section 76-5-111, an adult might be a "vulnerable adult" as a result of being over the age of 65. However, none of the three plaintiffs is alleged to have actually made the investments as an individual vulnerable adult. Plaintiffs do not allege Griffin, or the Elder Webers were actually incapacitated in their business dealings at the time they made their investments--or even that their ages or physical infirmities contributed to their actual investment decisions in this case. In fact, Plaintiffs pleaded that Griffin, and the Elder Webers made their investment decisions and invested jointly with close family members and/or through entities that were neither elderly nor incapacitated. Griffin made her investment jointly with Plaintiff Stamm on behalf of the Betty L.

---

[3] Actually, Plaintiffs fail to clearly allege that Griffin was over the age of 65. Paragraph 64 of the FAC alleges Griffin was 61 when she and Eric Stamm purchased TIC interests in the Lehi and Crockett Properties. Paragraph 677 alleges generally that Griffin was "65 or older".

Griffin 1999 Revocable Trust. FAC ¶¶ 90, 363. The Elder Webers' alleged investments were made by the corporation they owned, Club Fitness, Inc. FAC ¶¶ 82, 358. Further, the Elder Webers' made some or all of their investment decisions in concert with their children. *See* FAC ¶ 334 (alleging "[in part because of John and Gayle Weber's advanced age and health issues, communications meant to induce John and Gayle Weber's investment often occurred through John and Gayle's son, Ross Weber."); FAC ¶ 339 (alleging Ross Weber himself relied on Long's representations made "to induce [the Elder Webers'] prior investment"). In summary, Plaintiffs' fail to allege sufficient facts to have standing to assert claims under this statutory cause of action that they made the investments as individual vulnerable adults.

### ii.    Taylor is Not a Perpetrator of a Crime of Financial Exploitation

Each of the acts that constitute financial exploitation requires a specific criminal act by the alleged perpetrator directed at exploiting a vulnerable adult. *See generally* Utah Code section 76-5-111.4(2). Even assuming Griffin or the Elder Webers invested in TIC interests as "vulnerable adults," the Amended Complaint does not allege facts against Taylor that could constitute any of these criminal acts of financial exploitation.

First Taylor was not, factually, "in a position of trust and confidence" to Griffin or the Elder Webers under subsection 76-5-111.4(2(a). There was not even an established "business relationship" between Griffin or the Elder Webers and Taylor at the time he is alleged to have made statements about the TIC interests. Further, the Amended is entirely devoid of any facts to support any claim that Taylor acted "knowingly by deception or intimidation" to obtain Griffin's or the Elder Webers' funds and did so "with the intent to temporarily or permanently deprive" them of their funds. The Amended Complaint relies wholly on conclusory statements about the Defendants' generally. *See* FAC ¶¶ 679-689. With regard to the Elder Webers, they communicated

with Kevin Long, not Taylor. FAC ¶¶ 333, 335-337. With regard to Griffin, she and Stamm were referred in October 2022 to McDougal, Taylor, "and the Colliers/Long TIC Program." FAC p. 88 ¶ 298. Defendant McDougal had most of the communications with Griffin and Stamm. FAC P. 88, ¶ 299. Taylor is alleged to have communicated with Griffin and Mr. Stamm jointly in a November 2022 email prior to their purchase of a TIC interest in which he made representations that the Crockett and Lehi property tenants had executed leases, and that Crockett was in compliance with certain lease terms. *See* FAC p. 90, ¶ 300. But there is no allegation that any of the specific statements Taylor made were both false and known by Taylor to be false at the time they were made. *See* FAC p. 90 ¶¶ 300-301. There is no factual support for any claims that Taylor knew Griffin's or the Elder Webers' ages or infirmities--much less that he sought to take advantage of them through knowing deception or intimidation and with the intent to deprive them of their funds. Therefore, the Amended Complaint does not state a claim under this subsection.

