Andrew G. Deiss (Utah Bar #7184)
Corey D. Riley (Utah Bar # 16935)
Deiss Law PC
10 West 100 South, Suite 700
Salt Lake City, UT 84101
Telephone: (801) 433-0226
deiss@deisslaw.com
criley@deisslaw.com

*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN WEBER, et al.; <br><br> *Plaintiffs,* <br><br> v. <br><br> COLLIERS INTERNATIONAL GROUP, INC., et al.; <br><br> *Defendants.* | **MOTION FOR ALTERNATE SERVICE AND ADDITIONAL TIME TO SERVE** <br><br> Case No. 2:25-cv-00162-DB-DBP <br><br> Judge David Barlow <br><br> Chief Magistrate Judge Dustin B. Pead |

Plaintiffs John Weber, Gayle Weber, Club Fitness Inc., Peter Ross Weber, Yolanda Altagracia Cosme de Weber, Compostela Limited LLC, David Elton, Alyce Weber, James Blaisdell, Bryson Ockey, Kristine Ockey, Claudia Griffin, Eric Stamm, and The Betty L. Griffin 1999 Revocable Trust hereby move the Court to grant them leave to serve Defendants Robert M. Levenson; Blackacre 1031 Exchange Services, LLC ("Blackacre 1031"); David Josker; Gil Borok; Matthew Hawkins; Lew Cramer; Millcreek Commercial Properties, LLC; Millrock Investment Fund 1 Management, LLC; KGL Advisors, LLC; KGL Real Estate Development, PLLC; ADP-Millcreek 2, LLC; ADP-Millcreek 3, LLC; and Steve Caton (collectively, "the Unserved Defendants") by alternative means, pursuant to

1

Fed. R. Civ. P. 4(e)(1) and Utah R. Civ. P. 4(d)(5). Plaintiffs additionally move for additional

time to serve these Defendants, pursuant to Fed. R. Civ. P. 4(m).

\* \* \*

## Table of Contents

*INTRODUCTION* ........................................................................................................... *4*

*RELIEF REQUESTED* ................................................................................................... *6*

*FACTUAL BACKGROUND* ........................................................................................... *9*

*LEGAL STANDARD* ................................................................................................... *15*

*ARGUMENT* ................................................................................................................ *15*

   I.    ALTERNATIVE SERVICE UPON THE UNSERVED DEFENDANTS IS WARRANTED UNDER THESE CIRCUMSTANCES. .........................................................................16

   II.    THE PROPOSED ALTERNATIVE MEANS OF SERVICE ARE REASONABLY CALCULATED TO APPRISE THE UNSERVED DEFENDANTS OF THE PRESENT ACTION. .........................................................................................................................18

   III.    THE COURT SHOULD ALLOW PLAINTIFFS ADDITIONAL TIME FOR SERVICE23

*CONCLUSION* ............................................................................................................. *25*

## INTRODUCTION

Since the present action was first filed a little over six months ago, Plaintiffs have gone to significant and costly lengths to try and effectuate service of process upon all Defendants. Despite their diligence, a number of Defendants remain unserved. Plaintiffs' efforts, which total well over 100 man-hours, include extensive searches of public records, requesting waivers of service, hiring private investigators, and sending process servers to make repeated attempts at personal service in multiple locations across the continent. Additionally, Plaintiffs' counsel have discussed most of the Unserved Defendants with attorneys who either represent them in separate but related actions, or represent co-Defendants to this action with whom they are closely affiliated. Some of the Unserved Defendants have refused, directly or indirectly, to accept delivery of the summons and complaint from process servers. Several of them are entities wholly controlled by an individual co-Defendant who has been served and is represented by counsel, and is thus fully aware of the action against the companies. Inversely, two of the unserved individuals are the sole or primary principals of co-Defendant entities which have already been served, and they are similarly fully aware of the action against them personally.

It has thus become apparent that either the Unserved Defendants are avoiding service, they cannot reasonably be located, or personal service upon them is otherwise impracticable, each of which justifies alternative service under Utah Law. Plaintiffs have identified multiple alternative methods of service for each

Unserved Defendant which are highly likely, if not guaranteed, to apprise them of this action.

Given Plaintiffs' efforts to serve these Defendants, the manifest difficulty of serving them with process by the standard authorized means, and the reliability of Plaintiffs' proposed alternative means of service, Plaintiffs respectfully request that the Court authorize service of process upon the Unserved Defendants by other means, and for reasonable additional time to complete such alternative service.

