Andrew G. Deiss (Utah Bar # 7184)
Corey D. Riley (Utah Bar # 16935)
Deiss Law P.C.
10 West 100 South, Suite 700
Salt Lake City, UT  84101
Telephone: (801) 433-0226
deiss@deisslaw.com
criley@deisslaw.com
*Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **John Weber**, et al.,<br>*Plaintiffs,*<br><br>vs.<br><br>**Colliers International Group, Inc.**, et al.,<br>*Defendants.* | **PLAINTIFFS' OMNIBUS MEMORANDUM OPPOSING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Case No. 2:25-cv-162-DBB-DBP<br><br>Judge David Barlow<br>Magistrate Judge Dustin Pead |

Pursuant to Local Rule 7-1 DUCivR and Fed. R. Civ. P. 12(b), Plaintiffs

Yolanda Altagracia Cosme de Weber, John Weber, Peter Ross Weber, Gayle

Weber, Alyce Weber, Club Fitness, Inc., Compostella Limited, LLC, David Elton,

Claudia Griffin, Bryson Ockey, Kristine Ockey, Eric Stamm, The Betty L. Griffin

1999 Revocable Trust (together, "Plaintiffs") hereby oppose Defendant Brent

Smith, Thomas Smith, GTR Holdings, LLC, and Millrock Investment Fund 1, LLC's (together, Millrock Defendants) Partial Motion to Dismiss Second Amended Complaint, Dkt. 154; Defendants Colliers International Group, Inc., Colliers International Holdings (USA), Inc., and Colliers International Intermountain LLC's Motion to Dismiss, Dkt. 157; Defendants Spencer Taylor and Smart Cove, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint, Dkt. 158; Defendant Kevin Long's Motion to Dismiss Second Cause of Action, Dkt. 162; Motion to Dismiss Second Amended Complaint as Against SARC Draper, LLC, Dkt. 163; and Defendant Jerald Adam Long's Motion to Dismiss, Dkt. 165.

TABLE OF CONTENTS

**INTRODUCTION** ................................................................................ 5

**ARGUMENT** .................................................................................... 8

    **I.GOVERNING PLEADING STANDARDS** .................................. 8

      A.Rule 12(b)(6) Requires Plausible Allegations, Not Proof .................... 8

      B.Rule 9(b) Requires Particularity, Not Atomization............................ 8

      C.The PSLRA Requires a Holistic Scienter Analysis .............................. 8

    **II. THE SAC PLAUSIBLY ALLEGES PRIMARY VIOLATIONS OF § 10(b) AND RULE 10b-5** ...................................................................... 9

      A.The SAC Pleads Material Misrepresentations and Omissions.............. 9

      B.The SAC Pleads Scienter Under a Holistic Tellabs Analysis................11

      C.Defendant-Specific Discussion .........................................................13

      D.Defendants' "Group Pleading" Arguments Fail. ................................17

    **III. DEFENDANTS' FEDERAL STATUTE-OF-LIMITATIONS AND STATUTE-OF-REPOSE ARGUMENTS FAIL**....................................................19

      A. The SAC Plausibly Alleges Timely Discovery (First and Third Causes of Action) ...............................................................................................19

      B...... Section 13 Limitations and Repose Do Not Warrant Dismissal of the Second Cause of Action at the Pleading Stage ..........................................20

    **IV. DEFENDANTS' § 20(a) CONTROL-PERSON ARGUMENTS FAIL**..........24

    **V. THE STATE CLAIMS ARE TIMELY** ....................................................26

    **VI. COLLIERS' PERSONAL JURISDICTION ARGUMENT FAILS.**...............28

**VII. DEFENDANTS' ARGUMENTS UNDER THE UTAH UNIFORM SECURITIES ACT FAIL** ................................................................30

A. The SAC Plausibly Alleges That the TIC Interests Are Securities Under Utah Law ...............................................................................30

**VIII.  PLAINTIFFS ADEQUATELY PLEAD COMMON-LAW FRAUD AND NEGLIGENT MISREPRESENTATION** ...........................................37

A. Common-Law Fraud and Fraudulent Concealment..........................37

B. Negligent Misrepresentation ..........................................................38

**IX. PLAINTIFFS ADEQUATELY BREACH OF FIDUCIARY DUTY** ..............40

**X. PLAINTIFFS ADEQUATELY PLEAD CIVIL CONSPIRACY AND AIDING-AND-ABETTING** .................................................................................42

A. Civil Conspiracy ...........................................................................42

B. Aiding and Abetting ......................................................................43

**XI. PLAINTIFFS ADEQUATELY PLEAD UNJUST ENRICHMENT** ..............43

**XII. PLAINTIFFS ADEQUATELY PLEAD ELDER ABUSE** ...........................44

**XIII. PLAINTIFFS' CIVIL RICO CLAIMS ARE ADEQUATELY PLED IN THE ALTERNATIVE** ........................................................................45

**CONCLUSION** .........................................................................47

TABLE OF AUTHORITIES

**Cases**

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003) ............................12

*Adams v. Wolf*, 73 Ark. App. 347, 43 S.W.3d 757 (2001) .....................................27

*Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036 (10th Cir. 1980) .................. 22, 24

*Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210 (10th Cir.2007) ...............................37

*Anderson v.  Kriser*, 2011 UT 66 ..................................................................38

*Anixter v. Home-Stake Production Co.*, 939 F.2d 1420 (10th Cir. 1991) .................24

*Applied Med. Corp. v. Thomas*, A145867 (Cal. App. Mar 13, 2017)........................28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 9

*Bald Eagle Area School Dist. v. Keystone Financial,* 189 F.3d 321 (3rd Cir. 1999) ....47

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 9

*Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264 (10th Cir. 2023) ........................19

*Fid. Nat'l Title Ins. Co. v. Worthington*, 2015 UT App 19 .....................................38

*First Security Bank of Utah, N.A. v. Banberry Development Corp.,* 786 P.2d 1326
    (Utah 1990) ..........................................................................................41

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) .................................................14

*Giles v. Mineral Res. Int'l, Inc.*, 2014 UT App 143 ..............................................44

*Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022)...................................22

*Hill v. Allred*, 2001 UT 16, 28 P.3d 1271 (Utah 2001)..........................................28

*Hussein v. UBS Bank USA,* 2019 UT App 100, 446 P.3d 96 ...................................41

*In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331 (10th Cir. 2012) ...............15

*Jackson v. Integra, Inc.*, 952 F.2d 1260 (10th Cir.1991).......................................35

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002)..................................14

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202 (10th Cir. 2000) ...................................15

*Lorenzo v. SEC*, 139 S. Ct. 1094 (2019)..................................................... 10, 14, 16

*Lormand v. Us Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ..................................13

*Maher v. Durango Metals, Inc.*, 144 F.3d 1302 (10th Cir. 1998) ...........................26

*Malouf v. SEC*, 933 F.3d 1248 (10th Cir. 2019) ............................................ 10, 14

*Mason v. Laramie Rivers Co.*, 490 P.2d 1062 (Wyo. 1971) ...................................28

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ...................................12

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ....................................................20

*Nakkhumpun v. Taylor*, 782 F.3d 1142 (10th Cir. 2015)................................... 12, 13

*Novak, Nieman, et al. v. Kasaks, et al.*, 216 F.3d 300 (2nd Cir. 1999) .....................13

*Payable Acct. Corp. v. McKinley*, 667 P.2d 15 (Utah 1983) ....................................33

*Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000) ................29

*Pinkerton v. United States*, 328 U.S. 640 (1946)....................................................29

*Pohl, Inc. v. Webelhuth*, 2008 UT 89 ....................................................................44