Second there is no allegation that the Elder Webers or Griffin lacked capacity to consent to their investments at the time they made them. So, Taylor clearly could not be an actor who "[knew] or should [have known] that Plaintiffs lacked capacity to consent to their investments" under subsection 76-5-111.4(2)(b). He also did not "obtain or use their assets" or assist anyone to do so "with the intent to temporarily or permanently deprive" Plaintiffs of their assets. *See id.*

The remaining subsections also clearly do not apply. Taylor is not alleged to have been a custodian or holder of Plaintiffs' assets; therefore, he could not have "improperly use[d] or manage[d]" plaintiffs' resources pursuant to subsection 76-5-111.4(2)(c). There is no allegation pursuant to subsection 76-5-111.4(2)(d) that Taylor improperly used the plaintiffs' power of attorney or guardianship. And Plaintiffs do not allege they engaged in criminal action together with Taylor, making subsection 76-5-111.4(2)(e) inapplicable.

### iii.    *Plaintiffs Fail to Plead Taylor Caused Their Losses*

Plaintiffs also do not plead facts that connect any specific exploitation alleged to have been perpetrated by Taylor with Plaintiffs' alleged harm. Plaintiffs do not even allege that they specifically relied on the alleged statements by Taylor to make their investments. Plaintiffs generally allege conduct of multiple defendants.

### iv.    *The Elder Webers' Claims are Outside the Three-Year Statute of Limitations*

The legislature did not adopt a special statute of limitations or any tolling rule for this cause of action. *See* Utah Code § 26B-6-213. Therefore, Utah's three-year statute of limitations for statutorily created causes of action applies. See Utah Code § 78B-2-305(4). On the face of the pleadings, the Elder Webers' claims are outside the three-year statute of limitations because they relate to investments the Elder Webers made before March of 2022, and the Plaintiffs did not file their original complaint until March 4, 2025.

In summary, Plaintiffs claims under Utah's elder abuse statute must be dismissed because they fail to satisfy the requirements of Rule 8(a), fall far short of the pleading requirements of Rule 9(b), and (as to the Elder Webers) are barred by the three-year statute of limitations.

## XI.    PLAINTIFFS' CIVIL RICO CLAIMS ARE BARRED BY THE PSLRA AND SHOULD BE DISMISSED

Plaintiffs' civil claims under the federal RICO statute in their Fifteenth, Sixteenth, and Seventeen causes of action fail to state claims against Taylor with particularity for all of the same reasons that Plaintiffs have failed to allege with particularly that Taylor engaged in fraud as explained *supra*. Notably, the claims against Taylor rely on general allegations that Taylor

distributed the "Marketing Materials," Taylor's statements to Griffin and Stamm in the email dated November of 2022, Taylor's entity Smart Cove LLC's ownership interest in Millcreek, and "information and belief". FAC ¶¶ 535, 710, 721-722. More importantly, however, Plaintiffs are barred from asserting federal RICO claims against Taylor by the Private Securities Litigation Reform Act of 1995. These claims should also be dismissed against Taylor for failure to state a claim under Rule 12(b)(6).

Congress specifically amended RICO in the Private Securities Litigation Reform Act of 1995 to provide that "[n]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." *Bixler v. Foster*, 596 F.3d 751, 759 (10th Cir. 2010) (quoting Pub.L. No. 104-67, § 1077,109 Stat. 737, 758 (Dec. 22, 1985), amending 18 U.S. C. § 1964(c)). The purpose of this PSLRA amendment to RICO was to prevent plaintiffs from circumventing PSLRA's protections against speculative litigation of investment disputes by artfully pleading their claims as civil RICO causes of action. "Allowing plaintiffs to engage in 'surgical presentation of the cause of action' would undermine the purpose of the RICO amendment.'" *Id.* (quoting *Bald Eagle Area Sch. Dist*, 189 F.3d at 330). The legislative history of this PSLRA amendment to RICO provides:

> "The [Conference] Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the . . . Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud."

H.R. Rep. No. 104-369, at 47 (1995). Courts have therefore applied the PSLRA bar to conduct that would have been actionable as securities fraud, "even if the acts that form the basis of liability

would independently qualify as mail fraud or wire fraud under the federal criminal law."[4] *See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc*., 189 F.3d 321, 327 (3rd Cir. 1999).  As summarized by one district court, "[t]he relevant inquiry focuses on if the conduct the Plaintiffs pled as the predicate acts for their RICO claim *could* amount to securities fraud." *Intelligent Invest. Int'l., LLC v. Fu,* 2019 WL 1281204 at *4 (N.D. Georgia Mar. 20, 2019). There the district court held the PSLRA bar applied and dismissed the Plaintiffs' RICO claims based on the facts in the Complaint because the alleged investments were investment contracts despite Plaintiffs' arguments that the investments they purchased were not securities. *See id.* at *6-7.