\* \* \*

## **RELIEF REQUESTED**

Plaintiffs respectfully seek leave of the Court to serve:

- Defendants Robert M. Levenson and Blackacre 1031 Exchange Services, LLC via:

  - Email to robert@blackacre1031.com and bobby@federal1031.com.; and

  - First-class mail to a UPS Store mailbox known to be used by Mr. Levenson.

- Defendant David Josker via:

  - Email to david.josker@colliers.com;

  - First-class mail to Mr. Josker's known work address, at 6324 Canoga Ave., Ste. 100, Woodland Hills, CA 91367; and

  - Email to counsel of record for Mr. Josker's employer and co-Defendant Colliers International Holdings (USA), Inc.'s at douglas.smith@lewisbrisbois.com, bill.helfand@lewisbrisbois.com, and Andrew.welch@lewisbrisbois.com.

- Defendant Matthew Hawkins via:

  - Email to matthew.hawkins@colliers.com;

  - First-class international mail to Mr. Hawkins' known work address, at 4000-1140 Bay St., Toronto, ON M5S 2Z4 Canada; and

  - Email to counsel of record for Mr. Hawkins' employer and co-Defendant Colliers International Group, Inc., at douglas.smith@lewisbrisbois.com, bill.helfand@lewisbrisbois.com, and Andrew.welch@lewisbrisbois.com.

- Defendant Lew Cramer via:

- o Email to lew.cramer@missionary.org and

  lew.cramer@churchofjesuschrist.org;

- o First-class mail to the Church of Jesus Christ of Latter-Day Saints' Europe

  North Area Offices in the United Kingdom, located at A3 Glory Park Ave.,

  Wooburn Green, High Wycombe HP10 0DF, UK; and

- o Email to his counsel of record in a separate but related action, at

  douglas.smith@lewisbrisbois.com, bill.helfand@lewisbrisbois.com, and

  Andrew.welch@lewisbrisbois.com.

- Defendants Millcreek Commercial Properties, LLC; Millrock Investment Fund

  Management, LLC; KGL Advisors, LLC; KGL Real Estate Development, PLLC;

  ADP-Millcreek 2, LLC; and ADP-Millcreek 3, LLC (collectively, "Kevin Long's

  Entities") via:

  - o Email to kevin@millcreekcommercial.com and contact@kgladvisors.com;

  - o First-class mail to Kevin Long's residential address, at 149 N 980 E, Lindon,

    UT 84042; and

  - o Email to Kevin's counsel of record in the present action and several separate

    but related actions, at btolk@parrbrown.com, rburge@parrbrown.com,

    twelch@parrbrown.com, and cwilde@parrbrown.com.

- Defendant Steve Caton via:

  - o Email to steve@catoncommercial.com;

  - o First-class mail to four residential addresses believed to be used by him:

    - ▪ (1) 545 N McClurg Ct., Unit 4210, Chicago, IL 60611;

- ▪ (2) 2625 Vermillion Ct., Naperville, IL 60565;

- ▪ (3) 13324 Round Barn Rd., Plainfield, IL 60585;

- ▪ (4) 23917 W Robert Ave., Plainfield, IL 60544;

- o First-class mail to his known place of business, at 1296 Rickert Dr., Ste. 200, Naperville, IL 60540; and

- o Email to his known counsel of record in a separate but related action, at ree@carmodymacdonald.com; nrw@carmodymacdonald.com, and jzz@carmodymacdonald.com.

Plaintiffs further purpose that proof of service via email (to both individual Defendants and their associated counsel) be provided through an email service such as RPost, which provides 'read receipts' allowing senders to verify that an email has been received and opened by its recipient.

Additionally, Plaintiffs respectfully request the Court for an order extending the time for service of process upon Defendants in this matter. Specifically, they request a new deadline to serve of February 12, 2025 for any Defendant for whom alternative service is authorized, and/or March 12, 2025 for any Defendant for whom the Court declines to authorize alternative service.