*Price-Orem Inv. Co. v. Rollins, Brown and Gunnell, Inc.*, 713 P.2d 55 (Utah 1986)...40

*Pyper v. Reil*, 437 P.3d 493 (Utah App. 2018). .......................................................44

*Rauschenberger v. Radetsky*, 745 P.2d 640 (Colo. 1987) ........................................28

*Russell/Packard Development, Inc. v. Carson*, 2003 UT App 316 (Utah App. 2003) ..39

*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246 (10th Cir. 1997)................ 9, 18

*SEC v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990) .................................................29

*State v. Diamond Lakes Oil Co.*, 347 Ark. 618, 66 S.W.3d 613 (Ark. 2002) .............28

*State v. Schwenke*, 2009 UT App 345, 222 P.3d 768 ..............................................32

*Sterlin v. Biomune Systems*, 154 F.3d 1191 (10th Cir. 1998).................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...................... 9, 12

*Williams v. Howard*, 970 P.2d 1282 (Utah 1998).................................................27

**Statutes**

15 U.S.C. § 77m .....................................................................................................21

15 U.S.C. § 78aa ....................................................................................................29

15 U.S.C.A. § 77b(a)(1) ..........................................................................................33

C.R.S.A. § 11-51-604(8) ..........................................................................................27

Cal. Code Civ. Proc. § 338(d) .................................................................................27

Utah Code § 61-1-1.................................................................................................32

Utah Code § 78-12-26(3) ........................................................................................27

WY ST § 17-4-509(k)(ii)...........................................................................................27

**Rules**

17 C.F.R. § 240.10b-5..............................................................................................32

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 9

Fed. R. Civ. P. 8(d)(2)............................................................................................46

Fed. R. Civ. P. 9(b)................................................................................................. 9

## **INTRODUCTION**

Defendants' six motions to dismiss advance overlapping arguments that rest on the same incorrect premises: that the Second Amended Complaint ("SAC") must plead proof rather than plausibility; that a coordinated fraudulent scheme must be atomized into isolated statements attributable to individual defendants; and that factual disputes may be resolved at the pleading stage. Rule 12 does not permit that result.

The SAC alleges a unified scheme to market and sell tenant-in-common ("TIC") interests through standardized misrepresentations and omissions concerning tenant stability, guarantees, and risk. It pleads scienter through Defendants' central roles, access to information, and continued promotion of the investments despite mounting red flags. It further pleads reliance, transaction causation, loss causation, and damages consistent with Rule 9(b), the PSLRA, and Utah law.

Defendants' motions largely repackage merits defenses, inappropriate at the pleadings stage. When the SAC is evaluated as a whole, as controlling law requires, it states actionable federal and state claims. The motions should be denied.

# ARGUMENT

## I.    GOVERNING PLEADING STANDARDS

### A. Rule 12(b)(6) Requires Plausible Allegations, Not Proof

A complaint survives Rule 12(b)(6) if it contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must draw reasonable inferences in the plaintiff's favor and may not resolve factual disputes or weigh competing explanations.

### B. Rule 9(b) Requires Particularity, Not Atomization

Rule 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with sufficient particularity to give defendants fair notice of the claims and the grounds upon which they rest. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The rule does not require plaintiffs to plead evidence, internal corporate deliberations, or a defendant-by-defendant matrix of every communication.

### C. The PSLRA Requires a Holistic Scienter Analysis

The PSLRA requires plaintiffs to plead facts giving rise to a strong inference of scienter, evaluated holistically rather than in isolation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–24 (2007). Courts may not dismiss

simply because an innocent inference is conceivable; the inference of scienter

need only be at least as compelling as competing inferences.

## II.    THE SAC PLAUSIBLY ALLEGES PRIMARY VIOLATIONS OF § 10(b) AND RULE 10b-5
*(Colliers MTD at 9–13; Millrock MTD at ; Adam Long MTD at ; Taylor MTD at ; SARC Draper MTD at 3–6)*

Primary liability under Rule 10b-5 is not limited to the person who drafted

or uttered a statement. In *Lorenzo v. SEC*, the Supreme Court held that

defendants who disseminate false or misleading statements, or who otherwise

engage in deceptive conduct as part of a scheme, may be primarily liable under

Rule 10b-5(a) and (c), even if they are not the "speaker" under subsection (b),

139 S. Ct. 1094, 1100–1102 (2019). The Tenth Circuit adopted and applied that

principle in *Malouf v. SEC*, confirming that scheme liability reaches those who

orchestrate, implement, or further a deceptive scheme, 933 F.3d 1248, 1260–1261

(10th Cir. 2019).

Against that settled backdrop, as discussed further below, each

defendant's motion fails.

### A.  The SAC Pleads Material Misrepresentations and Omissions

As an initial matter, the SAC pleads actionable misrepresentations. It

alleges that Defendants marketed the TIC investments as safe, conservative

income-producing assets supported by creditworthy tenants, long-term leases,

and meaningful guarantees or insurance protections designed to mitigate risk. SAC ¶¶ 198–261. These were not aspirational statements or opinions about future performance. They were representations about tenant stability, lease strength, and the presence of risk-mitigation mechanisms—and they were made to induce Plaintiffs' purchases.

The SAC further alleges that these representations were disseminated through standardized offering materials, broker communications, and Colliers-led training sessions that emphasized the purported safety and stability of the investments. SAC ¶¶ 150, 198–205, 233–238. Plaintiffs allege that they received and relied on these representations before purchasing their TIC interests. SAC pgs. 62–97.

Critically, the SAC alleges that Defendants omitted known adverse facts that rendered these representations misleading. Plaintiffs allege that Defendants knew, or recklessly disregarded, that key tenants lacked the financial stability represented, that purported guarantees were illusory or materially inadequate, and that the investments carried risks inconsistent with the conservative profile being marketed. *Id.* Plaintiffs further allege that Defendants continued to market the investments as stable even as tenants defaulted and the promised protections failed. SAC ¶¶ 396–414.

At the pleading stage, allegations that defendants misrepresented present-tense facts or omitted known risks are actionable. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Accordingly, the SAC plausibly alleges material misrepresentations and omissions.

**B. The SAC Pleads Scienter Under a Holistic Tellabs Analysis**

Defendants next argue that the SAC fails to plead scienter because it does not allege direct admissions of intent or individualized knowledge. That argument ignores the holistic inquiry required by the PSLRA and the Tenth Circuit's recognition that scienter may be inferred from circumstantial evidence.

Scienter may be pled by alleging facts showing that defendants occupied central roles in the challenged conduct, had access to information contradicting their public representations, and continued promoting the investments despite mounting red flags. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1105–1109 (10th Cir. 2003). "While omissions and ambiguities count against inferring scienter, the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs*, 551 U.S. at 310. "[S]cienter also exists when a defendant acted with a reckless disregard of a substantial likelihood of misleading investors." *Nakhumpun v. Taylor*, 782 F.3d 1142, 1150 (10th Cir. 2015).

The SAC alleges that Defendants were not peripheral actors. Plaintiffs allege that the moving Defendants structured the TIC program, selected or approved tenants, approved and disseminated marketing materials, trained brokers, and received financial benefits from the sales. SAC pgs. 61–97. The moving defendants were partners in that enterprise. SAC ¶¶ 22, 39, 53,65, 722; MOU. These allegations support an inference that Defendants had access to information about tenant instability and the inadequacy of the purported guarantees.