The PSLRA bar applies to Plaintiffs claims against Taylor in this case because the thrust of the factual allegations and legal theory of liability pleaded by Plaintiffs' is that the tenant-in-common interests purchased by Plaintiffs were investments in securities under the federal investment contract test for securities (because they purchased each of their TIC interests "in a common enterprise" based on expectations that they would passively profit from them based on the management of others), *see* FAC ¶¶ 585, 598, and that the Defendants deceived them about these securities investments, *id.* ¶¶ 586-597. In this case, unlike in *Bixler,* Plaintiffs even assert claims for federal securities fraud. FAC ¶¶ 585-597, 604-614. Therefore, on the face of the Complaint the PSLRA bar applies to Plaintiffs RICO claims.

---

[4] In *Bixler* the Tenth Circuit held the plaintiffs' RICO claims were barred by the PSLRA despite those plaintiffs' contention that "their claims did not involve the purchase or sale of securities." *Id* at 760. Although Plaintiffs claimed they did not purchase or sell shares as part of the wrongdoing, they had alleged that defendants defrauded them from receiving certain stock as provided in an agreement. *Id.* Because the scheme involved alleged conduct that would be actionable as securities fraud the Tenth Circuit applied the PSLRA Bar. *Id.* It reasoned that the *Bixler* Plaintiffs' allegations "that defendants committed mail and wire fraud, bank fraud, extortion, obstruction of justice, and interstate travel in support or racketeering" . . . "may well constitute [illegal and fraudulent acts], but it was also undertaken in connection with the purchase of a security." *Id.* "Thus, it cannot support a civil RICO claim after enactment of the PSLRA." *Id.*

To the extent Plaintiffs argue they should nonetheless be allowed to plead RICO claims in the alternative—in case the Court finds the TICs are not securities under federal law—Plaintiffs should not be allowed to thereby circumvent the heightened PSLRA requirements for securities disputes. The Committee's above-quoted statement of intent regarding the 1995 PSLRA amendment to RICO is that it would prevent *pleading* of offenses as predicate acts under civil RICO "if such offenses are based on conduct that would have been actionable as securities fraud." *See* H.R. Rep. No. 104-369, at 47 (1995). Plaintiffs should only be exempted from the PSLRA bar on pleading RICO causes of action if (and, if so, when) the Court determines that the Plaintiffs claims "do not rely on any conduct that would have been actionable as fraud in the purchase or sale of securities." *See* Bixler 596 F.3d at 759. This district court took such an approach in *Combs*, 2024 WL 1347409. This Court applied the PSLRA bar and dismissed the RICO claims despite potential legal uncertainty whether the Safemoon token was a security but advised that "[i]f at a later stage in this case, the court determines that the Safemoon token is not a security, it will permit Plaintiffs to amend their pleadings to re-allege a RICO claim."[5] *Combs*, 2024 WL 1347409 at *26.

## **CONCLUSION**

BASED ON THE FOREGOING, defendant Spencer Taylor respectfully requests that the Court dismiss all claims against him in Plaintiffs' Amended Complaint.

---

[5] In *SafeMoon*, the Defendants had accepted "for the purposes of their motions to dismiss" that the token is a security. *Combs*, 2024 WL 1347409 at *26 (D. Utah Mar. 29, 2024). Taylor similarly assumes for the purpose of this motion to dismiss that the TIC investments are actionable in that they are adequately alleged to be investment contract securities under *federal* law. Taylor's motion to dismiss argues that they are not a security for the purpose of *state* law based on the specific exemption provided in the Utah Uniform Securities Act. *See supra*.

DATED this 3rd day of November 2025.

**RAY QUINNEY & NEBEKER P.C.**

 */s/ Nathan L. Jepson*
Justin T. Toth
Maria E. Windham
Nathan L. Jepson

*Attorneys for Defendant Spencer Taylor*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 3rd day of November 2025, I caused a true and correct copy of the foregoing **MOTION TO DISMISS FOR DEFENDANTS SPENCER TAYLOR AND SMART COVE, LLC** to be filed via the Court's electronic filing system, which automatically provides notice to counsel of record.

*/s/ Ryan J. Lowe*