\* \* \*

## FACTUAL BACKGROUND

***Defendants Robert Levenson and Blackacre 1031 Exchange Services, LLC***

Plaintiffs' diligent efforts to serve Mr. Levenson, individually and as a registered agent of Blackacre 1031, have been unsuccessful. A process server was first sent to a Virginia address believed to be his residence or workplace, but Mr. Levenson was no longer located there. See Exhibit A (A. Deiss Decl.) at ¶ 10-11. A private investigator identified another address, but the process server found that residence vacant. *Id.* at ¶¶ 11-12. Plaintiffs have been unable to locate other reliable addresses for Mr. Levenson. *Id.* at ¶ 13.

Further investigation revealed that Mr. Levenson recently formed Federal 1031 LLC, which lists its address as a UPS Store mailbox authorized to receive certified mail on behalf of customers. *Id.* at ¶¶ 14-16. Plaintiffs have also communicated with him at robert@blackacre1031.com, and he has publicly listed bobby@federal1031.com on the company website and LinkedIn profile. *Id.* at ¶¶ 19-20.

Defendants David Josker and Gil Borok.

Mr. Josker and Mr. Borok are executives with the Colliers group of companies. Prior counsel for Defendant Colliers International Intermountain, LLC ("Colliers Utah") contacted Plaintiffs' counsel to inquire about the status of the service upon these three Defendants, among others. Plaintiffs' counsel replied asking if they would accept service for them, but Colliers Utah's prior counsel declined. *Id.* at ¶¶ 22 and 32.

Plaintiffs have made a number of other diligent efforts to find a means of serving these Defendants. These efforts included searching public property records to identify possible addresses, conducting extensive searches on social media platforms such as LinkedIn and Facebook, and reviewing other publicly available information. Despite

these efforts, no reliable service addresses were located, likely because any property owned may be held in the name of a trust or other entity. Moreover, due to their status as high-level executives at one of the world's largest real estate firms, these Defendants are semi-public figures, and the locations of their residences are not reasonably ascertainable to Plaintiffs. *Id*. at ¶¶ 30 and 38.

Mr. Josker and Mr. Borok are located in the Los Angeles, CA metropolitan area. *Id*. at ¶¶ 23 and 33. Plaintiffs made multiple attempts to serve each of these Defendants at their respective offices, all of which were unsuccessful, despite diligent efforts made by their process servers. See generally, *Id*. at ¶¶ 22-39. Three attempts were made to serve Mr. Borok at his workplace. *Id*. at ¶¶ 33-36. During the last attempt, the process server spoke with an individual who identified themselves as the front desk associate. They stated that Mr. Borok was unknown to them. *Id*. at ¶¶ 33-36.

In contrast, it appears Mr. Josker was indeed present at his office during one or two of the four attempts to serve him. See generally, *Id*. at ¶¶ 22-31. During the process server's last attempt, a secretary indicated that Mr. Josker was present but refused to be served. *Id*. at ¶ 28. The process server was eventually told that Mr. Josker "was unavailable unless they had an appointment," and "would not see anyone without an appointment." *Id*.

Mr. Borok and Mr. Josker are both principals of Defendant Colliers International Holdings (USA), Inc., which has been served and is represented by counsel. *Id*. at ¶¶ 22 and 32.

### *Defendant Matthew Hawkins*

Defendant Matthew Hawkins is an executive of the Colliers parent companies. As

with Mr. Hawkins and Mr. Josker, prior counsel for Colliers International Intermountain, LLC declined to accept service on his behalf. Ex. A at ¶ 40. Other efforts included searching public property records to identify possible addresses, conducting extensive searches on social media plat forms such as LinkedIn and Facebook, and reviewing other publicly available information. *Id*. at ¶ 6. Despite these efforts, no reliable service addresses were located, likely because any property owned may be held in the name of a trust or other entity. To Plaintiffs' knowledge, Mr. Hawkins resides in Canada, and they retained an international process server to serve him at his office in Toronto. *Id*. at ¶ 41. The process server made three unsuccessful attempts. *Id*. at ¶¶ 41-46.

On the first attempt, the office administrator stated he was not present and refused to provide his schedule. *Id*. at ¶ 43. During the same visit, however, the process server successfully served Mr. Hawkins' employer, Defendant Colliers International Group, Inc. ("CIGI"). *Id*. at ¶ 43(a). On the second attempt, a security guard reported the office was empty and would remain vacant the following Monday. *Id*. at ¶ 44. On the third attempt, the administrator again stated that Hawkins was not in the office and that she did not know when he would return. *Id*. at ¶ 45.