The SAC further alleges that Defendants continued to market the investments as stable and conservative after tenants began defaulting and the promised protections proved ineffective. SAC ¶¶ 405–426, 453–464, –484–496. Continued promotion in the face of contrary information supports a strong inference of at least recklessness. *See, e.g., Novak, Nieman, et al. v. Kasaks, et al.*, 216 F.3d 300, 311 (2nd Cir. 1999); *Lormand v. Us Unwired, Inc.*, 565 F.3d 228, 252 (5th Cir. 2009); *Nakkhumpun*, 782 F.3d at 1152–1153.

When these allegations are considered collectively, as *Tellabs* requires, the inference that Defendants acted with scienter is at least as compelling as any non-culpable explanation. Defendants' competing inferences ask the Court to weigh evidence and resolve factual disputes, which is improper at the pleading stage.

12

## C. Defendant-Specific Discussion

### 1.    Colliers Defendants *(Colliers MTD at 8–13)*

The SAC alleges that Colliers operated an integrated brokerage and marketing platform that disseminated standardized representations about the TIC investments, trained and supervised sales agents, and processed commissions tied to the challenged sales. SAC ¶¶ 1–20, 134–158, 198–205, 233–238, 370–375. Plaintiffs allege that Colliers continued promoting the investments as safe despite tenant defaults and failures of the touted protections. SAC ¶¶ 405–426, 453–464, –484–496. Colliers logo was prominent on the offering memoranda. SAC ¶ 237. Colliers was directly involved from the beginning of the enterprise. *See* MOU, *attached at* Exhibit A.[1]

These allegations plausibly plead both deceptive conduct and scienter under Rule 10b-5(a) and (c). Direct authorship of each statement is not required. *Lorenzo*, 139 S. Ct. at 1101–1102; *Malouf v. SEC*, 933 F.3d 1248, 1260–61 (10th Cir. 2019).

---

[1] Documents "referred to in the complaint and is central to the plaintiff's claim" may be considered on Rule 12(b)(6) if authenticity is undisputed. *GFF Corp.*, 130 F.3d at 1384–1385; *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–942 (10th Cir. 2002); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Because the SAC expressly references and relies on the MOU and the OMs, which are central to the claims, as explained herein, the Court may consider those documents on this Rule 12(b)(6) motion. *See* SAC ¶¶ 148, 150–152, 234–236, 294, 608, 753a.

Rule 9(b) does not require plaintiffs to plead evidentiary detail or to attribute each statement to a single corporate officer where the complaint otherwise gives fair notice of the misconduct alleged. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). The PSLRA likewise does not bar pleading coordinated misconduct where the defendant's role is described with specificity. *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333–34 (10th Cir. 2012).

Colliers' insistence on atomized pleading elevates form over substance and is inconsistent with Tenth Circuit precedent.

### 2. **Millrock Defendants** *(Millrock MTD at 5–9)*

The SAC alleges Thomas Smith provided "Oversight & Leadership," served as "the main financial partner," trained sales agents, and helped develop and execute the program across the very properties at issue—identifying his functions in the scheme, not just his name. SAC ¶¶ 153–161; MOU. The SAC further pleads GTR as a Millcreek member/affiliate integrated into the program structure. SAC ¶¶ 22, 39–41, 61–62, 722; MOU. Brent Smith—individually and through GTR as one of Millcreek's four owners—played a significant role in Millcreek's operations, marketing, accounting, and other aspects of the scheme. SAC ¶¶ 22, 36–40, 155–156, 398–404; MOU.

These allegations support a strong inference of scienter and primary liability under a scheme-liability theory.

14

**3.    Adam Long** *(Adam Long MTD at 6–10)*

Adam Long argues that he cannot be liable under § 10(b) or Rule 10b-5 because Plaintiffs do not allege that he personally made affirmative misrepresentations to investors.

The SAC alleges that Adam Long was an active participant in the program, including through the MOU governing the TIC structure and marketing relationship. The MOU establishes that Adam Long participated in the planning, structuring, and execution of the TIC offering, including coordination with Colliers and other defendants regarding how the properties would be marketed to investors. SAC ¶¶ 22, 61, 65–66, 151–152, MOU. Plaintiffs further allege that Adam Long owned Millrock Investment Fund 1, LLC (the entity through which Defendants purchased and sold the TIC properties) and Millcreek Commercial (the entity through which Defendants used to market the TIC investments), derived a direct financial benefit from its alleged fraudulent conduct, and carried the scheme forward under a new name: Axia Partners, LLC. SAC ¶¶ 151, 722–737.

Direct communications with each Plaintiff are not required where the defendant allegedly participated in the scheme. *Lorenzo*, 139 S. Ct. at 1101–1102.

**4.    Spencer Taylor / Smart Cove** *(Taylor MTD at 4–8)*

The SAC alleges that Taylor and Smart Cove endorsed and reinforced misrepresentations concerning the safety and stability of the investments in connection with sales. SAC ¶¶ 154, 182, 293–302, 481–483, 506–508, 547a, 547i. Also, Taylor (as sole member of Smart Cove, LLC) had an ownership stake in the enterprise. SAC ¶¶ 22, 53–54, 79, 722. In other words, the SAC alleges specific misrepresentations made by Taylor, extension knowledge of the scheme, as well as his stakeholder position. Those allegations are sufficient to plead scheme liability and scienter at the pleading stage.

Contrary to his argument, Taylor's statements about maintenance and upgrades and long-term leases are alleged to be false. Taylor MTD at 5; SAC ¶¶ 309 (pg. 68), 331 (pg. 72), 300–301 (pgs. 90–91), 488–490, 502–503.

### 5.    **SARC Draper, LLC** *(SARC Draper MTD at 3–6)*

The SAC alleges that SARC Draper participated in structuring and transferring the Draper TIC offering and benefited from the sale of the interests. SAC ¶¶ 303–305 (pgs.65–66), 379–385. Steve Caton (SARC Draper's principal) was heavily involved in marketing the TIC properties, including Draper. SAC ¶¶ 381, 753e. That marketing campaign included false statements in marketing materials and agents' direct contact with investors. After selling its ownership interest for an overinflated value to Mr. Blaisdell and the Webers, SARC Draper and Mr. Caton directly benefitted from their participation in the deceptive

16

scheme, and it paid approximately $150,000 of the shared profits to Millrock.

SAC ¶¶ 370–372, 431.

### D.  Defendants' "Group Pleading" Arguments Fail.

*(Colliers at MTD 9–11; Millrock MTD at 7; Taylor MTD at 6; SARC Draper at 10–11;*
*Adam Long at MTD at 8–9)*

Defendants argue that the SAC impermissibly relies on "group pleading"
because it does not attribute each alleged misrepresentation to a specific
defendant. That argument misstates the pleading standard and ignores the
nature of the alleged scheme.

Rule 9(b) requires plaintiffs to plead the circumstances of the fraud with
sufficient particularity to give defendants fair notice. It does not require
plaintiffs to plead a defendant-by-defendant breakdown of every internal act or
communication. *Celestial Seasonings, Inc.*, 124 F.3d at 1252–1254.

As discussed above, the SAC alleges a coordinated marketing and sales
scheme involving standardized offering materials, centralized broker training,
and overlapping roles among Defendants. It identifies the substance of the
misleading representations, the channels through which they were
disseminated, when they were made, and the roles Defendants allegedly played
in creating, approving, or reinforcing those representations.