### *Defendant Lew Cramer*

Defendant Lew Cramer, former Chairman of Colliers International Intermountain, LLC, likewise could not be served through the company's prior counsel, who declined to accept service on his behalf. Ex. A at ¶ 49. Accordingly, Plaintiffs conducted extensive searches of property records, social media platforms such as LinkedIn and Facebook, and other public records to identify possible addresses. *Id.* at ¶6. Based on this research, Plaintiffs discovered that he is currently living in London, England, serving full-time as

a volunteer "Public Affairs/Government Relations Specialist" for the Church of Jesus Christ of Latter-Day Saints. *Id.* at ¶ 50; *see also* Lew and Barb Cramer, the FoRB Foundation (Feb. 18, 2025), https://theforbfoundation.org/fca/lew-and-barb-cramer/. Because full-time missionaries typically reside at temporary, non-public addresses, it is virtually impossible to lcate him for personal service. Ex. A at ¶¶ 51-53. Plaintiffs reasonably believe he uses a Church-provided email address such as lew.cramer@missionary.org or lew.cramer@churchofjesuschrist.org. *Id.* at ¶¶55-56. They also believe that Mr. Cramer received mail through the Church's Europe North Area Offices, located at A3 Glory Park Ave., Wooburn Green, High Wycombe HP10 0DF, UK. Id. at ¶ 54.

All three Colliers entities have already been served and are represented by counsel in this action. ECF Nos. 18, 20-22, 37, 83 & 87. Moreover, counsel for the Colliers Defendants recently informed Plaintiffs' counsel that they represent Mr. Cramer in related litigation. Ex. A at ¶ 57; see also Substitution of Counsel for Lew Cramer et al., *Tomac v. Millcreek Com. Props., LLC*, No. 2:2024-cv-00774 (D. Utah May 30, 2025), ECF No. 125.

### *Defendants Kevin Long's Entities*

Defendant Kevin Long is, directly or indirectly, the registered agent and/or sole principal of Defendants Millcreek Commercial Properties, LLC; KGL Advisors, LLC; KGL Real Estate Development, PPLC; and Millrock Investment Fund 1 Management, LLC. Ex. A at ¶ 58. He is also believed to be agent and/or principal of Defendants ADP-Millcreek 2, LLC and ADP-Millcreek 3, LLC. *Id*. He is, as near as Plaintiffs can tell, the only individual associated with these entities and therefore the only person who can

receive service of the process for them. *Id.* at ¶ 59.

In his capacity as an individual Defendant, Mr. Long has already waived service and is represented by counsel in this action. ECF Nos. 34, 68. Plaintiffs' process server has made no less than ten attempts to serve him on behalf of his entities at his home, each of which has been unsuccessful. Ex. A at ¶¶ 58-70. This is despite the process server returning to the house at times when Mr. Long's wife had indicated to them that he would be home. *Id.* at ¶ 61-62. On one occasion, an individual purporting to be an attorney answered but indicated they could not receive the summons and complaint. *Id.* at ¶ 69.

Plaintiffs' counsel informed Mr. Long's counsel of the difficulties they were experiencing in serving Mr. Long on behalf of his entities, and asked if they would waive service for them, as well. *Id.* at ¶ 6. Mr. Long's counsel declined. *Id.*

Plaintiff's believe Mr. Long is evading service on behalf of his entities. *Id.* at ¶ 71.

Plaintiffs have communicated with Mr. Long at kevin@millcreekcommercial.com in the past, and this is also the email address his counsel recently provided for him in a filing they submitted in a separate but related case. *See* Motion to Withdraw as Counsel for Defendant Millcreek Commercial, LLC, *Klair v. Long*, No. 2:23-cv-00406 (D. Utah Jan 21, 2025), ECF No. 86 Kevin's new company, KGL Advisors, lists its contact email as contact@kgladvisors.com on its website. Contact Us, KGL Advisors, https://kgladvisors.com/contact-us/.

### *Defendant Steve Caton*

Defendant Steve Caton has likewise proven difficult to serve through traditional

means. Plaintiffs researched extensively to try and identify his current residence or place of business, but the only address located were a post office box in a state where he does not live. Ex. A at ¶ 72. Mr. Caton publicly advertises his email address as steve@catoncommercial.com. Steve Caton, CCIM, CIPS, Caton Commercial Real Estate Group, https://catoncommercial.com/member/steve-caton-ccim-cips/. His business address is listed as 1296 Rickert Dr., Ste. 200, Naperville, IL 60540. Caton Commercial Real Estate Group, Romeoville Area Chamber of Commerce, https://main.romeovillechamber.org/members/member/caton-commercial-real-estate-group-naperville-644. Recently, additional locations have been located by a Private Investigator for Mr. Caton, as well, and additional service is being accordingly attempted there. Ex. A at ¶ 75.