Defendants Thomas Smith, Brent Smith, Adam Long, Kevin Long, Spencer Taylor, and the entities they operated through, were partners in the operation, with specific roles. SAC ¶¶ 145–159; MOU. The Smiths and the Longs planned the scheme with Colliers in around mid-2020, as outlined in the MOU. Together, they crafted a marketing scheme, payment structure, and training program to implement the scheme through jointly owned entities (Defendants Millrock Investment Fund 1, Millcreek Commercial Properties). *See* MOU. Thomas Smith, Brent Smith, Adam Long, Kevin Long, Spencer Taylor held equity in the jointly owned Millrock and Millcreek Commercial through various LLCs. SAC ¶¶ 22, 33–43, 53–54, 64–66, 151, 722; MOU. Their distinct roles are described in detail in the SAC and summarized above—but also detailed is the collective fraudulent conduct, taking Plaintiffs money under the Millrock name, based on false marketing materials disseminated under the Millcreek name. SAC pg. 62–97. Colliers and Millcreek (and thus each of the individual owners of Millcreek) took commissions from the sales, and Millrock (and thus each of the individual owners of Millrock) and SARC Draper took the proceeds. SAC ¶¶ 370–385.

Where defendants are alleged to have acted collectively through an integrated scheme, collective allegations satisfy Rule 9(b). *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023). This is especially true after *Lorenzo*, which confirms that defendants who disseminate or participate in

18

deceptive conduct may be primarily liable even if they are not the ultimate

speakers, 139 S. Ct. at 1101–02.

Defendants' argument ultimately seeks to impose a pleading requirement

that would nullify scheme liability at the outset. The SAC provides fair notice of

the claims and the grounds upon which they rest. That is all Rule 9(b) requires.

### III.    DEFENDANTS' FEDERAL STATUTE-OF-LIMITATIONS AND STATUTE-OF-REPOSE ARGUMENTS FAIL
*(Colliers MTD 13–17; Millrock MTD 14–17; Kevin Long MTD; Taylor MTD 8–9;
SARC Draper MTD 7–8; Adam Long MTD 9)*

Defendants argue that Plaintiffs' federal securities claims are barred by

the one statutes of limitations or the five-year statute of repose in Section 13.

Those arguments fail because Defendants do not establish untimeliness on the

face of the SAC.

### A.  The SAC Plausibly Alleges Timely Discovery (First and Third Causes of Action)

Under § 1658(b)(1), a § 10(b) claim accrues when a plaintiff discovers, or

reasonably should have discovered, the facts constituting the violation,

including scienter. *Merck & Co. v. Reynolds*, 559 U.S. 633, 646–650 (2010). Mere

awareness of economic loss or investment underperformance does not trigger

accrual. *Id.*

19

The SAC alleges that Plaintiffs were repeatedly assured that the TIC investments remained stable and protected even as problems emerged. SAC ¶¶ 209–224. Plaintiffs allege that Defendants continued to represent that tenant defaults were temporary or manageable and that the purported protections would operate as promised. SAC ¶¶ 455–456, 483, 508; *see also* SAC ¶¶ 681–688 (Concealment/Fraudulent Nondisclosure Claim).

According to the SAC, and as further discussed in the next section, *infra*, Plaintiffs did not and could not reasonably discover the deceptive nature of Defendants' representations until the true nature of the sham investment materialized over time. SAC ¶¶ 264, 271, 415, 476–483, 504, 608i, 634i. These allegations plausibly support delayed discovery of both falsity and scienter.

**B.  Section 13 Limitations and Repose Do Not Warrant Dismissal of the Second Cause of Action at the Pleading Stage**

Similarly, Defendants move to dismiss the Second Cause of Action on the ground that Plaintiffs allegedly failed to plead compliance with the one-year statute of limitations set forth in Section 13 of the Securities Act, 15 U.S.C. § 77m. That argument fails because the SAC pleads facts showing that the Lehi and Crockett Plaintiffs filed their Section 12(a)(1) claims within one year of discovering the alleged violations, after Defendants' conduct prevented earlier discovery.

Section 13 provides that an action under Section 12(a)(1) must be brought "within one year after the violation upon which it is based." 15 U.S.C. § 77m. Where plaintiffs allege that defendants' affirmative conduct concealed the violation, courts have recognized that equitable tolling may apply, and that dismissal is improper unless untimeliness is clear from the face of the complaint. *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041–1042 (10th Cir. 1980); *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) ("Typically, facts must be developed to support dismissing a case based on the statute of limitations.").[2]

The SAC alleges that the Lehi and Crockett TIC interests were purchased in November 2022. SAC ¶ 376. It further alleges that Plaintiffs did not discover the alleged unregistered-securities violations or the broader fraudulent scheme until April and May 2024, when tenant defaults, bankruptcies, and contradictory information revealed that the investments were not as represented. SAC ¶¶ 476–483.

The SAC pleads a coordinated and complex scheme that plausibly impeded earlier discovery. Defendants allegedly targeted individual investors

---

[22] Whether the court applies the inquiry notice framework from *Sterlin v. Biomune Systems*, 154 F.3d 1191, 1202 (10th Cir. 1998), or equitable tolling, fraudulent concealment bears on the accrual of the affirmative defense of statute of limitations.

operating under the compressed 180-day timeline imposed by Section 1031 exchanges, limiting their ability to conduct independent due diligence before closing. SAC ¶¶ 171–174. During this period, Defendants—including Colliers and Kevin Long—marketed the TIC interests as "safe, stable, and secure," and as appropriate vehicles for passive retirement income, supported by purported guarantees, reputable institutional participants, and triple-net leases. SAC ¶¶ 207—224.

The SAC further alleges that Defendants' concealment continued after the sales closed. SAC ¶¶ 681–688 (Concealment/Fraudulent Nondisclosure Claim). According to the complaint, Defendants retained control over the properties and the flow of information to investors, continued to provide reassurances, and selectively disclosed information even after tenants defaulted on the leases. SAC ¶¶ 408, 453–460, 476–483, 516–519, 566–569, 590–591. As to Kevin Long specifically, the SAC alleges that between October 2023 and February 2024 he sent communications to Crockett investors containing false or misleading representations regarding tenant financial stability, shortly before the tenant entered bankruptcy. SAC ¶ 549. Plaintiffs allege that this post-sale conduct further delayed their discovery of the alleged violations. SAC ¶¶ 478–483, 567.

Taken as true, these allegations plausibly support equitable tolling of the one-year limitations period until Plaintiffs discovered the alleged violations in

April and May 2024. Plaintiffs acted diligently thereafter, filing this action on March 3, 2025—less than one year after discovery (and within the three-year repose period).

Defendants treat the purchase dates as dispositive and contend that Plaintiffs were required to plead compliance with Section 13 solely by reference to those dates. But where, as here, the complaint alleges affirmative concealment and delayed discovery, *Aldrich* makes clear that dismissal at the pleading stage is improper. 627 F.2d at 1041–1042. Plaintiffs are not required at this stage to prove equitable tolling; they need only allege facts that plausibly support its application. The SAC does so.

Defendants' further treat the Section 13's one-year limitations period as an absolute time-bar. *See* Millrock MTD at 17. But that position renders the three-year statute of repose in Section 13 meaningless. "Congress did not obliterate [equitable tolling and related] doctrines so much as it set bounds on the length of delay." *Anixter v. Home-Stake Production Co.*, 939 F.2d 1420, 1435 (10th Cir. 1991). By including the one-year limitations and three-year repose periods together, Congress opened the door to extending the limitations period in exceptional circumstances—until the door permanently closes at the three-year mark.

Finally, Defendants rest their statute of limitations and repose arguments on the premise that Plaintiffs are required "to plead facts showing timely compliance with Section 13." *See* Kevin Long MTD at 6. Assuming Tenth Circuit plaintiffs are required to anticipate affirmative defenses and address them in the pleadings, Plaintiffs have complied, alleging specific examples of concealment throughout the lengthy complaint—as discussed *supra*.