Plaintiffs also sent requests to waive service to attorneys known to represent Mr. Caton in a separate but related action. *Id.* at ¶ 73; *see also* Entries of Appearance for Steven Michael Caton, No. 1:2024-cv-00123 (E.D. Mo. Aug 23, 2024), ECF Nos 17, 19, & 21 Those attorneys declined, citing the fact that they are not listed to practice in Utah. Ex. A at ¶ 74.

Although Mr. Caton himself has not yet been successfully served, one of his companies, SARC Draper, LLC, as. ECF No. 110. Service upon that entity strongly suggests that Mr. Caton has actual notice of this lawsuit and the claims against him, even though personal service upon him has not yet been completed.

\* \* \*

14

## LEGAL STANDARD

The Plaintiff in a civil action bears the responsibility of serving each Defendant with a summons and copy of the complaint. Fed. R. Civ. P. 4(c)(1). Ordinarily, service of process must be accomplished by personal delivery to the Defendant, but service may also be accomplished by any other means authorized by law in the state where the district court is located. Fed R. Civ. P. 4(e).

Under Utah law, a Plaintiff may move for leave to serve a Defendant "by some other means" under certain circumstances, namely (1) where "the identity or whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence," (2) where "service upon all of the individual parties is impracticable under the circumstances," or (3) where "there is good cause to believe the person to be served is avoiding service." Utah R. Civ. P. 4(d)(5)(A). The motion "must set forth the efforts to identify, locate, and serve the party, or the circumstances that make it impracticable to serve all of the individual parties." Id. Additionally, the alternative means of service must be "reasonably calculated, under all the circumstances, to apprise the named parties of the action." Utah R. Civ. P. 4(d)(5)(B).

A Plaintiff must serve all Defendants within 90 days of filing the complaint. Fed. R. Civ. P. 4(m). However, upon a showing of good cause for failing to serve a Defendant within that time frame, the Court "must extend the time for service for an appropriate period." *Id. cf*. Fed. R. Civ. P. 6(b)(1)(A)("When an act…must be done within a specified time, the court may, for good cause, extend the time…if a request is made[]before the original time or its extension expires.") The 90-day deadline does not apply for any Defendant located in a foreign country. Fed. R. Civ. P. 4(m).

## ARGUMENT

## I.    ALTERNATIVE SERVICE UPON THE UNSERVED DEFENDANTS IS WARRANTED UNDER THESE CIRCUMSTANCES.

In order to obtain leave to serve a Defendant by alternative means, a Plaintiff must demonstrate that they have exercised reasonable due diligence in attempting to serve by the standard authorized means. *Bonneville Billing v. Whatley*, 949 P.2d 768, 773 (Ct. App. Utah 1997) (discussing the "diligence requirement") (quoting *Carlson v. Bos*, 740 P.2d 1269, 1275 (Utah 1987) ("[A] plaintiff must act diligently and take such steps in attempting to give the defendant actual notice of the proceeding as are reasonably practicable.")). The Utah Supreme Court has held that "[t]he party seeking to effectuate [alternative] service . . . must exercise reasonable diligence in attempting to identify  and then personally serve [the defendant]." *Weber Cty. v. Ogden Trece*, 2013 UT 62, ¶ 49, 321 P.3d 1067. In conducting this analysis, "[r]elevant factors may include the number of potential defendants involved, the projected expense of searching for them, and the number and type of sources of available information regarding their possible whereabouts." *Id.* at ¶ 50 (internal quotation marks omitted) (quoting *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 15, 100 P.3d 1211).

The facts set forth in the attached Declaration demonstrate that Plaintiffs have exercised reasonable due diligence in attempting to locate and serve the Unserved Defendants. Plaintiffs have devoted well over 100 man-hours on efforts to serve all 35 Defendants to this action, most of which was related to the Unserved Defendants specifically. Ex. A at ¶ 7. They have incurred considerable expenses in hiring process

servers and private investigators to help locate the Unserved Defendants and make numerous failed attempts to serve them personally.