Defendants fraudulently concealed material facts such that the Lehi and Crockett Owners were not on notice of their claims until approximately May 2024. They filed their Unregistered Securities claim in March 2025, before the one-year statute of limitations (around May 2025) and three-year repose (Late 2025) periods barred the claims.

## IV.    DEFENDANTS' § 20(a) CONTROL-PERSON ARGUMENTS FAIL
*(Millrock MTD at 9–10; Taylor MTD at 10; SARC Draper MTD at 8; Adam Long MTD at 10–11)*

Defendants argue that Plaintiffs fail to plead control-person liability under Section 20(a) of the Exchange Act. That argument fails because the SAC plausibly alleges both a primary violation and control.

To plead a Section 20(a) claim, Plaintiffs must allege (1) a primary violation and (2) control over the primary violator. *Maher v. Durango Metals,*

*Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998). At the pleading stage, Plaintiffs need only allege facts supporting a plausible inference of control.

The SAC alleges that Millcreek and Millrock (owned and operated by Thomas Smith, Brent Smith, Adam Long, Kevin Long, and Spencer Taylor through their LLCs), in partnership with Colliers and SARC Draper, exercised control over the brokerage operations, marketing practices, and agent training. SAC ¶¶ 22, 33–43, 53–54, 64–66, 151–153, 269, 381,722; MOU. It further alleges that Millrock and Millcreek principals and affiliated entities exercised control over the structure and promotion of the TIC program. *Id.* Plaintiffs also allege that Thomas Smith, Brent Smith, Adam Long, Kevin Long, Steve Caton (acting as SARC Draper's principal), and Lew Cramer (Colliers' executive) exercised control through leadership roles and decision-making authority within the sales operation. *Id.* Together, this group of individuals and entities operated under Millcreek and Colliers branding—integrating their brokerage, promotion, marketing, and training to induce Plaintiffs' investments through misrepresentations. SAC ¶¶ 198–261.

These allegations suffice to plead both elements of control person liability. Defendants' arguments concerning good faith or lack of culpable participation raise affirmative defenses that cannot be resolved on a motion to dismiss. *Maher,* 144 F.3d at 1305.

## V.  THE STATE CLAIMS ARE TIMELY
*(Colliers MTD at 19–23; Taylor MTD at 22–23)*

Colliers argues that the following state claims are time-barred:  (1)
Arkansas unregistered security or broker, (2) California securities violations, (3)
Utah unregistered security or broker, (4) Wyoming securities violations, and (5)
Utah negligence and negligent misrepresentation claims. Spencer Taylor argues
Plaintiffs Elder Abuse claims is time-barred.

Concealed fraud suspends the running of the statute of limitations for the
state claims, and the suspension remains in effect until the party having the
cause of action discovers the fraud/negligence or should have discovered it
using reasonable diligence. *Adams v. Wolf*, 73 Ark. App. 347, 43 S.W.3d 757
(2001); Cal. Code Civ. Proc. § 338(d) ("An action for relief on the ground of fraud
or mistake. The cause of action in that case is not deemed to have accrued until
the discovery, by the aggrieved party, of the facts constituting the fraud or
mistake."); C.R.S.A. § 11-51-604(8); Utah Code § 78-12-26(3); WY ST § 17-4-
509(k)(ii); *Williams v. Howard*, 970 P.2d 1282, 1286 (Utah 1998).

As discussed in the response to the Section 13 limitations and repose
arguments, concealment was a prominent feature of Defendants' scheme. The
same discovery and tolling principles apply under Arkansas, California, Utah,
and Wyoming law. *See, e.g., State v. Diamond Lakes Oil Co.*, 347 Ark. 618, 66

S.W.3d 613 (Ark. 2002) ("This court has held that fraud or deliberate concealment suspend the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence."); *Applied Med. Corp. v. Thomas*, A145867 (Cal. App. Mar 13, 2017) ("An important exception to the general rule of accrual is the discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (cleaned up)); *Rauschenberger v. Radetsky*, 745 P.2d 640 (Colo. 1987) (The 'discovery rule,' generally, is the doctrine that a claim for relief does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the conduct upon which the claim is based."); *Hill v. Allred*, 2001 UT 16, 28 P.3d 1271 (Utah 2001) ("The discovery rule is applicable when it is mandated by statute, when a defendant has concealed a plaintiff's cause of action, or when exceptional circumstances exist."); *Mason v. Laramie Rivers Co.*, 490 P.2d 1062 (Wyo. 1971) ("The basic principle recognized by plaintiffs and prevailing in most jurisdictions, applicable to both law and equity, is that the statute begins to run in fraud cases when there is discovery by the aggrieved party of the facts constituting the fraud. Actual knowledge of the fraud will be inferred if the aggrieved party by the exercise of due diligence could have discovered it.").

As stated, the statute of limitations is an affirmative defense. Dismissal is proper at Rule 12(b)(6) only when the complaint itself admits the bar. *Jones v. Bock*, 549 U.S. 199, 215 (2007). In these circumstances, the full scope of Plaintiffs' state of mind throughout Defendants' concealment is not before the Court. Dismissal of these claims is premature.

## VI.    COLLIERS' PERSONAL JURISDICTION ARGUMENT FAILS.

*(Colliers MTD 6–9)*

Colliers International Group, Inc. ("CIGI") and Colliers International Holdings (USA), Inc. ("CIH") argue that the Court lacks personal jurisdiction because they are not domiciled in Utah and allegedly lack minimum contacts. That argument fails because Plaintiffs assert federal securities claims subject to nationwide service of process and have adequately pleaded those claims.

Under 15 U.S.C. § 78aa, personal jurisdiction exists where a defendant has minimum contacts with the United States as a whole, not the forum state, so long as the federal claim is adequately pleaded. *SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990); *Pinkerton v. United States*, 328 U.S. 640, 643 (1946). The Tenth Circuit applies this principle in Exchange Act cases. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000).

The SAC alleges that Colliers International Group exercised control over U.S.-based subsidiaries engaged in the challenged brokerage and marketing

activities, derived revenue from those activities, and purposefully directed conduct toward U.S. investors. SAC ¶¶ 150, 198–205. Colliers makes no showing of constitutionally significant inconvenience sufficient to defeat jurisdiction under *Peay*.

Moreover, Colliers' jurisdictional argument expressly turns on its contention that Plaintiffs failed to plead viable federal securities and RICO claims. Colliers MTD at 7–8. Because Plaintiffs have adequately pleaded Exchange Act and RICO violations—indeed, Colliers does not even challenge the RICO claims—Colliers' jurisdictional challenge fails as a matter of law.

Finally, the SAC alleges Utah-directed conduct sufficient to establish specific jurisdiction under traditional principles. SAC pgs. 49–97 (starting with Colliers' Offering Memoranda and ending with Colliers' commissions); *see also* MOU (training, program structure, compensation). Plaintiffs allege that Colliers participated in marketing and selling TIC interests to Utah-based investors through Utah-directed communications—with Colliers-marketed properties located in Lehi and Draper for which Colliers received sales commissions. SAC ¶¶ 236, 370, 374.  Kevin Long, Adam Long, Lew Cramer were Colliers employees in its Utah offices when they formed the partnership between Millrock and Colliers. SAC ¶¶ 144, 146, 150–152; MOU. Adam Long worked from the Toronto office during this timeframe. SAC ¶ 152. The corporate executives of CIGI and

CIH have direct authority over Colliers Utah operations, which necessarily

includes the TIC program. SAC ¶¶ 9–16. Indeed, Mathew Hoskins (chief legal

counsel for CIGI) and Gil Borok (CEO of CIH) are managers of Colliers

International Intermountain, LLC—the Utah entity. SAC ¶ 11.