The facts outlined herein and in the attached declaration demonstrate that each of the Unserved Defendants falls squarely within one or more of circumstances justifying alternative service under URCP 4(d)(5)(A). Several of these Defendants have unique personal situations that make locating a reliable address nearly impossible. Others appear to be actively avoiding service by concealing their whereabouts or refusing delivery, whether directly or indirectly. Many are represented by counsel in related matters yet have refused to waive service despite their duty to minimize costs. *See* Fed. R. Civ. P. 4(d)(1). Similarly, most of the Unserved Defendants are closely affiliated with co-Defendants who have been served and, in most cases, are represented by counsel in this action.

Plaintiffs have made extensive but unsuccessful efforts to serve each of the remaining Defendants through traditional means. Robert Levenson could not be located despite service attempts at multiple Virginia addresses. In Los Angeles, process servers attempted to serve Colliers executives David Josker and Gil Borok, but staff either blocked access or denied knowledge of them, suggesting deliberate avoidance; similar evasion occurred with Matthew Hawkins in Toronto, despite three international service attempts.[1] Lew Cramer's residence in London as a full-time missionary has

---

[1] Plaintiffs' use of a private process server located in Ontario to attempt to serve Mr. Hawkins was compliant with Rule 4. See Fed. R. Civ. P. 4(f)(1) (allowing service of process upon a foreign defendant by any means authorized

made it virtually impossible to identify a reliable address for service. Kevin Long, the sole principal of several entity defendants, evaded ten personal service attempts at his home, while his son Adam, a Harvard law student, proved unreachable at multiple addresses given his transient status. Finally, Plaintiffs could not locate Steve Caton beyond P.O. boxes and third-party addresses until very recently.

Because each of the Unserved Defendants cannot be located through reasonable diligence, cannot practicably be served by traditional means, and/or appear to be avoiding service, the Court should allow Plaintiffs to serve them by the alternative means identified herein.

## II. THE PROPOSED ALTERNATIVE MEANS OF SERVICE ARE REASONABLY CALCULATED TO APPRISE THE UNSERVED DEFENDANTS OF THE PRESENT ACTION.

For each of the Unserved Defendants, Plaintiffs have proposed up to three alternative methods of serving the summons and complaint: (1) service via email **to** one or more email addresses known or reasonably believed to be used by the Defendant; (2) service via regular first-class mail to one or more addresses known or reasonably believed to be used by the Defendant; and (3) service via email to one or more attorneys known to represent the Defendant in a separate but related action, or a co-Defendant in this action with whom they are closely affiliated. As demonstrated below, each of these alternative service methods is reasonably calculated to apprise the Unserved

---

under the Hague Service Convention); Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, art. 10(b), Feb. 26, 1969, 658 U.N.T.S. 163 [hereinafter Hague Service Convention] (authorizing the service of documents through "other competent persons of the State of Destination," absent objection by that State); Hague Service Convention, Appx. A – Accession of Canada, Sep. 26, 1988, 1529 U.N.T.S. 499 ("Canada has not declared to object to methods of service of Article 10, sub-paragraph[] b)."); and Canada – Central Authority & practical information, HCCH (Aug. 13, 2025), https://www.hcch.net/en/states/authorities/details3/?aid=248 (identifying private process servers as "other competent persons" under art. 10(b) in provinces other than Québec).

Defendants of the action against them; and the combination of multiple methods will be even more so.

### a. Service by Email is Reasonably Calculated to Apprise the Unserved Defendants of the Action.

Plaintiffs first propose that each of the Unserved Defendants be served via email to one or more email addresses known or reasonably believed to be used by them. This Court has consistently held that email and mail are appropriate means of alternative service, particularly where the Plaintiff demonstrates the reliability of the address(es) used. *See, e.g.*, *Deseret Book Co. v. Nanjing Lian Yidu Trading Co., Ltd.*, No. 2:24-cv-00961, 2025 WL 252810, at *4 (authorizing email service where Defendant publicly advertised their email address and email was "likely 'the only means of effecting service of process.'") (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002)) (unpublished); *Tycon Sys., Inc. v. Tycon Sec. Advantage Sys. LLC*, No. 2:24-cv-350, 2024 WL 2819287, at *1 (citations omitted) (authorizing email service and recognizing that email can be "reasonably calculated to give actual notice to the defendants.") (unpublished); and *B&B Prospector Properties, LLC v. Daniel*, 2023 WL 7701066 (D. Utah Nov. 15, 2023) (denying without prejudice where the plaintiff failed to show proposed addresses and emails were current) (unpublished). Courts are generally further inclined to authorize email service when the Plaintiff uses methods to verify delivery and receipt of the emailed summons and complaint. *See, e.g., Tycon,* 2024 WL 2819287, at *2 (authorizing email service with return receipt requested) (unpublished); and *In re Qiwi PLC Sec. Litig.*, No. 20 CV 6054, 2022 WL 20527316, at *2 (E.D.N.Y. Sept. 30, 2022) (authorizing email service where Plaintiff