That suffices at the pleading stage.[3]

## VII.    DEFENDANTS' ARGUMENTS UNDER THE UTAH UNIFORM SECURITIES ACT FAIL

*(Raised by Colliers at MTD 17–19; Millrock at MTD 17–20; Taylor at MTD 11; SARC
Draper at MTD 9–10; Adam Long at MTD 11–12)*

Colliers, Millrock, Taylor, SARC Draper, and Adam Long argue that

Plaintiffs fail to state a claim under the Utah Uniform Securities Act ("UUSA")

because the TIC interests are not securities. Their argument misstates Utah law

and ignores the SAC's allegations.

### A.  The SAC Plausibly Alleges That the TIC Interests Are Securities Under Utah Law

Defendants do not appear to argue there is a failure to plead a plausible,

sufficiently detailed claim.  Rather, they primarily seek a determination of law,

based on what has been pleaded, about whether the investments in this case

were securities under Utah law.  But that determination cannot be made without

---

[3] In the event the Court requires additional evidence, limited jurisdictional
discovery would be appropriate and proportional to the needs of this case.

reaching matters outside of the pleadings and drawing unreasonable inferences in the defendants' favor.

The SAC states a case for securities fraud under federal and Utah law:  The TIC offerings at issue were securities; each of the Defendants was a culpable participant in marketing and selling them to Plaintiffs under false pretenses; Plaintiffs suffered damages thereby when the investment failed. SAC ¶¶ 597–609, 616–626; 17 C.F.R. § 240.10b-5; Utah Code § 61-1-1.  Utah law additionally provides a cause of action for sale of securities by unlicensed brokers or investment advisers, which the SAC pleads against the Defendants. SAC ¶¶ 639–645; Utah Code § 61-1-3.  Utah law also provides a cause of action against those who control or materially aid primary violations, which the SAC also pleads against the Defendants. SAC ¶¶ 646–650; Utah Code § 61-1-22.

Notably, the Motions don't contend that the TIC offerings in this case weren't securities under federal law.  This is important, because Utah securities fraud law generally follows federal securities fraud law both as to statute and case law. *State v. Schwenke,* 2009 UT App 345, 222 P.3d 768, 772.[4] Specifically, the

---

[4] "Although these federal cases are not dispositive when we are interpreting our state's securities legislation, *see State v. Larsen,* 865 P.2d 1355, 1360 (Utah 1993) ('[T]he Utah legislature has not required the courts to interpret the Utah Uniform Securities Act in lockstep with federal decisions.'), reliance on federal cases is certainly proper, *see Payable Accounting Corp. v. McKinley,* 667 P.2d 15, 17 (Utah 1983) (discussing that the Utah statute setting forth the definition of a

language defining securities is comparable between the Utah and federal statutes, including specific inclusion of "investment contracts" as securities. 15 U.S.C.A. § 77b(a)(1); Utah Code §§ 61-1-13(1)(s) & (ee)(i). And Utah courts have formally adopted the federal *Howey* test for defining and identifying securities. *See Payable Acct. Corp. v. McKinley*, 667 P.2d 15 (Utah 1983). If the TIC offerings are securities under federal law (which the FAC pleads, and the Motion does not dispute), then, due to identical statutory inclusion of "investment contracts," adoption of the *Howey* test, and Utah's general policy of following federal securities law in applying its own state securities fraud statute, they are presumptively securities under Utah law, as well.

Defendants' argument to the contrary rests on a particular statutory carveout in Utah law—essentially, an exception to the norm that might constitute an affirmative defense in their favor. Under this carveout, certain types of real estate offerings (not all) which might otherwise constitute securities under Utah statute and caselaw are specifically exempted from the definition of a security. Defendants have the burden of showing that the carveout applies

---

security came from the federal version and stating that '[b]ecause most state blue sky laws and the federal securities acts are similar, states frequently rely on federal case law in interpreting state security acts')."

here, based solely on the materials in the pleadings and with all reasonable inferences in Plaintiffs' favor.  As set forth below, they do not.

The specific statutory carveout is as follows, in pertinent part:

(ii)    "Security" does not include:

[...]

(C)    [...]

    (II)    an undivided fractionalized long-term estate in real property that consists of 10 or fewer owners; or

    (III)    an undivided fractionalized long-term estate in real property that consists of more than 10 owners if, when the real property estate is subject to a management agreement:

        (Aa)    the management agreement permits a simple majority of owners of the real property estate to not renew or to terminate the management agreement at the earlier of the end of the management agreement's current term, or 180 days after the day on which the owners give notice of termination to the manager; and

        (Bb)    the management agreement prohibits, directly or indirectly, the lending of the proceeds earned from the real property estate or the use or pledge of its assets to a person or entity affiliated with or under common control of the manager.

Utah Code § 61-1-13(1)(ee)(ii)(C).

Thus (and contrary to the motions' assertion) the carveout doesn't

apply to *all* fractionalized real estate offerings.  It only applies to those which

are subject to the terms of either subsections (II) or (III), and if (III), also

subject to (Aa) and (Bb) thereunder.

    To show that the carveout applies, the Motion would need to show

how many owners there are at each relevant property (in order to determine

if (II) or (III) applies based on their numerical ownership requirements), and

(if there are more than 10 owners), whether the specific terms of any

applicable "management agreement" match those described in (III)(Aa) or

(Bb).  And because the posture is a rule 12(b)(6), it needs to do so only from

the allegations in the SAC itself. *Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261

(10th Cir.1991).

    But the defendants don't address these issues at all.  They completely fail

to carry their burden to take a position on these factual questions and conduct

the analysis on them under the statute.  Conclusory assertions that these TIC

offerings were subject to some undefined management agreement won't do.

They must point to a specific management agreement with specific terms (again,

from the pleadings), and explain why that agreement qualifies as a

"management agreement" under Utah Code § 61-1-13(1)(ee)(ii)(C).  They must

then analyze and explain how those facts, assumed from the pleadings, make the

TIC offerings in this case—securities by every other measure—eligible for the

carveout under the subsections of Utah Code § 61-1-13(1)(ee)(ii)(C) described above.  Defendants don't do any of this.

And they can't.  These facts—the total number of owners at each property, whether there was any "management agreement" under the meaning of the statute (or indeed, more than one such agreement), and whether any such undefined agreement(s) contained any of the specific terms required in subsections (Aa) and (Bb) aren't explicitly addressed in the SAC and can only be brought in through extrinsic evidence.  Findings about these factual matters would necessarily require generous inferences in defendants' favor.  Whether the statutory carveout applies here can't be the subject of a rule 12(b)(6) motion.

The closest defendants come to showing that any of the necessary facts are contained in the four corners of the SAC is that ¶¶ 510–511 supposedly alleges that the Colliers/Long TIC Properties were subject to a management agreement.[5]  But even to get that far, Millrock Defendants stretch beyond what the SAC actually says.  The SAC alleges that Mary Street had significant responsibilities as property manager, which she discharged not to Plaintiffs' advantage but knowingly to the Colliers/Long Parties' benefit as a culpable

---

[5] Millrock MTD at 19.

participant in the overall scheme—but it doesn't mention a "management agreement," much less provide any details about one.