indicated it would utilize RPost products to confirm delivery and receipt) (unpublished). Plaintiffs have identified one or more email addresses for each Unserved Defendant at which they propose they be served. In some cases, Plaintiffs communicated with the Defendant at the email address in question. In others, Defendants publicly advertise these email addresses as a reliable means of contacting them. Many of these are business or school emails that they almost certainly monitor on a regular basis. Plaintiffs intend to use RPost or a similar email service to verify that the summons and complaint are delivered and received by each Defendant.

Accordingly, the Court should find that serving the Unserved Defendants by email is reasonably calculated to apprise them of the action against them, and authorize this as an alternative means of service.

**b. Service by Mail is Reasonably Calculated to Apprise the Unserved Defendants of the Action.**

Plaintiffs also propose service by regular first-class mail to each of the Unserved Defendants. They propose this rather than certified mail because it is better suited to the present circumstances and Courts have recognized that first-class mail satisfies due process notice requirements in other contexts. *See, e.g., Jones v. Flowers*, 547 U.S. 220, 222 (2006) ("Certified mail makes actual notice more likely only if someone is there to sign for the letter or tell the mail carrier that the address is incorrect. Regular mail can be left until the person returns home, and might increase the chances of actual notice."); and *Fager v. CenturyLink Comms., LLC*, 854 F.33d 1167,1173-74 (10th Cir. 2016) (Concluding that "[f]irst-class mail sufficed to give notice" to potential class members where the mailing envelope clearly and noticeably indicated the nature and importance of its contents) (citations omitted). In any event, certified mail would not be alternative service because it is already authorized as a standard means of service. See Fed. R. Civ.

P. 4(e); and Utah R. Civ. P. 4(d)(2).

Plaintiffs have identified one or more mailing addresses for each Unserved Defendant which appear to be a reliable means of delivering the summons and complaint to them, based on all information available to Plaintiffs. In many cases, Plaintiffs' have confirmed, through the efforts of their process servers, that these Defendants live or work at the address(es) identified, and presumably can receive mail there, as well. The 178-page complaint is highly unlikely to go unnoticed when it is received by each Defendant, and Plaintiffs can undertake to label the large envelope in such a way as to denote the importance of its contents, if the Court so directs. The Court should therefore conclude that service by regular first-class mail is reasonably calculated to apprise the Unserved Defendants of the action, and authorize it as an alternative method of service for them.

### c. Service by Email to Retained or Associated Counsel is Reasonably Calculated to Apprise the Unserved Defendants of the Action.

The third form of alternative service Plaintiffs propose is email service upon attorneys known to represent the Unserved Defendants or their direct affiliates in this case or related litigation.[2] This Court has acknowledged email service upon retained counsel as an acceptable means of alternative service. *See, e.g., Cricut, Inc. v. Shanghai Shishun E-Commerce Co., Ltc.*, No. 2:24-cv-00747, 2025 WL 1333004, at *3 (D. Utah May 7, 2025) (Authorizing alternative service including email to retained counsel, regardless of client authorization, in part because "[t]he[] attorneys have communicated with [the plaintiff]'s counsel by email and are clearly able to provide the complaints to the defendants.") (unpublished); *and Dish Techs., L.L.C. v. Aylo Freesites Ltd.*, No. 2:24-cv-00066, 2024 WL 2701601, at *2 (authorizing alternative service including email to retained counsel where there was "ample litigation history" over the same subject matter, and the Defendants "share[d] a close, collaborative working relationship.")