The existence of any such agreement (or agreements), their qualification as "management agreements" for the purposes of Utah Code § 61-1-13(1)(ee)(ii)(C), and their specific terms aren't an exception to the general rule that rule 12(b)(6) motions only contemplate matters within the four corners of the pleadings. In particular, any such agreement (or agreements) aren't "central to the plaintiff's claim," nor is it the case that "the parties do not dispute the documents' authenticity," as would be required to introduce them in a 12(b)(6) context. *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir.2007). Nor is there any specific agreement before the Court on this argument. For the defendants to prevail would require numerous inferences in their favor about the existence and terms of a yet-only-hypothetical "management agreement." These issues could be the subject of discovery and further litigation, but there isn't enough material here to make the factual and legal determinations that the Motion asks for.[6]

---

[6] Millrock Defendants are the only defendants that appear to challenge the Sixth Cause of Action for aiding and abetting state securities fraud. Millrock MTD at 20_21. In doing so they erroneously rely on *Caroles v. Sabey,* 2003 UT App 339, ¶ 36, to argue for dismissal of Plaintiffs' aiding and abetting state securities claim. Millrock MTD at 20–21. *Caroles* does not address Utah Code § 61-1-22 and thus has no application to the Sixth Cause of Action.

## VIII.  PLAINTIFFS ADEQUATELY PLEAD COMMON-LAW FRAUD AND NEGLIGENT MISREPRESENTATION

*(Millrock at MTD 12–13; Taylor at MTD 12–13; Adam Long MTD at 12–15)*

Defendants argue that Plaintiffs fail to plead common-law fraud and negligent misrepresentation because the SAC allegedly lacks particularity, duty, or reliance. Those arguments mischaracterize the SAC.

### A. Common-Law Fraud and Fraudulent Concealment

Under Utah law, a common law fraud claim requires:

(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Fid. Nat'l Title Ins. Co. v. Worthington*, 2015 UT App 19 ¶ 10.

"To prevail on a claim [for] fraudulent nondisclosure, a plaintiff must prove by clear and convincing evidence that (1) the defendant had a legal duty to communicate information, (2) the defendant knew of the information he failed to disclose, and (3) the nondisclosed information was material." *Anderson v. Kriser*, 2011 UT 66 ¶ 22.

37

Liability for these torts extends to those who authorize or participate in

the misrepresentation. *See Russell/Packard Development, Inc. v. Carson*, 2003 UT

App 316, ¶ 29 n.12 (Utah App. 2003).

As outlined above, the SAC alleges that the Defendants, from a superior

position of knowledge in the real estate industry, represented the TIC

investments as safe and stable, supported by creditworthy tenants and

meaningful guarantees, while omitting known facts about tenant instability and

inadequate protections. SAC pgs. 62–92. Plaintiffs allege that Defendants knew

or recklessly disregarded these facts and intended investors to rely on the

representations—as each of them were intimately involved in the marketing of

all or some of the properties. *Id.* Plaintiffs further allege that they relied on these

misrepresentations in purchasing the TIC interests and suffered damages when

the concealed risks materialized. SAC ¶¶ 357–375. These allegations satisfy

Utah's fraud elements.

### B. Negligent Misrepresentation[7]

Negligent misrepresentation arises when a party makes "careless or

negligent misrepresentation of a material fact" causing pecuniary harm to a

"second party [who] had a pecuniary interest in the transaction," and party

---

[7] Although Plaintiffs allege negligent misrepresentation against Long Holdings, LLC, they have not joined Adam Long to claim.

making the misrepresentation had "superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact." *Price-Orem Inv. Co. v. Rollins, Brown and Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986).

The SAC ties Smart Cove, LLC (Spencer Taylor), GTR Holdings, LLC (Brent Smith), and Long Holdings, LLC (Adam Long), directly to Millcreek Commercial, LLC. SAC ¶¶ 22, 39, 53,65, 722. Together with KGL Real Estate, LLC (Kevin Long), they were Millcreek's members during the alleged course of conduct. *Id.* That course of conduct involved disseminated Millcreek and Colliers branded offering memoranda that contained a litany of material misrepresentations. SAC pgs. 64–68. The Millcreek partners planned to disseminate the offering memoranda and other false marketing through sales agents—among them, Spencer Taylor; SAC ¶¶ 62, 152–153, 160–161, 198, 293—298; MOU. In doing so, they caused Plaintiffs damages. SAC pgs. 91–92. These Defendants directly benefitted from Millcreek marketing materials. FAC ¶¶ 62, 733–739; pgs. 91–92; MOU.

Plaintiffs make specific allegations placing Taylor, Brent Smith, and Adam Long—and the entities through which they operated—in a place of superior knowledge to Plaintiffs, with control over the marketing materials they used to induce Plaintiffs' investments. Based on their own participation they are liable

for negligent misrepresentation. And they are also liable for Millcreek's conduct
following its dissolution. FAC ¶ 79.

### IX.    PLAINTIFFS ADEQUATELY BREACH OF FIDUCIARY DUTY
*(Colliers MTD at 12; Taylor at MTD 14; Adam Long at MTD 15–16)*

Utah courts have repeatedly held that fiduciary duties do not arise in
every commercial transaction, but they do arise where one party reposes
particular confidence in another and the other party has superior knowledge or
influence and undertakes to act in the first party's interest. *First Security Bank of
Utah, N.A. v. Banberry Development Corp.,* 786 P.2d 1326, 1333 (Utah 1990).
Importantly, *Banberry* does not hold that fiduciary duties are categorically
unavailable in sales or investment contexts. It holds only that a fiduciary duty
does not arise automatically from a debtor-creditor or arm's-length relationship
absent additional facts showing trust, dependence, or advisory conduct. *Id.* The
fiduciary duty analysis is highly fact-intensive. *See, e.g., Hussein v. UBS Bank
USA,* 2019 UT App 100 ¶ 29, 446 P.3d 96, 105; *C & Y Corp. v. General Biometrics,
Inc.*, 896 P.2d 47, 53 n.7 (Utah App. 1995).

The SAC alleges that Adam Long, Millrock, and Colliers, designed and
implemented a coordinated sales and marketing scheme aimed at individual
investors—many of whom were retirees—operating under the time pressure
inherent in Section 1031 exchanges. SAC ¶¶ 172–176, 678. These allegations

describe more than arm's-length sales conduct. They plead a deliberate effort to
cultivate trust and dependence in a vulnerable investor population facing
statutory time constraints and complex tax consequences. And these defendants
invited Plaintiffs to repose special trust in them both before and during the
transaction by assuring Plaintiffs they would manage the investments. SAC ¶¶
482, 507, 510.

As to Adam Long, the SAC alleges ownership and control over the
underlying properties and participation in structuring and planning the TIC
offerings, including through the MOU governing the TIC program and its
marketing relationships. SAC ¶¶ 151–152, 267–270, 722, 737; MOU. The MOU
reflects a coordinated commercial arrangement that placed Adam Long and
others in a position to influence how the investments were presented to
investors, including Plaintiffs. *Id.*

As to Colliers, the SAC alleges that Colliers acted not merely as a broker
but as a central institutional participant whose reputation, branding, and
involvement were used to convey safety and legitimacy to investors. SAC ¶¶ 16,
139–153, 181–189, 243, 354a, 669; Offering Memoranda; MOU. Plaintiffs allege
that Colliers' role was integral to investor trust and reliance. *Id.*

As to Spencer Taylor, the SAC alleges direct communications with
investors providing specific factual assurances concerning lease execution,

tenant compliance, and the accuracy of risk-related representations, made for the purpose of inducing investment decisions. SAC ¶¶ 298–302. As with Adam Long, Taylor maintained ownership and control over the enterprise. SAC ¶¶ 22, 53–54.

Taken together, these allegations support the inference that these defendants assumed advisory and influential roles with respect to Plaintiffs' investment decisions.