(unpublished). In *Dish Technologies*, the Court's decision was motivated, in part, by the fact that the attorneys in question had already been involved in the parties' related litigation for some time, and the Defendants themselves were already aware of the action. *Dish Techs.*, 2024 WL 2601601, at *2 (unpublished)**.**

Here, each of the attorneys identified by Plaintiffs have been involved in one or more of the many cases involving sprawling fraudulent scheme at the center of this litigation, including the present action. Plaintiffs' counsel have already communicated with each of these attorneys regarding this action and the Unserved Defendants with whom they are affiliated. The ample litigation history and established relationships Plaintiffs have identified suggest that email service upon these attorneys will be an effective means of apprising the Unserved Defendants of this action.

Additionally, Plaintiffs have identified compelling reasons why each of the Defendants they seek to serve via email to counsel are already fully aware of this action and Plaintiffs' claims against them. Many of them are principals of co-Defendant entities who have been served. Others are entities wholly owned and controlled by Defendant Kevin Long, who has been served and is represented by counsel in this action. Plaintiffs' process servers spoke with several of the Unserved Defendants' colleagues and family members, who undoubtedly informed them of these interactions.

Finally, most of the Unserved Defendants have longstanding personal and professional relationships with the other Defendants who have been served, and it is likewise reasonable to presume that they have learned of this action through their co-Defendants at some point since the complaint was filed.

For these reasons, the Court should find that serving these Defendants via attorneys known to

represent them or their close affiliates is reasonably calculated to apprise them of this action, and authorize this as a third alternative means of service for the applicable Unserved Defendants.

### III.    THE COURT SHOULD ALLOW PLAINTIFFS ADDITIONAL TIME FOR SERVICE

Finally, Plaintiffs submit that good cause exists to grant them additional time to serve the remaining Defendants, and the Court should enter an order extending the deadline to serve. Plaintiffs make this request independently of their request for alternative service.

If the Court grants Plaintiffs leave to serve the Unserved Defendants by alternative means, it will take some time to perform the alternative service and obtain, prepare, and file proofs of service for these fourteen Defendants. While Defendants are optimistic that this could be completed within a couple of weeks, out of an abundance of caution, they request an additional month to serve any Defendant for whom the Court authorizes alternative service.

For any Unserved Defendant for whom the Court does not grant leave for alternative service, Plaintiffs will need additional time to attempt personal service upon them. As stated above, whether due to concealment, evasion, or otherwise, Plaintiffs have already faced substantial obstacles to effecting proper service of process, and have been unable to do so over the past six months despite their diligent efforts. Plaintiffs would need to hire more private investigators and process servers to try and locate and serve these Defendants, who are spread across multiple states and countries. The coordination and completion of service upon this number of parties who have already proven so difficult to locate will require substantial time. Accordingly, Plaintiffs request an additional two months to serve any Defendant for whom the Court does not authorize alternative service.

Finally, Plaintiffs note that their claims against the Unserved Defendants involve fraudulent conduct, and many, if not all of them, appear to be trying to conceal their location or

otherwise evade service of process in this action. If additional time to serve is not granted and these Defendants are dismissed for failure to serve, it will only perpetuate their fraudulent conduct against Plaintiffs.

For all these reasons, good cause exists to grant Plaintiffs the requested additional time to serve the Unserved Defendants, if the court deems necessary and allowable.

\* \* \*

## **CONCLUSION**

Plaintiffs have diligently attempted traditional service on the Unserved Defendants, but those efforts have been impracticable or actively frustrated. Under Fed. R. Civ. P. 4(e)(1) and Utah R. Civ. P. 4(d)(5), the Court may authorize alternative service where, as here, Defendants' whereabouts cannot be ascertained, service is impracticable, or Defendants are avoiding service. The proposed methods—verified email and reliable mail—are reasonably calculated to provide notice, consistent with due process, and supported by precedent in this District. Plaintiffs therefore respectfully request that the Court grant this Motion and authorize alternative service as proposed.

DATED this January 22, 2026.

DEISS LAW PC
*/s/Andrew G. Deiss*
Andrew G. Deiss
Corey D. Riley

*Attorneys for Plaintiffs*

## **WORD CERTIFICATION**

I, Andrew G. Deiss, certify that this Motion for Alternative Service and

Additional Time to Serve contains 5,433 words and complies with DUCivR 7-l(a)(4),

DUCivR 7-1(7), and the Court's order of January 14, 2026 (ECF No. 112).


*/s/Andrew G. Deiss*
Andrew G. Deiss