Even if Defendants dispute whether their conduct ultimately gives rise to fiduciary duties, Utah law does not permit dismissal where the complaint plausibly alleges facts supporting such a relationship. Whether Defendants in fact assumed positions of trust and influence over Plaintiffs is a question for the finder of fact, not one to be resolved on a Rule 12(b)(6) motion.

## X.    PLAINTIFFS ADEQUATELY PLEAD CIVIL CONSPIRACY AND AIDING-AND-ABETTING
*(Millrock MTD at 12; Taylor at MTD 14; Adam Long MTD at 17–18)*

Defendants argue that Plaintiffs' conspiracy and aiding-and-abetting claims fail because no underlying tort is adequately pled. That premise is wrong.

### A. Civil Conspiracy

Civil conspiracy under Utah law requires an agreement to accomplish an unlawful objective and an overt act in furtherance. *Pohl, Inc. v. Webelhuth*, 2008

UT 89, ¶ 29. But "[i]t is not necessary that each member of the conspiracy

commit an unlawful act in furtherance of the conspiracy to be liable. *Pyper v.*

*Reil*, 437 P.3d 493, 498 (Utah App. 2018).

The SAC alleges coordinated conduct among Defendants to structure,

market, and sell TIC investments using misleading representations. *See* SAC ¶¶

22, 39–41, 53–54, 61–62, 65–66, 79, 151–152, 381, 384, 452, 753e, 722; MOU

(Specifically as to Millrock, Taylor, and Adam Long, which allegations are

detailed throughout this brief). These allegations plausibly allege agreement and

concerted action.

### B.  Aiding and Abetting

Utah recognizes aiding-and-abetting liability where a defendant

knowingly provides substantial assistance to another's tortious conduct. *Giles v.*

*Mineral Res. Int'l, Inc.*, 2014 UT App 143, ¶ 23.

The SAC alleges that Defendants knowingly assisted the fraud by

approving marketing materials, training brokers, and facilitating transactions.

*Id.* The pleadings adequately allege aiding and abetting fraud and other torts

under state law.

### XI.    PLAINTIFFS ADEQUATELY PLEAD UNJUST ENRICHMENT
*(Millrock MTD at 13–14; Taylor MTD at 16–17; Adam Long MTD at 19–21)*

Unjust enrichment requires (1) a benefit conferred, (2) the defendant's

knowledge of it, and (3) retention under circumstances that make it unjust.

*Rawlings v. Rawlings,* 2010 UT 52, ¶ 29; *Jeffs v. Stubbs,* 970 P.2d 1234, 1248–1249

(Utah 1998). Plaintiffs allege they paid purchase proceeds and fees embedded in

the offerings, that Millrock-affiliated actors (including Thomas Smith, Spencer

Taylor, and Adam Long—each partners in Millcreek and/or Millrock) structured,

financed, and benefited from those proceeds, and that retention is unjust given

the alleged statutory and common-law violations. SAC ¶¶ 22, 370–375, 385, 395,

432, 451, 533c, 581–583; MOU.

## XII.    PLAINTIFFS ADEQUATELY PLEAD ELDER ABUSE
*(Colliers MTD at 23; Taylor MTD at 17–19; Adam Long MTD at 16–17)[8]*

Whether an elder's "property" was taken or retained by undue means does

not turn mechanically on whose name appears on purchase documents. For

example, Utah Code § 76-5-111.4(2) casts a wide net over the deprivation of a

vulnerable adults "funds," "assets," "property," "credit," and "resources."  Utah

Code § 62A-3-314 extends a private right of action for any "harm or financial

loss" suffered by the vulnerable adult as a result of exploitation. Plaintiffs allege

---

[8] The SAC mistakenly alleges that Plaintiff Claudia Griffin was both "61" and "65 or older" when she invested. FAC ¶¶ 90, 689. Ms. Griffin was 67 at the time of purchase. A notice of errata switching the order of "61" and "67" in paragraph 90 is forthcoming.

that the Webers' and Ms. Griffin's funds were solicited and used in the TIC purchases and that Colliers/Millcreek targeted vulnerable seniors (over the age of 65). SAC ¶¶ 90, 98, 176–182, 689.

Plaintiffs allege a concerted effort by Defendants, including Colliers, Taylor, and Long, to take retirees investment funds through deception—under Utah law, that is financial exploitation. Defendants will have an opportunity to discover the extent of John and Gayle Webers' "serious physical and mental decline associated with aging." SAC ¶ 81. In their principal and operational capacities in the scheme, Spencer Taylor, Adam Long, and Colliers perpetrated elder abuse on the Webers and Ms. Griffin. Taylor's deception was direct. SAC ¶ 300.

Plaintiffs adequately plead an elder abuse claim.

## XIII.  PLAINTIFFS' CIVIL RICO CLAIMS ARE ADEQUATELY PLED IN THE ALTERNATIVE
*(Taylor MTD at 23–26; Adam Long MTD at 10)*

Federal Rule of Civil Procedure 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically," and Rule 8(d)(3) further allows parties to "state as many separate claims or defenses as it has, regardless of consistency." That rule applies where, as here, a threshold legal issue is disputed. Plaintiffs allege that the TIC interests are

securities under federal law. *See, e.g.*, SAC ¶ 597. Multiple defendants have

denied that proposition in their answers to the SAC. *See, e.g.*, Machlis's Answer,

Dkt. 151 at 123; Strong's Answer, Dkt. 155 at 119. Until that dispute is resolved,

Rule 8 permits Plaintiffs to plead a non-securities statutory theory in the

alternative. *See, e.g., Bald Eagle Area School Dist. v. Keystone Financial*, 189 F.3d

321, 330 (3rd Cir. 1999); *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir.

2019) (rejecting the PSLRA bar for the lack of a security and addressing the

merits of the RICO claim).

Taylor's motion asks the Court to assume, at the Rule 12 stage, that the TIC

interests are securities—and then use that assumption to foreclose alternative

statutory remedies. Rule 8 does not permit that.

Adam Long's motion argues that Plaintiffs rely on generalized RICO

allegations against him. Although he did not maintain a public role, he played a

prominent one that including several violations of federal law. Along with Kevin

Long, Brent and Thomas Smith, and Lew Cramer, Adam was involved in a senior

position in the organization from the outset. FAC ¶¶ 151–153; MOU. He trained

the sales agents who were disseminating the false statements to the public. *Id.*

His contributions resulted in interstate money transfers for which he directly

benefitted. FAC ¶¶ 581–596, 737–738. With those illegal proceeds, he carried the

fraudulent enterprise forward as a principal of Axia Partners. FAC ¶ 723–730.

Adam Long used others to perpetuate a scheme that he played a significant role in designing and operating. The private nature of his role does not relieve him of the obligation to follow federal law. The scheme and his role therein are pleaded with particularity.

The Civil RICO claims should not be dismissed as to Taylor or Adam Long.

## **CONCLUSION**

The Second Amended Complaint pleads detailed, transaction-specific facts supporting plausible federal and Utah law claims. Defendants' motions improperly seek to resolve factual disputes, impose proof-level requirements, and dismantle a unified fraudulent scheme at the pleading stage. Rule 12 does not permit that result.

For these reasons, Defendants' motions to dismiss should be denied.

Dated: February 6, 2026.

Respectfully Submitted,

*/s/ Andrew G. Deiss*
Andrew G. Deiss (Utah Bar # 7184)
Corey D. Riley (Utah Bar # 16935)
Deiss Law P.C.
10 West 100 South, Suite 700
Salt Lake City, UT  84101
Telephone: (801) 433-0226
deiss@deisslaw.com
criley@deisslaw.com
*Attorneys for Plaintiffs*