UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOHN WEBER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COLLIERS INTERNATIONAL GROUP, INC., et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [162] KEVIN LONG'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART [154], [157], [158], [163], AND [165] DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 2:25-cv-00162-DBB-DBP<br><br>District Judge David Barlow |

Before the court are six motions to dismiss Plaintiffs' Second Amended Complaint ("SAC")[1]: Defendants Brent Smith, Thomas Smith, GTR Holdings, LLC, and Millrock Investment Fund 1, LLC's ("Millrock") (collectively "Millrock Defendants") Motion to Dismiss ("Millrock Motion");[2] Defendants Colliers International Group, Inc., Colliers International Holdings (USA), Inc., and Colliers International Intermountain , LLC's (collectively "Colliers Defendants") Motion to Dismiss ("Colliers Motion");[3] Defendants Spencer Taylor and Smart Cove, LLC's (collectively "Taylor Defendants") Motion to Dismiss ("Taylor Motion");[4] Defendant Kevin Long's Motion to Dismiss ("Kevin Long Motion");[5] Defendants Jerald Adam Long and Long Holding, LLC's (collectively "Adam Long Defendants") Motion to Dismiss

---

[1] Second Amended Compl. ("SAC"), ECF No. 147, filed Dec. 15, 2025.
[2] Smith, Smith, GTR, and Millrock Motion to Dismiss ("Millrock MTD"), ECF No. 154, filed Dec. 19, 2025.
[3] Colliers Motion to Dismiss ("Colliers MTD"), ECF No. 157, filed Dec. 19, 2025.
[4] Taylor and Smart Cove Motion to Dismiss ("Taylor MTD"), ECF No. 158, filed Dec. 19, 2025.
[5] Kevin Long Motion to Dismiss ("Kevin Long MTD"), ECF No 162, filed Jan 2, 2026.

("Adam Long Motion");[6] and Defendant SARC Draper, LLC's ("SARC") Motion to Dismiss ("SARC Motion).[7]

## BACKGROUND

This case involves allegations of fraud and securities fraud related to the sale of fractional tenant in common ("TIC") interests in various pieces of commercial property.[8] Plaintiffs allege the following:

Defendants conspired to market, promote, and sell TIC interests in several commercial properties, including properties in Draper, Utah; Lehi, Utah; Pine Bluff, Arkansas; and Crockett, Texas.[9] The TIC interests in these properties were marketed as including valuable "triple net leases," meaning that the tenants were responsible for insurance, maintenance costs, and property taxes.[10] Defendants repeatedly made various representations about the properties both directly and indirectly through agents, third-parties, and advertisements.[11] Specifically, Defendants represented, among other things, that each property was under a long-term corporate lease, that these leases were secure, that the leases were backed by corporate guarantees, that some leases were insured by Lloyds of London, and that the investment properties satisfied IRS requirements for 1031 exchanges.[12] Defendants also omitted certain information, like that some defendants received commissions for their work with Plaintiffs, that funds earmarked for improvements in some properties were mismanaged or missing, that that the corporate tenants lacked concrete

---

[6] Adam Long Motion to Dismiss ("Adam Long MTD"), ECF No. 165, filed Jan. 9, 2026.
[7] SARC Draper, LLC Motion to Dismiss ("SARC MTD"), ECF No. 163, filed Jan. 2, 2026.
[8] SAC 2–6.
[9] *Id.* at 3.
[10] *Id.* at 4.
[11] *Id.* at 64 ¶ 300–91 ¶ 302. Because the SAC includes some repetition in its paragraph numbering, the court's citations to the SAC will include both page numbers and paragraph numbers for clarity.
[12] *Id.*

2

assets or viable business plans, and that the some defendants had already sold their interests in the properties.[13] Based on these representations and omissions, each plaintiff invested several hundred thousand dollars in one or more of the properties.[14] Collectively, Plaintiffs invested at least $4.7 million in these properties.[15]

After Plaintiffs purchased TIC interests in the properties, the corporate tenants defaulted on their respective leases.[16] Some of these defaults were initially concealed by Defendants, who told Plaintiffs that the lease agreements would continue normally or paid the late rent themselves while representing that it came from the tenant.[17] Eventually, Plaintiffs learned about the defaults. They also learned that the corporate guarantors would not fulfill their obligations and that no Lloyds of London insurance bonds had been issued for any of the properties.[18] Plaintiffs further discovered that their TIC interests had been sold to them at extremely inflated values, making it impossible to recoup their losses by reselling the TIC interests or reletting the properties.[19]

In response to these allegations, several groups of defendants filed motions to dismiss, resulting in the six motions currently before the court. Plaintiffs respond to these six motions to dismiss in a single omnibus opposition motion.[20]

---

[13] *Id.*
[14] *Id.* at 91 ¶ 357–92 ¶ 364.
[15] *Id.* at 92 ¶ 364.
[16] *Id.* at 97 ¶ 386, 100 ¶¶ 405–06, 108 ¶ 453, 113 ¶ 484.
[17] *Id.* at 97 ¶ 396–98 ¶ 392, 108 ¶¶ 456–58.
[18] *Id.* at 102 ¶¶ 418–20, 109 ¶ 459, 114 ¶ 491.
[19] *Id.* at 103 ¶ 427–104 ¶ 435, 109 ¶ 465–110 ¶ 471, 114 ¶ 497–115 ¶ 501.
[20] Omnibus Memorandum Opposing Motions to Dismiss ("Opp'n"), ECF No. 178, filed Feb. 6, 2026.

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[21] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[23] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[24]

In addition, under Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[25] Rule 9(b) applies to all claims that are "based on the same core allegations of deception, false misrepresentations, and fraudulent conduct."[26] To satisfy Rule 9(b)'s heightened pleading standard, among other things,

---

[21] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 764 (10th Cir. 2019)).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[23] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

[24] *Iqbal*, 556 U.S. at 1951 (emphasis omitted).

[25] Fed. R. Civ. P. 9(b).

[26] *Security Sys., Inc. v. Alder Holdings, LLC*, 421 F.Supp.3d 1186, 1194 (D. Utah 2019); *see also Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("By its terms, Rule 9(b) applies to 'all averments of fraud.' This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").

4

a pleading must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[27]

The Private Securities Litigation Reform Act of 1995 ("PSLRA") also imposes heightened pleading requirements on private actions alleging false or misleading statements in connection with the sale of securities.[28] In such cases, "the complaint shall specify each statement alleged to have been misleading, [and] the reasons why the statement is misleading."[29] In addition, where recovery is conditioned on proof of a particular state of mind, "the complaint shall, with respect to each act or omission alleged to violate [the securities laws], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[30]

## DISCUSSION

Plaintiffs assert eighteen causes of action against Defendants.[31] The six motions to dismiss challenge each of these causes of action with respect to at least some of the defendants. The court will examine each cause of action in turn.

## I.    First Cause of Action — Securities Fraud

Plaintiffs' first cause of action alleges violations of § 10(b) of the Securities Exchange Act and of its implementing regulation, Rule 10b-5.[32] Section 10(b) of the Securities Exchange Act states makes it "unlawful for any person, directly or indirectly" to use "any manipulative or

---

[27] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 12152 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

[28] 15 U.S.C. § 78u-4(b).

[29] *Id.* § 78u-4(b)(1).

[30] *Id.* § 78u-4(b)(2)(A).

[31] *See* SAC 139 ¶ 597–179 ¶ 762.

[32] *Id.* at 139 ¶ 597–143 ¶ 609.

deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe" in connection with "the purchase or sale of any security," whether registered or unregistered.[33] To implement § 10(b), the SEC promulgated Rule 10b-5, which states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.[34]

The first cause of action alleges that Defendants violated Rule 10b-5(b) by making untrue statements of material fact[35] and Rule 10b-5(a) and (c) by engaging in acts and employing a scheme to deceive and defraud Plaintiffs.[36]

The Tenth Circuit has explained that the elements of a private securities fraud claim based on Rule 10b-5(b) are:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages because of [its] reliance.[37]

---

[33] 15 U.S.C.A. § 78j(b).

[34] 17 C.F.R. § 240.10b-5.

[35] SAC 140 ¶ 598.

[36] *Id.* at 142 ¶ 607.

[37] *In re Overstock Sec. Litig.*, 119 F.4th 787, 799 (10th Cir. 2024) (quoting *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012)).

6

Because Rule 10b-5(b) creates a cause of action for securities fraud based on misrepresentations, some of its elements are subject to the higher pleading standards of Rule 9(b) and the PSLRA.[38] Specifically, the first and second elements, a material misrepresentation or omission and scienter, must be pled with particularity as required by Rule 9(b) and the PSLRA.[39] Additionally, the language of Rule 10b-5(b) restricts liability to defendants who actually "make" an untrue statement.[40] The Supreme Court has defined the "maker of a statement" under Rule 10b-5(b) as "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."[41]

The elements of scheme liability under Rule 10b-5(a) and (c) are similar. While 10b-5(b) prohibits material misstatements, provisions 10b-5(a) and (c) "prohibit manipulative acts."[42] To state a claim under these provisions, "a plaintiff must allege: '(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.'"[43] Such allegations are also subject to the heightened pleading standards of Rule 9(b).[44]

Here, several defendants challenge Plaintiffs' first cause of action on the grounds that it fails to plead those defendants' alleged misrepresentations and scienter with sufficient

---

[38] *See Rycar Tr. v. Yates Fam. Invs.*, 799 F. Supp. 3d 1178, 1200 (D. Utah 2025).

[39] *Id.* ("Securities fraud plaintiffs must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. . . . [T]he first and second elements, [] are subject to the heightened pleading requirement"); 15 U.S.C. § 78u-4(b)(1–2).

[40] 17 C.F.R. § 240.10b-5(b); *Combs v. SafeMoon LLC*, No. 2:22-CV-00642-DBB-JCB, 2024 WL 1347409, at *8 (D. Utah Mar. 29, 2024).

[41] *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

[42] *In re Overstock Sec. Litig.*, 119 F.4th at 801.

[43] *Id.* (quoting *Plumber & Steamfitters Loc. Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021)).

[44] *Id.* (citing *Plumber*, 11 F.4th at 105 ("To maintain a 10b–5(a) or (c) claim, a plaintiff must specify 'what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue.'") (quoting *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005))).

particularity. The Colliers Defendants also challenge the first cause of action on statute of limitations grounds as to the Pine Bluff and Draper plaintiffs.[45]

### A.    Rule 9(b) and PSLRA Pleading Standards

#### 1.    Thomas Smith and GTR Holdings, LLC

Defendants Thomas Smith and GTR Holdings, LLC ("GTR") argue that the SAC fails to state with particularity any misrepresentations or fraudulent statements they made.[46] They contend that the SAC attributes most of the allegedly fraudulent misrepresentations to large groups of defendants without specifying where or when the statements were made or which defendant made them.[47] Thomas Smith and GTR argue that none of the alleged misrepresentations in the SAC are specifically attributed to them.[48]

##### i.    Allegations

The SAC alleges that Thomas Smith provided "Oversight & Leadership" for the "Colliers/Long TIC Program" and acted as a financial partner.[49] It also asserts that he provided "accountability oversight;"[50] trained sales agents;[51] and "performed an instrumental role in developing and executing the Colliers/Long TIC Program including the development, marketing, and sale" of the four properties.[52] Additionally, Thomas Smith is included in a group of at least

---

[45] Colliers MTD 13.
[46] Millrock MTD 7.
[47] *Id.*
[48] *Id.* at 8.
[49] SAC 29 ¶ 158.
[50] *Id.* at 30 ¶ 159.
[51] *Id.* at 31 ¶ 160.
[52] *Id.* at 31 ¶ 161.

seventeen other defendants referred to throughout the SAC as the "Colliers/Long Parties."[53] Numerous alleged misrepresentations are attributed to the Colliers/Long Parties group.[54]

The SAC alleges that GTR was a member of Millcreek Commercial Properties, LLC ("Millcreek") and "[a]t all material times . . . was aware of, permitted, supervised, ratified, and authorized Millcreek's conduct."[55] It also asserts that GTR acted as a close business associate of other defendants[56] and includes GTR as a member of the Colliers/Long Parties.[57]

### ii.        Material Misrepresentation

The SAC does not specifically attribute any alleged material misrepresentations to either Thomas Smith or GTR. Allegations that Thomas Smith acted as a financial partner, helped develop the TIC program, and trained sales agents do not reference specific misrepresentations or interactions with any Plaintiffs that could be the basis for omissions. Likewise, allegations that GTR was an owner or associate of other defendants do not reference any misstatements attributable to GTR, much less the "who, what, where, when, and how" of any alleged misrepresentations.[58]

The SAC's inclusion of both Thomas Smith and GTR in the larger Colliers/Long Parties group does not change this conclusion. The purpose of Rule 9(b)'s particularity requirement is "'to afford [a] defendant fair notice of a plaintiff's claims and the factual grounds supporting

---

[53] *Id.* at 14 ¶ 62.

[54] *See, e.g., id.* at 20 ¶ 101 (the Colliers/Long Parties represented that each property had a paying tenant with sufficient revenue for the lease); 23 ¶ 127 (the Colliers/Long Parties represented that some leases were backed by corporate guarantors and Lloyds of London bonds); 63 ¶ 296 (the Colliers/Long Parties developed the marketing materials); 64 ¶ 300 –68 ¶ 311 (listing alleged misrepresentations in the marketing materials).

[55] *Id.* at 12 ¶ 40.

[56] *Id.* at 14 ¶ 61.

[57] *Id.* at 14 ¶ 62.

[58] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023), ("[A] complaint stating the 'who, what, where, when, and how' of the alleged fraud gives a defendant the requisite level of notice required under Rule 9(b).'").

those claims.'"[59] To this end, a complaint must include facts showing "'the time, place and contents of the false representations, the identity of the party making the false statements, and the consequences' of the false representations."[60] By attributing various alleged misrepresentations to the Colliers/Long Parties as a group, the SAC fails to give notice to Thomas Smith and GTR about which, if any, of those misrepresentations they might be responsible for personally. And referencing collectively a group of seventeen different parties and defendants does not adequately identify the party making the statements as required by Rule 9(b).

Plaintiffs generally respond to the Defendants' various arguments regarding Rule 9(b) by arguing that particularity need only provide sufficient notice of the alleged fraud, not "atomization" of every communication.[61] They cite to *Schwartz v. Celestial Seasonings, Inc.*, for the proposition that Rule 9(b) "does not require plaintiffs to plead a defendant-by-defendant breakdown of every internal act or communication."[62]

In *Celestial Seasonings*, a complaint attributed several allegedly fraudulent statements to a corporate defendant.[63] The complaint adequately identified the time, place, and contents of each statement.[64] Several corporate insider defendants, including officers and directors of the corporation, moved to dismiss the § 10(b) securities fraud claims against them under Rule 9(b).[65] They argued that the complaint failed to identify which corporate insider defendants made each alleged misrepresentation via the corporation.[66] The Tenth Circuit held that the complaint

---

[59] *Id.* (quoting *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016)) (alteration in original).
[60] *Id.* (quoting *George*, 833 F.3d at 1254).
[61] Opp'n 8.
[62] *Id.* at 17.
[63] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1249 (10th Cir. 1997).
[64] *Id.* at 1252.
[65] *Id.* at 1253.
[66] *Id.* at 1254.

satisfied Rule 9(b) because identifying specific corporate insiders is unnecessary when "fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officer."[67] Where the complaint specifically identified each corporate insider's role in directing and approving the corporation's statements, Rule 9(b) was satisfied without further attaching each specific statement to an individual corporate insider.[68]

Such is not the case with the "Colliers/Long Parties" designation used here. The SAC does not attribute alleged misrepresentations with particularity to a single corporation or entity and then describe how that entity's actions were controlled by individual defendants. Rather, Plaintiffs create an ad hoc group of seventeen different individuals, corporations, and LLCs and treat all statements made by a member of the group as statements of the group as a whole. This cannot satisfy Rule 9(b). For starters, it is facially inconsistent with the requirement that a complaint state the identity of the party making a false statement. The SAC's allegations relating to the Colliers/Long Parties do not identify the maker of the false statements; they identify a group of parties, any of whom could have made the statement. Furthermore, Thomas Smith and GTR's alleged association with the other Colliers/Long Parties does not make them responsible for any statement made by a co-defendant in the same way that a corporation's directors and officers are responsible for its statements.

The SAC does not adequately plead a Rule 10b-5(b) claim against Thomas Smith and GTR in the first cause of action.

---

[67] *Id.*
[68] *Id.* at 1254 n.8.

11

### iii.      Scheme to Defraud

Plaintiffs also respond to the motion to dismiss by arguing that Rule 10b-5 scheme liability is not limited to the party who drafted or uttered a statement[69] and that the SAC describes Thomas Smith's "functions in the scheme" as a financial partner, trainer, and developer.[70] They also contend that GTR was a "Millcreek member/affiliate integrated into the program structure."[71] These arguments go to scheme liability under Rule 10b-5(a) and (c).

To support their claims, Plaintiffs cite to *Lorenzo v. SEC*.[72] In *Lorenzo*, the Supreme Court held that dissemination of false statements with intent to defraud can fall under Rule 10b-5(a) and (c) even if the disseminator did not "make" the statements under 10b-5(b).[73] Plaintiffs characterize this principle as holding that "scheme liability reaches those who orchestrate, implement, or further a deceptive scheme."[74] They argue that Defendants' arguments support a pleading requirement that would nullify all scheme liability at the outset.[75]

Even so, it is not enough for a plaintiff to merely allege that a scheme exists. The complaint must also state facts showing that the defendant "committed a deceptive or manipulative act" in furtherance of that scheme.[76] Such allegations must be pled with particularity under Rule 9(b).[77] This requirement does not "nullify" scheme liability, it simply requires that each defendant alleged to have committed a deceptive act in furtherance of the

---

[69] Opp'n 9.
[70] *Id.* at 14.
[71] *Id.*
[72] *Id.* at 9.
[73] *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78 (2019).
[74] Opp'n 9.
[75] *Id.* at 19.
[76] *In re Overstock Sec. Litig.*, 119 F.4th 787, 801 (10th Cir. 2024).
[77] *Combs v. SafeMoon LLC*, No. 2:22-CV-00642-DBB-JCB, 2024 WL 1347409, at *15 (D. Utah Mar. 29, 2024).

scheme be given notice of what that act was, and when, where, and how it occurred. The SAC fails to do so with respect to Thomas Smith and GTR. It only describes their general roles as financial backers and organizers within the larger group of defendants without specifically alleging that they did anything manipulative or deceptive. Thus, the SAC fails to state a claim against Thomas Smith or GTR under the first cause of action.[78]

### 2. Colliers International Group, Inc.; Colliers International Holdings (USA), Inc.; and Colliers International Intermountain, LLC

Defendants Colliers International Group, Inc. ("Colliers Group"); Colliers International Holdings (USA), Inc. ("Colliers USA"); and Colliers International Intermountain, LLC ("Colliers Intermountain") argue that the SAC fails to plead fraudulent misrepresentations or scienter with sufficient particularity against each of the Colliers defendants.[79] They contend that most allegations against these defendants consist of group pleadings that lump them in with numerous other defendants.[80] They further argue that any specific misrepresentations are attributed to corporate officers who represent many companies without specifying which company the officers were representing when they made their misrepresentations.[81]

### i. Allegations

The SAC alleges that Colliers USA is the majority member of Colliers Intermountain and that Colliers Intermountain is a wholly-owned subsidiary of Colliers Group.[82] It alleges that Colliers Group controls the services provided by its subsidiaries and affiliates and that all three

---

[78] Thomas Smith and GTR also argue that the SAC does not adequately plead scienter against them with respect to this claim. Millrock MTD 7–8. The court need not address this argument because the first cause of action fails as to these defendants on the misrepresentation and manipulative act elements.
[79] Colliers MTD 8–9.
[80] *Id.*
[81] *Id.* at 10.
[82] SAC 7 ¶ 1.

13

Colliers companies use uniform branding to hold themselves out as a single entity.[83] The SAC refers to all three Colliers companies collectively as "Colliers" throughout. Plaintiffs also allege that several other defendants and individuals acted as agents of Colliers, including Kevin Long as Vice President of the Utah division of Colliers,[84] Gil Borok as the President and CEO of the USA division of Colliers,[85] Matthew Hawkins as Vice President of Colliers Group,[86] David Josker as the President of the Western Region Brokerage for Colliers,[87] Blake McDougal as an employee and agent of Colliers,[88] Spencer Strong as an employee and agent of Colliers,[89] and Lew Cramer as an agent and representative of Colliers.[90] The SAC also alleges that Spencer Strong and Blake McDougal were simultaneously agents and employees of Millcreek.[91]

Kevin Long is also described as the founder of Millcreek and "President of Millcreek Commercial with Colliers."[92] He represented that Colliers and Millcreek worked in partnership.[93] The SAC alleges that all relevant documents relating to the properties, including their offering memoranda, used headers that combined the Millcreek and Colliers logos.[94] The Colliers defendants are included in the "Colliers/Long Parties" group.[95]

Plaintiffs allege that the offering memoranda for the properties contained some misrepresentations, including statements about the corporate guarantors and that some of the

---

[83] *Id.* at 7 ¶ 1, 8 ¶ 5.
[84] *Id.* at 5–6.
[85] *Id.* at 9 ¶ 12.
[86] *Id.* at 9 ¶ 13.
[87] *Id.* at 9 ¶ 15.
[88] *Id.* at 12 ¶ 46.
[89] *Id.* at 12 ¶ 49.
[90] *Id.* at 14 ¶ 63.
[91] *Id.* at 12 ¶¶ 44–49.
[92] *Id.* at 27 ¶¶ 146–48.
[93] *Id.*
[94] *Id.* at 27 ¶ 149, 48 ¶ 234–52 ¶ 238.
[95] *Id.* at 14 ¶ 62.

properties were insured by Lloyds of London.[96] Each plaintiff received a set of marketing materials that included these offering memoranda as well as property descriptions on a website, blog posts, and other marketing materials.[97] The SAC refers to these documents together as the "marketing materials."[98] Plaintiffs allege that these marketing materials collectively contained numerous misrepresentations about the properties and the corporate guarantors.[99]

The SAC alleges that Kevin Long, Spencer Strong, and Blake McDougal made misrepresentations to various plaintiffs during in-person meetings and via emails and phone calls and provided these plaintiffs with the marketing materials.[100] Though the SAC often states that these misrepresentations generally occurred over a period of several months,[101] several alleged misrepresentations are more narrowly attributed to specific emails or conversations.[102]

### ii.    Material Misrepresentation

As already discussed above, any misrepresentations attributed to the Colliers/Long Parties cannot be the basis for a Rule 10b-5(b) claim against the Colliers Defendants. The SAC also does not attribute any statements directly to the Colliers Defendants, but it is well established that corporations act through their employees and agents.[103] The Colliers Defendants argue that statements made by Kevin Long, Spencer Strong, and Blake McDougal cannot be

---

[96] *Id.* at 42 ¶ 211–213, 43 ¶ 216–44 ¶ 221.
[97] *Id.* at 63 ¶¶ 294–95.
[98] *Id.*
[99] *Id.* at 64 ¶ 300–68 ¶ 311.
[100] *See id.* at 72 ¶ 333–91 ¶ 302.
[101] *See id.* at 73 ¶ 335.
[102] *See, e.g. id.* at 85 ¶ 291–87 ¶ 296 (In November 2022, Kevin Long allegedly misrepresented the reliability of the corporate backers to Bryson Ockey); 88 ¶ 299–91 ¶ 301 (Blake McDougal sent Eric Stamm and Claudia Griffing marketing emails in October 2022 that allegedly represented the Lehi and Crockett properties as 1031 compliant and misstated the corporate guarantors' reliability).
[103] *Wilson v. Millcreek Com. Props., LLC*, No. 2:24-CV-00624-TC-CMR, 2025 WL 2256685, at *8 (D. Utah Aug. 7, 2025).

15

attributed to them because these individuals also work as agents of Millcreek, and the SAC does not specify on which company's behalf each one was speaking when the statements were made.[104] But the SAC alleges that the three Colliers Defendants were jointly controlled and held themselves out as a single, unified Colliers entity.[105] It further alleges that this Colliers group formed a close partnership with Millcreek, shared leadership and employees with Millcreek, engaged in a joint business venture with Millcreek, and marketed itself alongside Millcreek for purposes of the four TIC properties.[106]

Under these facts, the SAC plausibly alleges that Kevin Long, Spencer Strong, and Blake McDougal may have been acting on behalf of both Colliers and Millcreek when they made the alleged misrepresentations. Because at least some of the statements include when they were made, who made them, how they were made, and why they were misleading,[107] they are sufficiently particularized to meet the Rule 9(b) and PSLRA standards.[108]

### iii.    Scheme to Defraud

Because the SAC plausibly alleges that the Colliers Defendants made or disseminated material misrepresentations under Rule 10b-5(b) with adequate particularity, it also alleges that they engaged in a deceptive act with sufficient particularity.[109] Thus, the first element of scheme liability under Rule 10b-5(a) and (c) is plausibly alleged with respect to the Colliers Defendants.

---

[104] Colliers MTD 9–10.
[105] SAC 7 ¶ 1–8 ¶ 5.
[106] *Id.* at 27 ¶ 146, 48 ¶ 234–52 ¶ 238.
[107] *See supra* note 106.
[108] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023); 15 U.S.C. § 78u-4(b)(1).
[109] *See Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78 ("[W]e conclude that . . . dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5.").

### iv.    Scienter

The Colliers Defendants also argue that the SAC does not meet the PSLRA's scienter requirements.[110] To allege scienter, a complaint must state facts showing that a defendant acted with "'a mental state embracing intent to deceive, manipulate, or defraud, or recklessness.'"[111] Under the PSLRA's heightened pleading requirements, a complaint can survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[112] Because the PSLRA requires facts "giving rise to a strong inference that the defendant acted with the required state of mind,"[113] a complaint must state facts showing scienter for each defendant.[114] Group pleadings are not sufficient to show scienter.[115] When analyzing scienter, the court's job is to "assess all the allegations holistically" rather than scrutinizing each in isolation.[116] Finally, "[t]he scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b–5 when those senior officials were acting within the scope of their apparent authority."[117]

In this case, the allegations of the SAC taken as a whole create a sufficiently strong inference of scienter at least with respect to Kevin Long. The SAC alleges that Kevin Long was a Vice President at Colliers[118] and that he founded multiple new companies and personally

---

[110] Colliers MTD 8–9.
[111] *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1149 (10th Cir. 2015) (quoting *Adams v. Kinder–Morgan, Inc.,* 340 F.3d 1083, 1105 (10th Cir. 2003)).
[112] *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 324 (2007).
[113] 15 U.S.C. § 78u-4(b)(2)(A).
[114] *TDC Lending LLC v. Priv. Cap. Grp., Inc*., 340 F. Supp. 3d 1218, 1227 (D. Utah 2018).
[115] *Id.*
[116] *Tellabs*, 551 U.S. at 326.
[117] *Kinder-Morgan*, 340 F.3d at 1106.
[118] SAC 26 ¶ 144.

17

partnered them with Colliers for the TIC program.[119] Kevin Long allegedly made misrepresentations to various plaintiffs, including that the corporate sponsors had been thoroughly vetted,[120] that some properties were insured by Lloyds of London bonds,[121] that the companies did not take commissions.[122] The SAC further alleges that each corporate sponsor was ultimately unable fulfill its obligations, that no Lloyds bonds were issued, and that Colliers received significant commissions.[123] These allegations, along with Kevin Long's high-level leadership role in multiple companies involved in this business operation, allow a strong inference that Kevin Long knew he had not performed the due diligence he promised, knew the properties were not insured, knew that commissions would be paid, and knew that many of his statements were misleading when he made them.[124] And because Kevin Long is a high-ranking Colliers corporate officer who was working to advance business operations in partnership with Colliers, these allegations of scienter are attributable to the Colliers Defendants as well. The SAC states a claim against the Colliers Defendants under the first cause of action.

### 3. Spencer Taylor and Smart Cove, LLC

Defendants Spencer Taylor and Smart Cove, LLC ("Smart Cove") argue that the SAC fails to plead fraudulent misrepresentations or scienter with sufficient particularity against them.[125]

---

[119] *Id.* at 28 ¶ 150.
[120] *Id.* at 76 ¶ 340(c).
[121] *Id.* at 74 ¶ 336.
[122] *Id.* at 86 ¶ 291(e).
[123] *Id.* at 74 ¶ 336, 93 ¶ 370.
[124] *See Wilson v. Millcreek Com. Props., LLC*, No. 2:24-CV-00624-TC-CMR, 2025 WL 2256685, at *8 (D. Utah Aug. 7, 2025) (scienter was sufficiently pled when the complaint alleged that a defendant who was experienced in commercial real estate made verifiable promises of due diligence that were alleged to be false).
[125] Taylor MTD 4–8.

18

### i.    Allegations

The SAC alleges that Spencer Taylor is the sole member of Smart Cove,[126] that he reviewed the marketing materials and provided them to several plaintiffs,[127] and that he restated the representations made in those materials to plaintiffs.[128] Plaintiffs also assert that Spencer Taylor told Eric Stamm and Claudia Griffin in November 2022 that: (1) the Crockett tenant had complied with its maintenance obligations and completed any upgrades listed on the property inspection, (2) the Crockett and Lehi tenants had executed long-term leases, and (3) Blake McDougal's previous representations were accurate.[129] The SAC alleges that Smart Cove was a member of Millcreek  and that it supervised, ratified, and authorized Millcreek's conduct related to the TIC venture. Both Spencer Taylor and Smart Cove are included in the "Colliers/Long Parties" group.[130]

### ii.    Material Misrepresentation

Spencer Taylor argues that his alleged misrepresentations are not alleged to be false and are not stated with particularity.[131] He further argues that his endorsement of Mr. McDougal's representations fails to specify the content of the false statements attributed to him.[132] Plaintiffs respond that he endorsed other misrepresentations and that his statements about long-term leases and maintenance upgrades are alleged to be false.[133] As previously discussed, any

---

[126] SAC 13 ¶ 53.
[127] *Id.* at 63 ¶ 297–98.
[128] *Id.* at 64 ¶ 299.
[129] *Id.* at 90–91 ¶ 300.
[130] *Id.* at 14 ¶ 62.
[131] Taylor MTD 5.
[132] *Id.*
[133] Opp'n 16.

misrepresentations attributed to the Colliers/Long Parties cannot be the basis for a Rule 10b-5(b) claim against the Taylor Defendants.

The court concludes that at least some of these allegations are pled with particularity. For example, the SAC states facts alleging that Spencer Taylor told Eric Stamm and Claudia Griffin via emails in November 2022 that Blake McDougal's previous representations of fact regarding the Lehi and Crockett properties were accurate.[134] This satisfies the who, what, where and when of Rule 9(b). [135] The SAC also shows how and why this statement is allegedly misleading. It presents facts alleging that Mr. McDougal, via emails in October and November 2022, told the plaintiffs that the Lehi and Crockett properties were 1031 compliant, misstated the corporate guarantors' reliability, and stated that the price was not inflated because it reflected medical building costs.[136] The SAC later asserts that the Lehi property was likely not 1031 compliant,[137] that the corporate guarantors were not reliable as promised, and that the Lehi and Crockett property values were greatly inflated above the market.[138]

Similarly, the SAC alleges that Taylor told Plaintiffs in the same series of emails that all Crockett property upgrades had been completed,[139] when, in reality, around two million dollars of funds that were earmarked for equipment upgrades at the Crockett property had gone missing.[140] Thus, the SAC gives Mr. Taylor sufficient notice of the details of his alleged misrepresentations to comply with the Rule 9(b) and PSLRA requirements.

---

[134] SAC 90–91 ¶ 300.
[135] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023).
[136] SAC 88–90 ¶ 299.
[137] *Id.* at 67 ¶ 307.
[138] *Id.* at 109 ¶ 465, 114 ¶ 497.
[139] *Id.* at 90 ¶ 300(a).
[140] *Id.* at 91 ¶ 301, 114 ¶ 496.

20

### iii.    Scheme to Defraud

Because the SAC plausibly alleges that the Taylor Defendants made or disseminated material misrepresentations under Rule 10b-5(b) with adequate particularity, it also alleges that they engaged in a deceptive act with sufficient particularity.[141] Thus, the first element of scheme liability under Rule 10b-5(a) and (c) is plausibly alleged with respect to the Taylor Defendants.

### iv.    Scienter

Mr. Taylor also argues that a holistic review of the allegations against him in the SAC do not satisfy the PSLRA pleading standard for scienter.[142] Allegations that a defendant held a certain position in a company and therefore likely had knowledge of the falsity of certain misrepresentations alone is insufficient to allege scienter under the PSLRA.[143] Here, the SAC alleges that Taylor was involved with various parties in the TIC venture, that he marketed and sold TIC interests,[144] and that he reviewed the marketing materials.[145] These facts do not support a strong inference that Mr. Taylor acted with intent to deceive, manipulate, or defraud the plaintiffs when he made his representations.

There is no indication that Spencer Taylor had access to information from which he knew or should have known that his statements were false. The SAC only states that he was involved with a venture to sell TIC interests and that he had access to marketing materials. An inference of fraudulent intent is not as likely on these facts as the more innocent conclusion that Mr. Taylor repeated the marketing information he was given and confirmed that Mr. McDougal's

---

[141] *See Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78 ("[W]e conclude that . . . dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5.").
[142] Reply in Support of Taylor Motion to Dismiss ("Taylor Reply") 4, ECF No. 204, filed Mar. 27, 2026.
[143] *City of Philadelphia v. Fleming Companies, Inc*., 264 F.3d 1245, 1255 (10th Cir. 2001).
[144] SAC 29 ¶ 154.
[145] *Id.* at 63 ¶ 297.

21

representations aligned with that information. And because any scienter of Smart Cove would necessarily arise from Mr. Taylor's actions, the claims fail against Smart Cove as well. The SAC fails to state a claim against Spencer Taylor or Smart Cove under the first cause of action.

### 4.       Jerald Adam Long and Long Holdings, LLC

The Adam Long Defendants argue that the SAC fails to plead fraudulent misrepresentations or scienter with sufficient particularity against them.[146]

#### i.       Allegations

The SAC alleges that Adam Long is the sole member of Long Holdings, LLC ("Long Holdings") and was an owner of Millrock Investment Fund 1 Management ("Millrock Management") along with his father, Kevin Long.[147] It also alleges that Long Holdings was a member of Millcreek[148] and includes Long Holdings as a member of the "Colliers/Long Parties" group.[149]

#### ii.       Material Misrepresentation

The SAC does not plead facts detailing any alleged misrepresentations that Adam Long or Long Holdings made to any plaintiffs. Plaintiffs argue that the SAC alleges that Adam Long was an active participant in the TIC scheme and an owner in several involved companies.[150] However, as already discussed with regards to the Millrock Defendants, mere involvement with companies alleged to be part of a scheme is not enough to state a Rule 10b-5(b) claim in the

---

[146] Adam Long MTD 7.
[147] SAC 14 ¶ 65, 28 ¶ 151.
[148] *Id.* 10 ¶ 22.
[149] *Id.* at 14 ¶ 62.
[150] Opp'n 15.

absence of any alleged misrepresentations. And, as already stated, inclusion among the Colliers/Long Parties is not enough to state a claim against Long Holdings.

### iii.    Scheme to Defraud

The SAC also fails to plead any facts showing that Adam Long or Long Holdings committed a deceptive or manipulative act, much less with the particularity required by Rule 9(b). The SAC fails to state a claim against Adam Long or Long Holdings under the first cause of action.

### 5.    SARC Draper, LLC

SARC argues that the SAC fails to direct any fraud allegations against SARC specifically or state with particularity the circumstances of any misleading acts or fraudulent intent.[151]

### i.    Allegations

The SAC alleges that SARC is a Missouri LLC whose managing member is Steve Caton.[152] Some of the TIC interests that Plaintiffs purchased were owned by SARC, and SARC was a development partner of the "Colliers/Long TIC Program."[153] SARC allegedly sold TIC interests at inflated rates.[154] Plaintiffs allege on information and belief that SARC received additional financial compensation for its involvement in the program[155] and paid Millrock an assignment fee to "make SARC Draper a successor in interest to each owner's purchase and sale

---

[151] SARC MTD 6.
[152] SAC 15 ¶ 71.
[153] *Id.* at 57 ¶¶ 267–69.
[154] *Id.* at 137 ¶ 591(f).
[155] *Id.* at 97 ¶ 385.

agreement with Millrock."[156] The SAC also alleges that Steve Caton was heavily involved in the sale of TIC interests in the Draper property.[157]

### ii.    Material Misrepresentation

Though the SAC pleads facts that show SARC's general involvement in the TIC venture, it does not allege that SARC made any untrue or misleading statements that could qualify as Rule 10b-5(b) misrepresentations. It does not attribute any representations or statements to SARC at all, much less with sufficient particularity to satisfy Rule 9(b) and the PSLRA. Without this element, the SAC does not plead 10b-5(b) securities fraud against SARC with particularity.

### iii.    Scheme to Defraud

Similarly, the SAC does not plead with particularity any deceptive or manipulative acts attributed to SARC. At most, Plaintiffs allege that SARC owned the TIC interests and sold them to some plaintiffs at prices that were higher than market value.[158] "But acting in a manner that results in an artificial price, on its own, is not enough to constitute manipulative conduct."[159] The Supreme Court has clarified that "§ 10(b) prohibits practices that are manipulative in the 'technical sense of artificially affecting market activity *in order to mislead investors*.'"[160] Merely selling an asset as a higher price than it was purchased for is not inherently fraudulent, and the SAC does not include any facts showing that SARC engaged in deceptive or misleading behavior alongside its sale of the TIC interests. The SAC fails to state a claim against SARC under the first cause of action.

---

[156] *Id.* at 108 ¶ 452.
[157] *Id.* at 178 ¶ 753(e).
[158] *Id.* at 137 ¶ 591(f).
[159] *In re Overstock Sec. Litig.*, 119 F.4th 787, 802 (10th Cir. 2024).
[160] *Id.* (quoting *Santa Fe Indus. v. Green*, 430 U.S. 462, 477 (1977)) (emphasis in original).

### B.    Statute of Limitations

The Colliers Defendants also move to dismiss the first and third causes of action in the SAC as to the Draper and Pine Bluff plaintiffs for failure to comply with the statute of limitations.[161] Plaintiffs filed their first complaint in this case on March 4, 2025.[162] The SAC alleges that around July 2021, Ross Weber and David Elton visited the Draper property and discovered that its renovations were delayed.[163] Defendant Brent Smith attributed this delay and other budget overruns to COVID, permitting difficulties, and tenant-requested upgrades.[164] He also said that the lease rate would increase according to the higher costs.[165] By October 2022, the tenants had defaulted at both the Pine Bluff and Draper properties.[166] The SAC alleges that the Plaintiffs subsequently discovered that the tenants' monthly rent payments had actually been coming from Millcreek affiliates,[167] that no Lloyds of London bonds existed,[168] and that properties' purchase prices were far lower than what the Plaintiffs had paid.[169]

For allegations of securities fraud under § 10(b), the applicable statute of limitations is found in 28 U.S.C. § 1658(b).[170] This statute of limitations states:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of--
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.[171]

---

[161] Colliers MTD 13.
[162] Original Complaint, ECF No. 1, filed Mar. 4, 2025.
[163] SAC 99 ¶¶ 396–97.
[164] *Id.* at 99 ¶¶ 398–99.
[165] *Id.*
[166] *Id.* at 100 ¶¶ 405–06.
[167] *Id.* at 102 ¶ 415.
[168] *Id.* at 102 ¶ 420.
[169] *Id.* at 104 ¶¶ 428–32.
[170] *Merck & Co. v. Reynolds*, 559 U.S. 633, 638 (2010).
[171] 28 U.S.C. § 1658(b).

The Colliers Defendants argue that the Pine Bluff and Draper plaintiffs failed to file within this two-year statute of limitations because Plaintiffs had inquiry notice that something was amiss as early as July 2021 when they learned that the Draper renovations were behind schedule.[172] The Colliers Defendants also argue that Plaintiffs had constructive notice of the alleged price inflation of these properties at the time they purchased their TIC shares because the original purchase prices are matters of public record.[173] Finally, they argue that Plaintiffs should have known of the alleged fraud by October 2022 at the latest when the Draper and Pine Bluff tenants had defaulted.[174]

Generally, "facts must be developed to support dismissing a case based on the statute of limitations."[175] However, "a statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished."[176] The dates on which the pertinent acts occurred must not be in dispute.[177] In other words, it is only proper to dismiss a cause of action on statute of limitations grounds in a motion to dismiss when "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."[178]

The securities fraud statute of limitations begins to run upon "the discovery of the facts constituting the violation."[179] "'[D]iscovery' as used in this statute encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have

---

[172] Colliers MTD 14.
[173] *Id.* at 15.
[174] *Id.* at 14–15.
[175] *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022).
[176] *Id.* (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)).
[177] *Id.*
[178] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).
[179] 28 U.S.C. § 1658(b)(1).

26

known."[180] Mere inquiry notice, "the point where the facts would lead a reasonably diligent plaintiff to investigate further," does not by itself cause the statute of limitations to run.[181] Furthermore, the facts constituting a violation include facts indicating scienter, the defendant's intent to deceive.[182]

In this case, the parties disagree as to the dates on which Plaintiffs discovered the relevant facts. The SAC pleads facts showing that Plaintiffs knew their TIC investments were not performing as promised at least as of October 2022 when the Draper and Pine Bluff tenants defaulted. However, it is not obvious on the face of the complaint that Plaintiffs knew or would have known through reasonable diligence that Defendants had acted with fraudulent intent by that date. An incorrect statement or prediction about an asset's earning potential or future performance does not automatically indicate that the speaker intentionally lied.[183] So even if Plaintiffs knew that Defendants had made incorrect statements by the time the tenants defaulted, it is not apparent that Plaintiffs also should have known that those statements were intentionally false. The SAC does not state when Plaintiffs discovered the facts that later led them to believe fraud had been committed.

The Colliers Defendants' arguments that the original purchase prices for the Pine Bluff and Draper properties are public record does not alter this conclusion. Even if Plaintiffs could have discovered the original purchase prices, the Colliers Defendants make no argument showing why a reasonably diligent plaintiff would have investigated the original purchase price of a property he or she was investing in, especially when the subsequent investment was offered

---

[180] *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).
[181] *Id.* at 651.
[182] *Id.* at 648–49.
[183] *See id.* at 650.

by an ostensibly reputable investment group as is alleged here. The relevant dates for this statute of limitations are disputed, so it does not bar the Pine Bluff and Draper plaintiffs' claims at the motion to dismiss stage.

## II.    Second Cause of Action — Sale of Unregistered Securities

Plaintiffs' second cause of action alleges violations of § 12(a)(1) of the Securities Act.[184] Section 12(a)(1) provides that any person who "offers or sells a security in violation of [Section 5] . . . shall be liable . . . to the person purchasing such security from him."[185] Section 5 provides that "[u]nless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly" to sell that security in interstate commerce.[186] To state a prima facie case for the sale of unregistered securities, a plaintiff must show three elements, "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale."[187]

Section 12(a)(1) is also subject to a statute of limitations in § 13 that states:

No action shall be maintained to enforce any liability . . . created under section [12(a)(1)] of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section [12(a)(1)] of this title more than three years after the security was bona fide offered to the public.[188]

---

[184] SAC 144 ¶ 610–145 ¶ 615.
[185] 15 U.S.C. § 77l(a).
[186] 15 U.S.C. § 77e(a) and (c).
[187] *Sec. & Exch. Comm'n v. GenAudio Inc*., 32 F.4th 902, 939 (10th Cir. 2022) (quoting *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017)).
[188] 15 U.S.C. § 77m.

Though the Tenth Circuit has not specifically ruled on when a violation occurs such that the statute begins to run, district courts in this circuit generally hold that the limitations period begins to run when the plaintiff purchases his or her interest.[189]

Ten defendants move to dismiss Plaintiffs' second cause of action on the grounds that it is barred by the statute of limitations.[190] They argue that all § 12(a)(1) claims arising out of the Pine Bluff and Draper properties are barred by the three-year statute of repose.[191] They also argue that every plaintiff's § 12(a)(1) claim is barred by the one-year statute of limitations because each plaintiff purchased their TIC interest more than one year before the first complaint was filed.[192] Plaintiffs respond that the Lehi and Crockett property plaintiffs filed their § 12(a)(1) claims within one year of discovering the alleged violations and that Defendants' conduct prevented earlier discovery.[193]

### A.    Allegations

The SAC alleges that Defendants began marketing the Pine Bluff property at least by early 2020, the Draper property at least by August 2020, and the Lehi and Crockett properties at least by April 2022.[194] John and Gayle Weber, through Club Fitness, Inc. ("Club Fitness") purchased an interest in the Pine Bluff property in April 2020.[195] Ross Weber and Yolanda

---

[189] *See Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1114 (N.D. Okla. 2003) ("The one-year limitations period commences on the date of the sale of unregistered securities."); *see also Padilla v. Winger*, No. 2:11CV897DAK, 2012 WL 1379228, at *6 (D. Utah Apr. 20, 2012) ("[T]]he statute began to run when [Plaintiffs] invested their money."); *Reinart v. Medicus Auri LLC*, No. CIV-20-437-SLP, 2021 WL 11962853, at *6 (W.D. Okla. Feb. 16, 2021) ("[T]he operable date is the date on which Plaintiff purchased his interest.").

[190] Kevin Long, GTR, Millrock, Colliers Group, Colliers USA, Colliers Intermountain, Spencer Taylor, Smart Cove, Long Holdings, and SARC move to dismiss the second cause of action on these grounds.

[191] *See* Kevin Long MTD 8–9.

[192] *Id.* at 7–10.

[193] Opp'n 20.

[194] SAC 36 ¶¶ 184–86.

[195] *Id.* at 95 ¶ 376.

Altagracia Cosme de Weber, through Compostela Limited, LLC, purchased an interest in the Draper property in January 2021.[196] David Elton and Alyce Weber purchased an interest in the Draper property in November 2021.[197] James Blaisdell purchased an interest in the Draper property in January 2021.[198] Bryson and Kristine Ockey purchased an interest in the Lehi property in late 2022.[199] Claudia Griffen and Eric Stamm, through the Betty L. Griffin 1999 Revocable Trust, purchased interests in the Lehi and Crockett properties in late 2022.[200]

## B.     Pine Bluff and Draper Property Claims

As an initial matter, any § 12(a)(1) claims arising out of the Pine Bluff and Draper properties are barred by the three-year statute of repose. Section 13's three-year period "admits of no exception and on its face creates a fixed bar against future liability."[201] It "runs from the defendant's last culpable act (the offering of the securities), not from the accrual of the claim."[202] In this case, the SAC alleges that the TIC interests in the Pine Bluff and Draper properties were offered in 2020, more than three years before this suit was filed.[203] Thus, any § 12(a)(1) claims based on interests in these properties are untimely. Plaintiffs do not seem to dispute this point in their Opposition, arguing only that the Lehi and Crockett property claims survive.

## C.     Lehi and Crockett Property Claims

Plaintiffs' § 12(a)(1) claims arising out of interests in the Lehi and Crockett properties fall outside the one-year statute of limitations on the face of the complaint. Plaintiffs purchased

---

[196] *Id.*
[197] *Id.*
[198] *Id.*
[199] *Id.*
[200] *Id.* at 95–96 ¶ 376.
[201] *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505 (2017).
[202] *Id.*
[203] SAC 36 ¶¶ 184–86.

their TIC interests in these properties in late 2022, well over a year before the initial complaint was filed.[204] Therefore, the claims are time barred unless the statute of limitations was tolled. Plaintiffs argue that it should be equitably tolled. They contend that they did not discover the unregistered securities violations until April and May 2024,[205] and that Defendants impeded earlier discovery by fraudulently concealing their alleged violations.[206]

"As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."[207] In the Tenth Circuit, "[e]quitable tolling is granted sparingly."[208] It is only appropriate "'when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights.'"[209]

Not every statute of limitations may be equitably tolled.[210] Equitable tolling is unavailable "where Congress's choice is evident, where tolling would be inconsistent with the text of the relevant statute, and where there is good reason to believe that Congress did *not* want the equitable tolling doctrine to apply."[211] Courts are divided as to whether § 12(a)(1) claims may be subject to equitable tolling.[212] The Tenth Circuit has not spoken directly on the issue.

---

[204] *Id.* at 95–96 ¶ 376.

[205] Opp'n 21.

[206] *Id.* at 21–22.

[207] *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014).

[208] *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012).

[209] *Id.* (quoting *United States v. Clymore,* 245 F.3d 1195, 1199 (10th Cir. 2001)).

[210] *Enbridge Energy, LP v. Nessel on behalf of Michigan*, 146 S. Ct. 1074, 1086 (2026).

[211] *Id.* (internal citations omitted) (emphasis in original).

[212] *See, e.g., Fabian v. LeMahieu*, No. 19-CV-00054-YGR, 2019 WL 4918431, at *8 (N.D. Cal. Oct. 4, 2019) ("[T]he weight of the authority supports finding that equitable tolling does not apply to Section 12(a)(1) claims, *regardless of the circumstances*.") (emphasis in original) (collecting cases); *Reinart v. Medicus Auri LLC*, No. CIV-

31

Here, the court does not need to decide whether equitable tolling is categorically barred for § 12(a)(1) claims because such tolling is not warranted on the facts of this case. Plaintiffs argue that Defendants concealed important facts and continued to make guarantees about the stability of the TIC interests, the tenants' financial situations, and the state of the properties even after problems arose.[213] Such deception, if true, may have prevented Plaintiffs from learning about the fraudulent misrepresentations and intent necessary to assert a § 10(b) claim, but it would not have kept Plaintiffs from learning facts sufficient to assert a § 12(a)(1) claim. Unlike § 10(b), § 12(a)(1) does not require any misrepresentation or fraudulent intent; a § 12(a)(1) claim simply requires facts showing that an unregistered security was offered or sold in interstate commerce.[214] The allegations in the SAC make it clear that such facts were available to Plaintiffs.

The SAC does not allege that Defendants held the TIC interests out as registered securities. To the contrary, it includes an offering memorandum that expressly states that the TIC interests sold by Millcreek "do not constitute securities" and that state and federal securities laws and protections did not apply.[215] Defendants did not conceal the fact that the TIC interests were not registered as securities. And Plaintiffs make no argument that Defendants concealed the facts necessary for Plaintiffs to conclude that the TIC interests "involved investment in a common enterprise with the success of the venture dependent primarily upon the efforts of others."[216]

---

20-437-SLP, 2021 WL 11962853, at *6 (W.D. Okla. Feb. 16, 2021) ("The one-year limitations period governing § 12(1) claims is not subject to a discovery rule or equitable tolling.") (quoting *Ames v. Uranus, Inc.*, No. 92-2170-JWL, 1993 WL 106896, at *3 (D. Kan. Mar. 17, 1993)); *but see Fedance v. Harris*, 1 F.4th 1278, 1283 (11th Cir. 2021) ("But the text of [15 U.S.C. § 77m] does not foreclose equitable tolling.").

[213] Opp'n 22.

[214] *See Sec. & Exch. Comm'n v. GenAudio Inc*., 32 F.4th 902, 939 (10th Cir. 2022).

[215] SAC 49 ¶ 236.

[216] *Id.* at 144 ¶ 610 (explaining why the TIC interests are securities).

32

Plaintiffs' § 12(a)(1) claims are untimely under § 13 on the face of the complaint. Because Plaintiffs do not argue or allege facts showing that some extraordinary circumstance prevented them from discovering that the TIC interests were unregistered securities, equitable tolling is not appropriate. The second cause of action is dismissed as to the moving defendants.

### III.    Third Cause of Action – Control Person Liability

Plaintiffs' third cause of action alleges violations of § 20 of the Securities Exchange Act.[217] These provisions provide for joint and several liability for any person who controls another person who is liable under either Section 10(b) of the Exchange Act or Section 12(a) of the Securities Act."[218] To state a prima facie case for control person liability, a plaintiff must show "(1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."[219] A plaintiff is not required to show that "the defendant actually or culpably participated in the primary violation."[220]

The SAC asserts that each defendant named in the first and second causes of action is a "liable person" or primary violator.[221] It alleges that each defendant named in the third cause of action is a control person by virtue of their positions as officers, directors, or agents of primary violator entities and as employers and supervisors of primary violator individuals.[222] Defendants challenge this claim on the grounds that the SAC does not plausibly allege a primary violation and that it fails to plausibly allege that each defendant had sufficient control.

---

[217] *Id.* at 146 ¶ 616–147 ¶ 626.
[218] *Combs v. SafeMoon LLC*, No. 2:22-CV-00642-DBB-JCB, 2024 WL 1347409, at *23 (D. Utah Mar. 29, 2024); 15 U.S.C. § 78t.
[219] *Maher v. Durango Metals, Inc*., 144 F.3d 1302, 1305 (10th Cir. 1998).
[220] *Id.* (quoting *First Interstate Bank v. Pring,* 969 F.2d 891, 897 (10th Cir. 1992), *rev'd on other grounds sub nom. Central Bank v. First Interstate Bank,* 511 U.S. 164 (1994)).
[221] SAC 146 ¶¶ 616–20.
[222] *Id.*

### A.        Primary Violations

Defendants Thomas Smith and GTR move to dismiss the third cause of action on the grounds that the first cause of action fails to establish any primary violation.[223] Defendant SARC moves to dismiss the third cause of action on the grounds that the first and second causes of action fail.[224] As already discussed, all of Plaintiffs' claims in the second cause of action are barred by the statute of limitations. Therefore, any control person liability premised on violations of § 12(a)(1) is dismissed. However, although the § 10(b) claims in the first cause of action were dismissed against many defendants, they remain against others. Therefore, the remaining defendants under the first cause of action could qualify as primary violators, and the third cause of action cannot be dismissed as to the § 10(b) claims for lack of a primary violator.

The Colliers Defendants also argue that the third cause of action fails for the same reasons as the first cause of action, lack of particularity and failure to comply with the statute of limitations.[225] Because the court already rejected the Colliers Defendants' arguments with respect to the first cause of action, they also fail to show that the third cause of action must be dismissed.

### B.        Control

Defendants Thomas Smith, GTR, Spencer Taylor, Smart Cove, Adam Long, and SARC also argue that the SAC fails to allege that they exercised control over any primary violators. Though "control person determination is a factual question not ordinarily subject to resolution on a motion to dismiss, dismissal is appropriate when . . . a plaintiff does not plead any facts from

---

[223] Millrock MTD 9.
[224] SARC MTD 8.
[225] Colliers MTD 8, 13.

which it can reasonably be inferred the defendant was a control person."[226] Control is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[227] Merely holding a position on a corporation's board of directors is insufficient to show control absent allegations that the director exerted influence over day-to-day operations.[228] In contrast, allegations showing that a defendant occupies an executive role and possesses "ultimate management authority of the corporation on a daily basis" are sufficient to show control.[229]

### 1.    Thomas Smith and GTR

The SAC alleges that Thomas Smith was an agent and representative of Millcreek and Millrock,[230] provided leadership and oversight for the "Colliers/Long TIC Program,"[231] was described as the main financial partner for Millcreek,[232] trained Millcreek and Colliers sales agents,[233] and helped develop and execute the "Colliers/Long TIC Program."[234] It alleges that GTR was a member of Millcreek,[235] supervised and authorized Millcreek's conduct,[236] and associated with other defendants.[237]

---

[226] *Maher v. Durango Metals, Inc*., 144 F.3d 1302, 1306 (10th Cir. 1998).
[227] *Id.* (quoting 17 C.F.R. § 230.405).
[228] *Adams v. Kinder-Morgan, Inc*., 340 F.3d 1083, 1108 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003).
[229] *Id.*
[230] SAC 12 ¶¶ 42–43.
[231] *Id.* at 29 ¶ 158–30 ¶ 159.
[232] *Id.* at 31 ¶ 160.
[233] *Id.*
[234] *Id.* at 31 ¶ 161.
[235] *Id.* at 10 ¶ 22.
[236] *Id.* at 12 ¶ 40.
[237] *Id.* at 14 ¶ 61.

These allegations are insufficient to state a claim. Just because Thomas Smith was an agent of Colliers and Millcreek and helped train their sales agents does not plausibly suggest that he had control over their management or policies. Likewise, simply being the financial partner of an LLC does not, standing alone, suggest control over that LLC's operations.[238] And the allegations of leadership and oversight fail to show how Thomas Smith controlled a primary violator, instead connecting him to the larger alleged scheme among all defendants.

As for GTR, allegations that it was one of four members of Millcreek do not plausibly plead control. This is especially true given that Plaintiffs specifically assert that Millcreek was managed by KGL Real Estate Development, PLLC, another defendant and member of Millcreek.[239] A partial ownership interest as one of four members of an LLC that is managed by a different entity does not indicate any control over the day-to-day operations, policies, or decision-making of that LLC. This is true even in light of conclusory allegations that each of those members "was aware of, permitted, supervised, ratified, and authorized" all of the LLC's conduct.[240] The SAC states facts showing that Thomas Smith and GTR had some financial interests in and connections to alleged primary violators, but it does not plausibly show that these connections permitted them to control the alleged violators' management or policies. The SAC does not adequately plead a § 20 claim against Thomas Smith and GTR.

---

[238] *See Combs v. SafeMoon LLC*, No. 2:22-CV-00642-DBB-JCB, 2024 WL 1347409, at *24 (D. Utah Mar. 29, 2024) ("Possession of a majority share in a company alone is insufficient to allege control, absent allegations that the majority holder took some actions that suggest control.") (citing *Maher*, 144 F.3d at 1305–06).
[239] SAC 10 ¶ 23.
[240] *Id.* at 12 ¶ 40.

### 2.    Spencer Taylor and Smart Cove

The SAC only alleges that Spencer Taylor is the sole member of Smart Cove[241] and that he made certain misrepresentations to prospective TIC buyers.[242] It alleges that Smart Cove, like GTR, was a member of Millcreek[243] and supervised and authorized Millcreek's conduct.[244] These allegations do not plausibly suggest that Spencer Taylor had any measure of control over any of the alleged primary violators. The allegations against Smart Cove fail for the same reasons discussed above with regard to GTR. The SAC does not adequately plead a § 20 claim against Spencer Taylor and Smart Cove.

### 3.    Adam Long and Long Holdings

The SAC alleges that Adam Long is the sole member of Long Holdings, LLC ("Long Holdings") and was an owner of Millrock Management along with his father, Kevin Long.[245] The SAC alleges that Adam Long managed Millrock Management alongside Kevin Long.[246] It also alleges that Long Holdings was a member of Millcreek and supervised and authorized Millcreek's conduct.[247]

As already discussed, the allegations about Long Holdings' membership in Millcreek do not plausibly allege control. However, the allegations regarding Adam Long do. The SAC does not just assert that Adam Long is an owner of Millrock Management, it also alleges that Adam Long was one of Millrock Management's two managers as it developed the TIC program. A

---

[241] *Id.* at 13 ¶ 53.
[242] *See, e.g., id.* at 88 ¶ 298, 112 ¶ 481.
[243] *Id.* at 10 ¶ 22.
[244] *Id.* at 13 ¶ 53.
[245] *Id.* at 14 ¶ 65, 28 ¶ 151.
[246] *Id.* at 28 ¶ 151.
[247] *Id.* 10 ¶ 22, 15 ¶ 66.

37

management role in an LLC, coupled with a substantial ownership interest, plausibly suggests the ability to control the LLC's policies and day-to-day operations. Millrock Management is named as a defendant in the first cause of action,[248] and it has not moved for dismissal of that claim against it. Therefore, it could qualify as a primary violator. Thus, while the SAC does not adequately plead a § 20 claim against Long Holdings, it does plead such a claim against Adam Long.

### 4.    SARC

The SAC alleges that SARC owned some of the TIC interests that Plaintiffs purchased,[249] was a partner in the Colliers/Long TIC program,[250] and received financial compensation for its involvement in the program.[251] These allegations do not even indicate which of the alleged primary violators SARC controlled or how that control occurred. They fail to plausibly suggest that SARC had control over any primary violator's management and policies. The SAC does not adequately plead a § 20 claim against SARC.

## IV.    Fourth, Fifth, and Sixth Causes of Action — State Law Claims

Plaintiffs' fourth, fifth, and sixth causes of action allege various state law securities violations.

The fourth cause of action alleges security fraud and schemes in violation of Utah Code § 61-1-1 of the Utah Uniform Securities Act ("UUSA").[252] The UUSA securities fraud provision mirrors Rule 10b-5 almost exactly. The fourth cause of action further alleges the sale of

---

[248] *Id.* at 139.
[249] *Id.* at 57 ¶ 267.
[250] *Id.* at 57 ¶ 269.
[251] *Id.* at 97 ¶ 385.
[252] Utah Code Ann. § 61-1-1; SAC 148 ¶ 627–150 ¶ 634.

unregistered state securities in violation of UUSA § 61-1-7.[253] Finally, the fourth cause of action states that Defendants' actions also violate other applicable provisions of state law regarding securities fraud.[254] In a footnote, it lists state securities fraud statutes from California, Massachusetts, Delaware, Washington, Arkansas, Wyoming, and Colorado.[255] It does not allege that the sale of unregistered securities violated any state laws other than Utah's.[256]

The fifth cause of action alleges that Defendants sold securities as unlicensed brokers in violation of UUSA § 61-1-3(1).[257] This provision states that "[i]t is unlawful for a person to transact business in [Utah] as a broker-dealer or agent unless the person is licensed under this chapter."[258] Plaintiffs allege that Defendants functioned as unlicensed securities agents in selling the TIC interests.[259] The fifth cause of action further asserts that Defendants' conduct violates applicable securities agent registration laws in other states.[260] In a footnote, it lists state statutes from California, Delaware, Washington, Arkansas, and Colorado.[261]

The sixth cause of action alleges that Defendants materially aided the "liable persons" identified in the fourth and fifth causes of action.[262] It does not discuss specific provisions of any particular state statute, instead stating that Defendants are liable "[p]ursuant to applicable state

---

[253] Utah Code Ann. § 61-1-7; SAC 150 ¶ 635–151 ¶ 638.
[254] SAC 148 ¶ 629.
[255] *Id.*
[256] *Id.*
[257] *Id.* at 151 ¶ 639 – 152 ¶ 645; Utah Code Ann. § 61-1-3.
[258] Utah Code Ann. § 61-1-3 (1).
[259] SAC 152 ¶ 642.
[260] *Id.* at 152 ¶ 643.
[261] *Id.*
[262] *Id.* at 153 ¶ 646–154 ¶ 650.

39

law relating to those who materially aid securities violations.[263] In a footnote, it lists state

securities statutes from California, Washington, Utah, and Wyoming.[264]

Each of the Millrock Defendants, Colliers Defendants, Taylor Defendants, Adam Long

Defendants, and SARC move to dismiss one or more of the state law claims on the grounds that

the TIC interests do not qualify as securities under Utah law. The Colliers Defendants

additionally move to dismiss the non-Utah state claims for lack of particularity, failure to state a

claim, or statute of limitation violations.[265]

### A.    Utah Claims

Section 61-1-13 of the UUSA defines the term "security" by providing a long list of

examples.[266] It also lists several interests that are not securities. Relevant to this case, it states:

> (ii) "Security" does not include:
> [. . .]
> (C) [. . .]
> (II) an undivided fractionalized long-term estate in real property that consists of 10
> or fewer owners; or
> (III) an undivided fractionalized long-term estate in real property that consists of
> more than 10 owners if, when the real property estate is subject to a management
> agreement:
>> (Aa) the management agreement permits a simple majority of owners of the
>> real property estate to not renew or to terminate the management agreement
>> at the earlier of the end of the management agreement's current term, or 180
>> days after the day on which the owners give notice of termination to the
>> manager; and
>> (Bb) the management agreement prohibits, directly or indirectly, the
>> lending of the proceeds earned from the real property estate or the use or
>> pledge of its assets to a person or entity affiliated with or under common
>> control of the manager.[267]

---

[263] *Id.* at 154 ¶ 649.
[264] *Id.*
[265] Colliers MTD 19–22. Additionally, the Colliers Defendants move to dismiss the fourth and fifth causes of action for failure to plead with particularity under Rule 9(b). *Id.* at 11. This argument fails for the reasons discussed *supra* in section I.A.2.ii.
[266] Utah Code Ann. § 61-1-13(1)(ee)(i).
[267] Utah Code Ann. § 61-1-13(1)(ee)(ii)(C)(II)–(III).

40

Defendants argue that TIC interests qualify as undivided fractionalized long-term interests and are therefore expressly exempted from the definition of security under the UUSA.[268] They further contend that the fourth, fifth, and sixth causes of action each require the purchase or sale of a security as an underlying element, so they have not been properly alleged.[269]

Plaintiffs respond that not all TIC interests are exempted from being securities under the UUSA, only those that fall into the specific carveouts listed in § 61-1-13(1)(ee)(ii)(C).[270] Plaintiffs argue that these carveouts operate as an affirmative defense that Defendants could raise to rebut the securities claims but that Defendants bear the burden of showing the defense applies.[271] Defendants reply that this impermissibly shifts the burden of proof because Plaintiffs are required to plead sufficient facts to show that the TIC interests are securities under the UUSA.[272]

The UUSA does not categorically exempt TIC interests from the definition of "security." Instead, it provides a definition under which TIC interests may not be securities based on aspects like the number of owners, the existence of a management agreement, and whether the management agreement permits or prohibits certain actions.[273] Because this provision generally operates as an exception, it is most clearly read as providing an affirmative defense that Defendants may raise in response to Utah securities claims. "A plaintiff need not anticipate in the

---

[268] *See, e.g.,* Millrock MTD 19.
[269] *Id.*
[270] Opp'n 32–33.
[271] *Id.*
[272] Reply in Support of Millrock Motion to Dismiss ("Millrock Reply") 9–10, ECF No. 198, filed Mar. 13, 2026.
[273] Utah Code Ann. § 61-1-13(1)(ee)(ii)(C)(II)–(III).

41

complaint an affirmative defense that may be raised by the defendant; it is the defendant's

burden to plead an affirmative defense."[274] In other words, if the UUSA generally presumed that

TIC interests were not securities and listed certain features that allowed them to qualify as

securities, Plaintiffs would have to plead those features in their complaint. But because the

UUSA instead provides specific, limited features that prevent TIC interests from being securities,

it is Defendants' burden to demonstrate that those features are present in this case.

It is only proper to dismiss a claim on the pleadings based on an affirmative defense

"when the complaint itself admits all the elements of the affirmative defense by alleging the

factual basis for those elements."[275] Such is not the case here. The SAC makes no mention of the

number of owners of each property or the content of any management agreements.[276] For this

reason, even if the issue is purely definitional, the SAC simply does not contain factual

allegations sufficient for the court to conclude at this point that Utah Code Ann. § 61-1-

13(1)(ee)(ii)(C)(II) or (III) applies. As a result, the fourth, fifth, and sixth causes of action based

on Utah law do not warrant dismissal on these grounds at this stage.

### B.    Other State Claims

The fourth, fifth, and sixth causes of action also claim to encompass alleged violations of

relevant or applicable laws from other states. Only the Colliers Defendants move to dismiss these

additional state claims.

---

[274] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).
[275] *Id.*
[276] *See generally* SAC; *see also* Opp'n 34–35.

### 1.    Particularity in State Securities Fraud Claims

The Colliers Defendants first argue that the additional state law claims based on fraud in the fourth cause of action fail because they do not indicate with particularity under what statutes they seek relief.[277] They contend that "simply referencing only the state or chapter or article of the statute is not enough" and that Plaintiffs failed to explain the theories or requirements for each state claim.[278] The first cause of action does more than simply reference the state or chapter of additional statutes; it includes the specific securities fraud provisions that it alleges were violated.[279] Moreover, each state provision cited is nearly identical to the Utah provision and Rule 10b-5, with the sole exception of the California statute, which is still similar to Rule 10b-5(b).[280] Thus, the SAC provides sufficient notice as to the statutes it alleges were violated and the requirements thereunder.

### 2.    Failure to State a Claim and Statute of Limitations

#### i.    Arkansas

The Colliers Defendants argue that Plaintiffs' claims relating to the sale of an unregistered security and the sale of a security by an unlicensed broker fall outside Arkansas' three-year statute of limitations.[281] But the SAC does not make any Arkansas state-law claims for the sale of unregistered securities in the fourth cause of action,[282] and the Arkansas statute cited

---

[277] Colliers MTD 18.

[278] *Id.* (quoting *Baston v. Rim San Antonio Acquisition, LLC*, 2016 WL 6901312 at *16 (S.D.N.Y. Nov. 22, 2016)).

[279] *See* SAC 148 ¶ 629 n.1.

[280] *See* Mass. Gen. Laws Ann. ch. 110A, § 101; Del. Code Ann. tit. 6, § 73-201; Wash. Rev. Code Ann. § 21.20.010; Ark. Code Ann. § 23-42-507; Wyo. Stat. Ann. § 17-4-501; Colo. Rev. Stat. Ann. § 11-51-501; Cal. Corp. Code § 25401.

[281] Colliers MTD 19.

[282] *See* SAC at 147–151 ¶ 638 (listing other state claims and statutes related to securities fraud but not related to unregistered securities).

43

in the fifth cause of action does not relate to licensing requirements for securities brokers or agents.[283] Thus, the SAC fails to state any claim for the sale of a security by an unlicensed broker under Arkansas law regardless of the statute of limitations.

### ii.    California

Defendants next argue that Plaintiffs' California claims for the sale of unqualified securities, control person liability, and securities fraud fall outside the relevant statute of limitations.[284] The SAC pleads claims under Cal. Corp. Code § 25401 for securities fraud,[285] § 25210 for broker licensing liability,[286] and § 25403 for aiding securities violations.[287] It does not plead a claim for the sale of unqualified or unregistered securities under California law.

The relevant statute of limitations for California securities fraud states that actions must be brought within five years of the violation or two years of discovery.[288] The Colliers Defendants argue that the only claims with any California connection are those of James Blaisdell, a California plaintiff who purchased an interest in the Draper property in January 2021.[289] As already discussed above in section I.B, the dates on which Plaintiffs discovered or should have discovered the alleged fraud are not clear from the face of the SAC, so the California fraud claims are not barred by the statute of limitations at this stage.

The California aiding or inducement statute cited by Plaintiffs states that violators are deemed to have violated the same underlying statute as the controlled or induced person, so the

---

[283] *Id.* at 152 ¶ 643 n.2; Ark. Code Ann. § 23-42-501 (barring the sale of unregistered securities without mention of broker licensing requirements).
[284] Colliers MTD 19.
[285] SAC 148 ¶ 629 n.1.
[286] *Id.* at 152 ¶ 643 n.2.
[287] *Id.* at 154 ¶ 649 n.3.
[288] Cal. Corp. Code § 25506; Cal. Corp. Code § 25501.
[289] Colliers MTD 20; SAC 18 ¶ 87, 95 ¶ 376(d).

underlying statute of limitations would apply.[290] Thus, Plaintiffs' sixth cause of action for aiding securities fraud under California law is not barred by the statute of limitations for the same reasons just stated. In contrast, the underlying statute for broker licensing liability requires claims to be brought within the earlier of two years after the violation or one year of discovery.[291] Each sale of TIC interests alleged in the SAC occurred more than two years before the initial complaint was filed,[292] so any California aiding and inducing claims based on broker licensing liability are barred by the statute of repose.[293]

### iii.      Colorado

The Colliers Defendants argue that Plaintiffs' claims relating to the sale of an unregistered security and the sale of a security by an unlicensed broker fall outside Colorado's two-year statute of limitations.[294] But the SAC does not make any Colorado state-law claims for the sale of unregistered securities in the fourth cause of action,[295] and the Colorado statute cited in the fifth cause of action does not relate to licensing requirements for securities brokers or agents.[296] Thus, the SAC fails to state any claim for the sale of a security by an unlicensed broker under Colorado law regardless of the statute of limitations.

---

[290] Cal. Corp. Code § 25403.

[291] Cal. Corp. Code § 25507; Cal. Corp. Code § 25503.

[292] SAC 95–96 ¶ 376.

[293] *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 508 (2017) ("[S]tatutes of repose are not subject to equitable tolling.").

[294] Colliers MTD 20.

[295] *See* SAC at 147 – 151 ¶ 638 (listing other state claims and statutes related to securities fraud but not related to unregistered securities).

[296] *Id.* at 152 ¶ 643 n.2; Colo. Rev. Stat. Ann. § 11-51-301 (barring the sale of unregistered securities without mention of broker licensing requirements).

### iv.    Delaware and Massachusetts

The Colliers Defendants next argue that the SAC does not include any facts to show a nexus between the alleged securities violations and Delaware or Massachusetts law.[297] Plaintiffs do not address this argument.[298] "A federal court adjudicating state law claims must apply the forum state's choice of law principles."[299] In Utah, courts apply the "most significant relationship" test to determine "which state's laws should apply to a given circumstance."[300]

Here, the SAC alleges violations of Delaware and Massachusetts securities fraud statutes[301] and a Delaware broker licensing statute.[302]  But the SAC only states that Adam Long temporarily resides in Massachusetts[303] and that certain defendants are Delaware corporations.[304] These bare bones jurisdictional allegations do not state any facts that could plausibly indicate that Massachusetts or Delaware have the most significant relationship to any of the alleged TIC sales or misrepresentations. The SAC fails to state a claim under these states' laws.

### v.    Utah

The Colliers Defendants next argue that the Pine Bluff and Draper plaintiffs' Utah claims in the fourth cause of action for sale of unregistered securities and the fifth cause of action for broker licensing violations are barred by the statute of limitations.[305] UUSA § 61-1-22 requires securities registration and broker licensing claims to be brought within the earlier of five years of

---

[297] Colliers MTD 20–21.
[298] *See generally* Opp'n.
[299] *Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1190 (10th Cir. 1999).
[300] *Volonte v. Domo, Inc.*, 2023 UT App 25, ¶ 74, 528 P.3d 327, 346 (quoting *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 14, 54 P.3d 1054).
[301] SAC 148 ¶ 629 n.1.
[302] *Id.* at 152 ¶ 643 n.2.
[303] *Id.* at 14 ¶ 64.
[304] *Id.* at 7 ¶ 1.
[305] Colliers MTD 21.

46

the violation or two years of discovery.[306] Defendants argue that Plaintiffs should have uncovered any fraud by at least October 2022.[307] But neither of the challenged claims relates to fraud, so Defendants' argument fails to show why Plaintiffs should have discovered the alleged registration and licensing violations prior to two years before filing suit. It is not clear on the face of the SAC when Plaintiffs discovered these alleged violations.

### vi.     Wyoming

Finally, the Colliers Defendants argue that Plaintiffs' Wyoming law claims for selling unregistered securities, unlicensed broker sales, and securities fraud are barred by relevant statute of limitations.[308] The SAC does not attempt to state any Wyoming claims for registration or broker licensing requirements.[309] The relevant Wyoming statute of limitations requires securities fraud claims to be brought within the earlier of five years of the violation or two years of discovery.[310] As already discussed, the dates on which Plaintiffs discovered or should have discovered the alleged fraud are not clear from the face of the SAC, so the Wyoming fraud claims are not barred by the statute of limitations at this stage.

## V.     Seventh, Eighth, and Tenth Causes of Action — Common Law Fraud, Negligent Misrepresentation, and Fraudulent Concealment

Plaintiffs' seventh cause of action alleges common law fraud.[311] In Utah, common law fraud requires plaintiffs to show nine elements:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base

---

[306] Utah Code Ann. § 61-1-22(7).
[307] Colliers MTD 21.
[308] *Id.* at 22.
[309] *See* SAC at 147–151 ¶ 638, 152 ¶ 643 n.2.
[310] Wyo. Stat. Ann. § 17-4-509(k).
[311] SAC 154–155 ¶ 656.

such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[312]

Plaintiffs' eighth cause of action alleges negligent misrepresentation.[313] The elements of negligent misrepresentation in Utah require a showing that "(1) a party carelessly or negligently makes a false representation 'expecting the other party to rely and act thereon,' (2) the plaintiff actually relies on the statement, and (3) suffers a loss as a result of that reliance."[314] "[I]n addition to affirmative misstatements, an omission may be actionable as a negligent misrepresentation where the defendant has a duty to disclose."[315]

Plaintiffs' tenth cause of action is for fraudulent concealment or nondisclosure.[316] In order to prevail on a claim of fraudulent concealment in Utah, "a plaintiff must prove '(1) that the nondisclosed information is material, (2) that the nondisclosed information is known to the party failing to disclose, and (3) that there is a legal duty to communicate.'"[317]

The pleading requirements of Rule 9(b) apply to Plaintiffs' allegations of common law fraud,[318] fraudulent concealment,[319] and negligent misrepresentation[320] because each constitutes

---

[312] *Greene v. Mongie*, 2025 UT App 11, ¶ 21, 564 P.3d 536, 542 (quoting *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35).

[313] SAC 155–157 ¶ 668.

[314] *Moore v. Smith*, 2007 UT App 101, 158 P.3d 562, 573 n.12 (quoting *Smith v. Frandsen,* 2004 UT 55, ¶ 9, 94 P.3d 919).

[315] *Frandsen,* 94 P.3d at 923.

[316] SAC 159–162 ¶ 688.

[317] *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 10, 143 P.3d 283, 286 (quoting *Mitchell v. Christensen,* 2001 UT 80, ¶ 9, 31 P.3d 572).

[318] Fed. R. Civ. P. 9(b).

[319] *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 785 F. Supp. 3d 1009, 1040 n.231 (D. Utah 2025) (noting that Rule 9(b) applies to fraudulent concealment under Utah law); *see also Marcovecchio v. Wright Med. Grp., Inc.*, No. 2:18-cv-00274, 2019 WL 1406606, at *8 (D. Utah Mar. 28, 2019) (applying Rule 9(b) to a fraudulent concealment claim under Utah law).

[320] *Logan v. Bank of Am., N.A.*, No. 2:12-CV-00191-DN, 2012 WL 5874364, at *3 (D. Utah Nov. 20, 2012) ("Under Utah law, negligent misrepresentation constitutes a form of fraud, therefore, the heightened pleading requirements of

a form of fraud. The Colliers Defendants, the Taylor Defendants, GTR, and Long Holdings all move to dismiss one or more of these claims on the grounds that the SAC does not plead the fraudulent elements with sufficient particularity. The Colliers Defendants also move to dismiss the negligent misrepresentation claim on statute of limitations grounds.[321]

### A.     GTR and Long Holdings

GTR moves to dismiss the eighth cause of action on particularity grounds.[322] Long Holdings likewise moves to dismiss the seventh, eighth, and tenth causes of action.[323] As already discussed above in section I.A, the SAC does not plead facts showing that GTR or Long Holdings made any misrepresentations or fraudulent omissions to Plaintiffs, much less with the particularity required by Rule 9(b). Plaintiffs' Opposition does not alter this analysis. Plaintiffs argue generally that the SAC alleges that Defendants made representations about the TIC investments while omitting known facts to the contrary.[324] The Opposition further argues that Long Holdings and GTR were members of Millcreek during a course of conduct that involved the dissemination of Millcreek-branded memoranda containing misrepresentations.[325] These arguments do not point to any specific misrepresentations or omissions in the SAC that are attributable to GTR or Long Holdings and are pled with particularity. The SAC fails to state a claim for common law fraud, negligent misrepresentation, or fraudulent concealment against Long Holdings. It fails to state a claim for negligent misrepresentation against GTR.

---

Rule 9(b) of the Federal Rules of Civil Procedure applies to negligent misrepresentation claims."); *Andersen v. Homecomings Fin., LLC*, No. 2:11-CV-332-TS, 2011 WL 3626828, at *3 (D. Utah Aug. 17, 2011) (same).

[321] Colliers MTD 22–23.

[322] Millrock MTD 11–12.

[323] Adam Long MTD 12–15.

[324] Opp'n 38.

[325] *Id.* at 39.

**B.**    **Spencer Taylor and Smart Cove**

The Taylor Defendants move to dismiss the seventh, eighth, and tenth causes of action for lack of particularity.[326] In contrast to GTR and Long Holdings, the court already determined that the SAC adequately pleads that Spencer Taylor allegedly made at least some potential misrepresentations to plaintiffs Eric Stamm and Claudia Griffin.[327] These alleged misrepresentations satisfy the requirements for common law fraud and negligent misrepresentation. Further, they may be attributed to Smart Cove because the SAC states that Spencer Taylor is Smart Cove's sole member and pleads facts showing that Smart Cove was independently involved in the TIC venture.[328] Thus it can be plausibly inferred that Taylor was acting in part as an agent of Smart Cove when he made the alleged misrepresentations.

However, the SAC does not include facts showing that Spencer Taylor or Smart Cove were aware of and failed to disclose material information. It alleges that Taylor reviewed and distributed marketing materials containing misrepresentations[329] and made other verbal misrepresentations.[330] But the SAC contains no facts indicating with particularity that Taylor knew correct information pertaining to his alleged misrepresentations and failed to disclose it. It does not state what information Spencer Taylor and Smart Cove concealed, how they knew that information, or why they had a duty to divulge it. Therefore, the SAC fails to state a claim for fraudulent concealment against Spencer Taylor and Smart Cove, but it does state a claim for common law fraud and negligent misrepresentation.

---

[326] Taylor MTD 12–13.
[327] *See supra* section I.A.3.ii.
[328] SAC 10 ¶ 22.
[329] *Id.* at 63 ¶¶ 297–98.
[330] *Id.* at 90 ¶ 300.

#### C.      Colliers Group, Colliers USA, and Colliers Intermountain

##### 1.      Common Law Fraud and Fraudulent Concealment

The Colliers Defendants move to dismiss the seventh and tenth causes of action under Rule 9(b). The court has also determined already that the SAC alleges fraudulent misrepresentations against the Colliers Defendants with sufficient particularity.[331] Similarly, the SAC pleads facts alleging with particularity that Colliers' agents failed to disclose known material information. For example, the SAC alleges that in December 2021 Kevin Long told Plaintiffs that a tenant's late rent issues had been resolved but failed to disclose that the rent was actually being paid by another defendant company that he owned.[332] The SAC also alleges that Kevin Long told Bryson Ockey in November 2022 that Millcreek would not take a commission[333] but failed to disclose that several defendants would take substantial commissions.[334] The common law fraud claim and fraudulent concealment claim are adequately pled as to the Colliers Defendants.

##### 2.      Negligent Misrepresentation

The Colliers Defendants also move to dismiss the negligent misrepresentation claim as to John and Gayle Weber, Club Fitness, Peter and Yolanda Weber, Compostella Limited, and James Blaisdell for statute of limitations violations.[335] "Under Utah law, negligent misrepresentation claims are subject to a four-year statute of limitations."[336] When the statute of

---

[331] *See supra* section I.A.2.ii.

[332] SAC 97 ¶¶ 386–88.

[333] *Id.* at 86 ¶ 293(e).

[334] *Id.* at 94 ¶ 373.

[335] Colliers MTD 22–23.

[336] *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1260 (D. Utah 2019); *see also DOIT, Inc. v. Touche, Ross & Co*., 926 P.2d 835, 842 (Utah 1996) (stating that a plaintiff's negligent misrepresentation claims were subject to a four-year statute of limitations period."); Utah Code Ann. § 78B-2-307(4).

limitations for a claim comes from state law, the relevant principles of equitable tolling are derived from state law as well.[337] Utah's applicable statute of limitations does not contain a statutory discovery rule,[338] so only an equitable discovery rule could apply.[339] Utah's equitable discovery rule tolls a fixed statute of limitations in two situations:

> (1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.[340]

Here, Defendants argue that for each of the plaintiffs named above the TIC sales occurred earlier than January 2021, more than four years before the suit was filed.[341] Because a Utah statute of limitations begins to run "'upon the happening of the last event necessary to complete the cause of action,'"[342] the four years would have begun to run when the sales were completed and the damages occurred. Thus, these claims are barred by the statute of limitations on the face of the SAC unless the equitable discovery rule applies.

Plaintiffs respond that the SAC pleads facts showing that concealment was a prominent feature of Defendants' TIC scheme.[343] The court agrees that the equitable discovery rule could

---

[337] *Coit v. Zavaras*, No. CIV.A. 98-CV-02031LT, 2007 WL 2262518, at *6 (D. Colo. July 5, 2007), *report and recommendation adopted*, No. CIV.98CV02031LTB-MEH, 2007 WL 2257656 (D. Colo. Aug. 6, 2007), *aff'd*, 280 F. App'x 791 (10th Cir. 2008); *see also Grays v. Munn,* No. 24-1253, 2025 WL 1924231, at *2 (10th Cir. July 14, 2025) ("Colorado law governs equitable tolling because Grays's federal causes of action borrow from state law for their statutes of limitation.").

[338] Utah Code Ann. § 78B-2-307(4).

[339] *Moore v. Smith*, 2007 UT App 101, ¶ 26, 158 P.3d 562, 570–71; *see also Russell Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 24, 108 P.3d 741, 746–47 (the equitable discovery rule would apply to Utah's general four-year statute of limitations).

[340] *Russell Packard*, 108 P.3d at 747 (quoting *Walker Drug Co. v. La Sal Oil Co.*, 902 P.2d 1229, 1231 (Utah 1995)).

[341] Colliers MTD 22–23.

[342] *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.,* 430 F. Supp. 3d 1247, 1260 (D. Utah 2019) (quoting *S & G Inc. v. Intermountain Power Agency*, 913 P.2d 735, 740 (Utah 1996)).

[343] Opp'n 26.

potentially apply based on the facts included in the SAC. For example, Plaintiffs allege that the tenants were misrepresented as financially secure and reliable and that their unreliability was concealed by Kevin Long when they initially failed to meet their obligations.[344] The SAC adequately pleads negligent misrepresentation against the Colliers Defendants.

## VI.      Ninth Cause of Action — Breach of Fiduciary Duty

Plaintiffs' ninth cause of action alleges breach of fiduciary duty.[345] In Utah, "[b]reach of fiduciary duty claims generally require proof of four elements: the existence of a fiduciary relationship (such as attorney-client, physician-patient, or insurer-insured); breach of the fiduciary duty; causation, both actual and proximate; and damages."[346] "A 'fiduciary relationship' exists between two parties when one of them 'is required to act for the benefit of [the other] on all matters within the scope of their relationship.'"[347] "Utah courts have reserved findings of fiduciary duties to relationships that evince a higher degree of trust than ordinary agency relationships."[348] As the Utah Supreme Court has explained,

> A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise and does have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.[349]

---

[344] SAC 97 ¶ 386–88.

[345] SAC 157–159 ¶ 680.

[346] *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 52, 417 P.3d 95, 109.

[347] *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 2015 UT 55, ¶ 34, 355 P.3d 965, 971 (quoting BLACK'S LAW DICTIONARY 702 (9th ed.2009)).

[348] *Allegis Inv. Servs., LLC v. Arthur J. Gallagher & Co*, 371 F. Supp. 3d 983, 1005 (D. Utah 2019).

[349] *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990) (quoting *Denison State Bank v. Madeira*, 230 Kan. 684, 692, 640 P.2d 1235, 1241 (1982)).

### A.      Spencer Taylor, Smart Cove, and Long Holdings

Defendants Spencer Taylor, Smart Cove, and Long Holdings move to dismiss the ninth cause of action on the grounds that the SAC fails to include any facts that plausibly allege the existence of a fiduciary relationship between them and Plaintiffs.[350] Plaintiffs respond that the SAC describes a coordinated sales and marketing scheme that describes more than arm's-length sales conduct.[351] They argue that the SAC pleads a deliberate effort to cultivate trust and dependence in a vulnerable investor population.[352] Plaintiffs contend that Adam Long participated in structuring and planning the TIC offerings and was in a position to influence how the investments were presented to investors.[353] They further argue that Taylor had direct communication with investors for the purpose of inducing investment decisions and that he also maintained control over the enterprise.[354]

The SAC fails to state facts supporting a fiduciary duty on the part of these defendants. Allegations that Taylor and Long had control over the program and that Taylor made representations about the investments do not show the existence of a special relationship. Taylor and Long had no duty to act primarily for Plaintiffs' benefit just because they were attempting to sell investment interests to those plaintiffs. The SAC pleads no facts from which such a duty could be plausibly inferred. The ninth cause of action fails to state a claim against Long Holdings, Spencer Taylor, or Smart Cove.

---

[350] Taylor MTD 15; Adam Long MTD 15–16.
[351] Opp'n 40–41.
[352] *Id.* at 41.
[353] *Id.*
[354] *Id.* at 41–42.

### B.    Colliers Defendants

The Colliers Defendants also move to dismiss the ninth cause of action, but they argue that the SAC does not plead with particularity facts demonstrating that they committed fraud that would constitute a breach of any duty.[355] As has been discussed, the SAC does adequately plead fraud claims against the Colliers Defendants under Rule 9(b). Therefore, the Colliers Defendants' fiduciary duty argument fails for the same reasons as their other particularity-based arguments.

### VII.    Eleventh Cause of Action — Elder Abuse

The eleventh cause of action alleges elder abuse of John Weber, Gayle Weber, and Claudia Griffin.[356] A Utah statute provides that "[a] vulnerable adult who suffers harm or financial loss as a result of exploitation has a private right of action against the perpetrator."[357] A vulnerable adult is defined to include any individuals age "65 years old or older."[358] The term exploitation is defined to include the five financial exploitation offenses outlined in Utah Code § 76-5-111.4(2).[359] Utah courts have clarified that "the express statutory language of section 26B-6-213(1) limits the private right of action to instances of 'harm or financial loss' that were caused 'as a result of exploitation.'"[360]

---

[355] Colliers MTD 12.

[356] SAC 162 ¶ 689 – 164 ¶ 702.

[357] Utah Code Ann. § 26B-6-213(1).

[358] Utah Code Ann. § 26B-6-201(14), (35).

[359] The private right of action statute also defines "exploitation" to include two other categories of elder exploitation that are not relevant to this case, personal dignity exploitation and sexual exploitation. Utah Code Ann. § 26B-6-201(19). *See also* Utah Code Ann. § 76-5-111.3; Utah Code Ann. § 76-5b-202.

[360] *Williamson v. Farrell*, 2024 UT App 111, ¶ 38, 557 P.3d 214, 225.

The SAC states that John and Gayle Weber and Claudia Griffin were 65 or older when their investments in the TIC interests were induced.[361] The Webers purchased their TIC interest through Club Fitness, a corporation that they own.[362] Ms. Griffin purchased the TIC interests attributed to her through the *Betty L. Griffin 1999 Revocable Trust,* a revocable trust of which she is the successor trustee.[363]

The Colliers Defendants, the Taylor Defendants, and Long Holdings each make similar arguments. They contend that, because John Weber, Gayle Weber, and Claudia Griffin purchased the TIC interests through other entities, the SAC fails to allege that those plaintiffs suffered any harm or that the real parties in interest were vulnerable adults.[364] Plaintiffs respond that whether an elder's property was taken does not turn mechanically on whose name appears on the purchase documents.[365]

The elder exploitation statute defines "harm" as "pain, mental anguish, emotional distress, hurt, physical or psychological damage, physical injury, serious physical injury, suffering, or distress inflicted knowingly or intentionally."[366] The phrase "financial loss" is not defined. The statute only requires that the vulnerable adult suffer a harm or financial loss as a result of exploitation, not that any financial loss be against assets that are directly in the vulnerable adult's name. And Defendants do not cite any authority to this effect. The SAC alleges that John and Gale Weber invested their assets through a corporation they own and that,

---

[361] SAC 162 ¶ 689. The SAC alleges that John and Gayle Weber were 78 and 76 respectively when they purchased their investments. *Id.* at 17 ¶ 80. However, it alleges that Claudia Griffin was only 61 when she purchased her investment. *Id.* at 18 ¶ 90.

[362] SAC 17 ¶ 82, 95 ¶ 376(a).

[363] *Id.* at 19 ¶ 91, 95–96 ¶ 376(f), (g).

[364] *See* Adam Long MTD 16.

[365] Opp'n 44.

[366] Utah Code Ann. § 26B-6-201(20).

due to Defendants' fraud, the investment lost substantial value. In other words, the Webers own an asset and were allegedly induced through fraudulent means to invest that asset's funds in an unsound venture. Under such facts, any resulting diminution in the asset's value could plausibly be seen as a financial loss to the Webers under the plain language of the statute.

In contrast, the SAC does not plead any facts showing that Claudia Griffin has any interest in the *Betty L. Griffin 1999 Revocable Trust*. As trustee, she has a responsibility to administer the funds, but there is no indication that she is a beneficiary of the trust or has any personal right to the trust assets. The SAC does not assert any facts from which it could plausibly be inferred that a loss in the value of the trust would also constitute a financial loss to Ms. Griffin. Defendants also point out that the SAC does not allege facts showing that Claudia Griffin is a vulnerable adult.[367] Though it generally states that the three "elder" plaintiffs were over 65 when they purchased their interests,[368] the SAC more specifically alleges that Ms. Griffin was 61 when she bought the interests.[369] Plaintiffs argue that this is an error and represented that they would file a notice of errata clarifying that Ms. Griffin was 67, not 61, but no such notice or clarification has been filed.[370]

The Taylor Defendants further argue that the SAC does not include any facts showing that Spencer Taylor committed any criminal acts of financial exploitation against John Weber, Gayle Weber, and Claudia Griffin.[371] As discussed above, the SAC fails to state an elder abuse claim for Claudia Griffin. And the SAC does not include any allegations that Spencer Taylor

---

[367] *See* Colliers MTD 23; Taylor MTD 20 n.5; Adam Long MTD 17.
[368] SAC 162 ¶ 689.
[369] Id. at 18 ¶ 90.
[370] Opp'n 44 n.8.
[371] Taylor MTD 21.

ever spoke to or communicated with the Webers. Thus, it does not plausibly allege that Taylor exploited John or Gayle Weber.

The eleventh cause of action fails to state a claim against the Taylor Defendants, the Collier Defendants, or Long Holdings with respect to Claudia Griffin, and it fails to state a claim against the Taylor Defendants with respect to John and Gayle Weber.

## VIII.   Twelfth and Thirteenth Causes of Action — Conspiracy and Aiding and Abetting

Plaintiffs' twelfth and thirteenth causes of action allege civil conspiracy and aiding and abetting.[372] In Utah, the elements of a civil conspiracy claim are "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[373] Because a claim for civil conspiracy "require[s], as one of [its] essential elements, an underlying tort,"[374] dismissal of a civil conspiracy claim is appropriate "[w]here plaintiffs have not adequately pleaded *any* of the basic torts they allege."[375] However, "[i]t is not necessary that each member of the conspiracy commit an unlawful act in furtherance of the conspiracy to be liable."[376]

The Colliers Defendants, the Taylor Defendants, the Adam Long Defendants, Thomas Smith, GTR, and SARC each move to dismiss the conspiracy and aiding and abetting claims on the grounds that the SAC fails to plead the underlying tort of fraud against them with sufficient

---

[372] SAC 164 – 168 ¶ 712.
[373] *Pyper v. Reil*, 2018 UT App 200, ¶ 16, 437 P.3d 493, 497 (quoting *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944).
[374] *Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024, 1029 (quoting *Puttuck v. Gendron,* 2008 UT App 362, ¶ 21, 199 P.3d 971) (alteration in original).
[375] *Id.*
[376] *Pyper*, 437 P.3d at 497.

58

particularity. But this argument misunderstands the necessary elements for civil conspiracy based on fraud. Although "'conspiracy to defraud requires proof of the underlying fraud,' it is not necessary that the underlying fraud have been actually committed by each member of the conspiracy."[377] As long as the complaint adequately alleges that one defendant or actor committed fraud, the underlying tort element is satisfied.

In this case, the SAC asserts federal and state fraud claims against numerous defendants. Several of those defendants have not challenged the fraud allegations, and the court has already determined that the SAC adequately alleges fraud claims against other defendants. Therefore, the SAC pleads an underlying tort to support Plaintiffs' conspiracy claim, even if it does not state a claim for fraud against every defendant named in the conspiracy claim. As for the aiding and abetting claim, Plaintiffs have not shown that such a cause of action exists under Utah law.[378] In the absence of any authority supporting the existence of an aiding and abetting fraud claim under Utah law[379] or any indication as to what its elements might be, the court cannot find that the SAC plausibly pleads such a claim here. The SAC states a claim for civil conspiracy, but the aiding and abetting claim is dismissed as to all moving defendants.

---

[377] *Lawrence v. Intermountain, Inc.*, 2010 UT App 313, 243 P.3d 508, 513 n.4 (quoting *Gildea v. Guardian Title Co. of Utah,* 970 P.2d 1265, 1271 (Utah 1998)).

[378] *See Coroles v. Sabey*, 2003 UT App 339, 79 P.3d 974, 984 n.20 (declining to reach the issue of whether aiding and abetting fraud claims exist in Utah after the trial court dismissed such a claim on the grounds that it was not cognizable under Utah law); *see also Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1253 (D. Utah 2017) ("Utah courts have not yet recognized a claim for aiding and abetting fraud."); *DiTucci v. Ashby*, No. 2:19-CV-277-TC-PMW, 2020 WL 956890, at *5 (D. Utah Feb. 27, 2020) ("[T]he court is not convinced that aiding and abetting fraud is even a permissible cause of action.").

[379] Plaintiffs cite to *Giles v. Mineral Res. Int'l, Inc.*, 2014 UT App 143, ¶ 23 for the proposition that Utah recognizes aiding and abetting liability. Opp'n 43. The citation leads to *State v. Ruiz*, 2014 UT App 143, 329 P.3d 836, *as corrected* (Apr. 9, 2024), which does not discuss aiding and abetting liability. Further searches identified other similarly named cases, *see Giles v. Min. Res. Int'l, Inc.*, 2014 UT App 259, 338 P.3d 825, but these cases also do not discuss aiding and abetting liability.

## IX.    Fourteenth Cause of Action — Negligence

Plaintiffs' fourteenth cause of action alleges negligence.[380] The Colliers Defendants move to dismiss this claim on the same statute of limitations grounds they asserted against the negligent misrepresentation claim.[381] This argument fails for the same reasons the court provided regarding the Colliers Defendants' negligent misrepresentation statute of limitations argument.[382]

## X.    Fifteenth, Sixteenth, and Seventeenth Causes of Action — RICO Claims

Plaintiffs' fifteenth, sixteenth, and seventeenth causes of action allege various civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claims.[383] Specifically, the SAC asserts claims for RICO investment under 18 U.S.C.A. § 1962(a),[384] RICO conduct under § 1962(c),[385] and RICO conspiracy under § 1962(d).[386] Generally, the elements of a RICO claim include "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."[387] Racketeering activity is defined as any "act which is indictable" under federal law.[388] A pattern of racketeering requires at least two predicate acts of racketeering activity.[389]

Section 1962(a) makes it unlawful for a person who receives income derived from a pattern of racketeering in which that person participated as a principal to "use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any

---

[380] SAC 168 ¶ 713–169 ¶ 717.
[381] Colliers MTD 22–23.
[382] *See supra* section V.C.2.
[383] SAC 169–178 ¶ 796.
[384] *Id.* at 169–174 ¶ 741.
[385] *Id.* at 174 ¶ 742–176 ¶ 750.
[386] *Id.* at 176–178 ¶ 756.
[387] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).
[388] *Id.*; *see also* 18 U.S.C.A. § 1961(1).
[389] 18 U.S.C.A. § 1961(5).

interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."[390] To state a § 1962(a) claim, a plaintiff must do more than show that it was injured by racketeering acts; instead, a plaintiff must show that it was injured "by the use or investment of racketeering income."[391]

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."[392] To survive a motion to dismiss, a § 1962(c) claim must plausibly allege that the defendants "each (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity."[393]

Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."[394] "By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)."[395] Conspiracy under § 1962(d) constitutes a violation "when a conspirator adopts the goal of furthering the enterprise, even if the conspirator does not commit a predicate act."[396]

The Colliers Defendants, the Taylor Defendants, the Adam Long Defendants, GTR, Thomas Smith, and SARC each move to dismiss one or more of Plaintiffs' RICO claims on the

---

[390] 18 U.S.C.A. § 1962(a).
[391] *ZibalStar, L.C. v. Conte*, No. 2:17-CV-563, 2018 WL 1578019, at *2 (D. Utah Mar. 27, 2018).
[392] 18 U.S.C.A. § 1962(c).
[393] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (quoting *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)).
[394] 18 U.S.C.A. § 1962(d).
[395] *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006).
[396] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014).

grounds that the SAC does not adequately plead predicate acts of fraud against each moving defendant with sufficient particularity under Rule 9(b).[397] The Taylor Defendants also argue that the RICO claims are barred by the PSLRA because they are based on underlying acts of securities fraud.

### A.  Predicate Fraud and Rule 9(b)

Defendants argue that to state a RICO claim against any individual defendant, the SAC must also include facts showing with particularity that the same individual defendant committed two or more predicate acts of fraud.[398] As an initial matter, this argument fails with regards to § 1962(d) RICO conspiracy allegations. A defendant may be liable under § 1962(d) even without personally committing a predicate racketeering act so long as that defendant adopts the goal of furthering the enterprise.[399]

Similarly, § 1962(a) only requires allegations that a defendant impermissibly invested income that he or she received from participating in a pattern of racketeering activity as a principal.[400] Importantly, the term "principal" is defined to include both committing an offense and aiding, abetting, counseling, commanding, inducing, or procuring the commission of an offense.[401] Thus, a § 1962(a) violation could arise even if a defendant did not personally commit two or more predicate offenses. As has been discussed, the SAC alleges several instances of fraud that either survive this motion or have not been challenged. Because the SAC alleges with particularity several acts that could potentially qualify as predicate fraud offenses, the § 1962(a)

---

[397] *See, e.g.,* Colliers MTD 12.
[398] *See* Adam Long MTD 19; Millrock MTD 12 n.4.
[399] *Broad & Cassel*, 773 F.3d at 1088.
[400] 18 U.S.C.A. § 1962(a).
[401] 18 U.S.C.A. § 2(a).

and (d) RICO claims do not fail solely because they do not allege that each named defendant personally committed multiple acts of fraud.

In contrast, § 1962(c) requires plaintiffs to show that each defendant conducted the affairs of an enterprise through a pattern of racketeering activity."[402] A complaint may not simply "allege that a RICO enterprise conducted its affairs through a pattern of unlawful activity and that the several defendants are part of the enterprise."[403] Instead, a § 1962(c) claim requires plaintiffs to "allege that each defendant conducted the affairs of an enterprise through the defendant's own pattern of racketeering activity."[404] Thus, to state a § 1962(c) claim based on predicate acts of fraud against an individual defendant, the SAC must state with particularity how that individual defendant committed two or more such acts.[405]

For several moving defendants, including GTR, Thomas Smith, Adam Long, Long Holdings, and SARC, the court has already determined that the SAC does not allege any fraud claims against them with sufficient particularity, much less a pattern of fraudulent acts.[406] Thus, Plaintiffs do not state a § 1962(c) claim in the sixteenth cause of action against these defendants. However, for the Colliers Defendants and the Taylor Defendants, the court has concluded that the SAC does allege with particularity that they each committed multiple fraudulent acts or misrepresentations.[407]

---

[402] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (quoting *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)).

[403] *ZibalStar, L.C. v. Conte*, No. 2:17-CV-563, 2018 WL 1578019, at *4 (D. Utah Mar. 27, 2018).

[404] *Id.*

[405] *See George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016) (plaintiff's § 1962(c) allegations satisfied Rule 9(b) and plausibly alleged that both defendants had engaged in a pattern of racketeering activity); *but see BancOklahoma Mortg. Corp. v. Cap. Title Co.,* 194 F.3d 1089, 1103 (10th Cir. 1999) (plaintiff failed to establish that defendants engaged in a pattern of racketeering because they did not commit fraud).

[406] *See supra* section I.A.

[407] *See supra* section I.A.2 and 3; section V.B and C.

## B.     RICO and PSLRA

The Taylor Defendants also move to dismiss the RICO claims on the grounds that those causes of action are barred by the PSLRA.[408] "The PSLRA amended RICO to provide that 'no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO].'"[409] Thus, when RICO claims arise from predicate acts that are based on facts or conduct that would also be actionable as securities fraud, those RICO claims are barred by § 1964(c).[410]

Taylor argues that the PSLRA bar applies here because the alleged predicate acts sound in fraud related to TIC interests that Plaintiffs classify as federal and state securities.[411] Plaintiffs contend that their RICO claims are pled in the alternative as permitted by Rule 8(d) of the Federal Rules of Civil Procedure because the status of the TIC interests is disputed.[412] To this point, Taylor responds that the PSLRA should be read to prevent even the pleading of RICO offenses based on conduct that would also be actionable as securities fraud.[413]

The Tenth Circuit has not directly stated whether RICO and securities fraud claims may be pled in the alternative under § 1964(c), but it has upheld dismissal of RICO claims on PSLRA grounds at the motion to dismiss stage.[414] In *Bixler v. Foster*, the court held that the plaintiffs' RICO claims based on certain allegedly fraudulent stock transfers were correctly dismissed

---

[408] Taylor MTD 23.

[409] *Bixler v. Foster*, 596 F.3d 751, 759 (10th Cir. 2010) (quoting Pub. L. No. 104–67, § 107, 109 Stat. 737, 758 (Dec. 22, 1995), *amending* 18 U.S.C. § 1964(c)).

[410] 18 U.S.C. § 1964(c); *see also Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1269 (D. Colo. 2022) ("Because Plaintiffs could—and actually do—allege violations of the securities laws on the same facts, the PSLRA bar prevents them from framing them as RICO violations as well.").

[411] Taylor MTD 25.

[412] Opp'n 45–46.

[413] Taylor MTD 25.

[414] *See Bixler v. Foster*, 596 F.3d 751, 759 (10th Cir. 2010).

64

under the PSLRA exception.[415] But in *Bixler*, it was clear that the underlying shares were securities, and the plaintiffs only disputed that the transfers at issue did not qualify as the "purchase" or "sale" of securities.[416] There, the court was able to determine as a matter of established law that the transactions did qualify as a purchase and sale of securities and would be barred by the PSLRA.[417]

In contrast, numerous defendants dispute that the TIC interests here qualify as securities.[418] And the court has had no occasion to make any legal determinations regarding the TIC interests' status as federal securities. If they are not securities, then Defendants' allegedly fraudulent conduct would not be actionable as securities fraud and would not be barred by § 1964(c) from underlying a RICO claim. At this stage, and on these specific alleged facts, dismissal of Plaintiffs' RICO claims under § 1964(c) is not warranted.[419]

## XI.    Eighteenth Cause of Action — Unjust Enrichment

Finally, Plaintiffs' eighteenth cause of action alleges unjust enrichment.[420] A claim for unjust enrichment has three elements:

> (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee

---

[415] *Id.* at 759–60.

[416] *Id.*

[417] *Id.*

[418] *See* Millrock MTD 14 n.5; *see also* Machlis Answer 123 ¶ 13, ECF No 151, filed Dec. 19, 2025; Strong Answer 119, ECF No. 155, filed Dec. 19, 2025. This also distinguishes these facts from *Combs v. SafeMoon LLC*, No. 2:22-CV-00642-DBB-JCB, 2024 WL 1347409, at *26 (D. Utah Mar. 29, 2024), where this court dismissed RICO claims based on the PSLRA exception when each defendant had accepted that the underlying instruments were securities for purposes of their motions to dismiss.

[419] *See also Clune v. Barry*, No. 16-CV-4441 (NSR) (JCM), 2024 WL 4266439, at *3–4 (S.D.N.Y. Sept. 23, 2024) (noting that the court should resolve any disputes about whether the underlying instruments at issue qualify as securities before deciding if plaintiffs' RICO claims are barred).

[420] SAC 178 – 179 ¶ 762.

> of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.[421]

A defendant is only liable for unjust enrichment "if he or she received a direct benefit from the plaintiff."[422] "In other words, 'unjust enrichment does not result if the defendant has received only an incidental benefit from the plaintiff's service[s].'"[423] Similarly, allegations that a benefit was conferred on a corporation are insufficient to show that individual corporate officer defendants also received a benefit absent some basis for piercing the corporate veil.[424]

Here, the Taylor Defendants, the Adam Long Defendants, GTR, Thomas Smith, and SARC all argue that the SAC fails to state facts showing that each defendant personally received some benefit.[425] They argue that Plaintiffs rely on group pleadings that generally state that large groups of defendants received benefits without specifying what specific benefits each defendant allegedly received.[426] Plaintiffs respond by arguing that they paid purchase proceeds and that Millrock-affiliated defendants benefited from those proceeds.[427]

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[428] This statement must "inform the defendants of the actual grounds of the claim against them"[429] by stating "what each defendant did to [the plaintiff]; when the defendant did it; [and] how the defendant's action harmed [the

---

[421] *Howard v. Manes*, 2013 UT App 208, ¶ 30, 309 P.3d 279, 289 (quoting *Rawlings v. Rawlings,* 2010 UT 52, ¶ 29, 240 P.3d 754).

[422] *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 65, 355 P.3d 1000, 1018.

[423] *Id.* (quoting *Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, ¶ 26, 167 P.3d 1080) (alteration in original).

[424] *See Brumbelow v. L. Offs. of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 622–23 (D. Utah 2005).

[425] Millrock MTD 13; Taylor MTD 16; Adam Long MTD 20; SARC MTD 11.

[426] *See* SARC MTD 11.

[427] Opp'n 44.

[428] Fed. R. Civ. P. 8(a)(2).

[429] *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

plaintiff]."[430] A complaint fails to satisfy this requirement when it brings claims against defendants as an "undifferentiated group" and states allegations that only make sense for certain defendants in that group.[431]

Plaintiffs' allegations in the eighteenth cause of action broadly assert that "Defendants each received a benefit from Plaintiffs in the form of commissions or other compensation paid from the proceeds of the sale transaction."[432] These conclusory allegations that each defendant received a benefit cannot support an unjust enrichment claim without some supporting factual allegations.[433] Furthermore, such broad assertions against a group of over thirty different defendants, comprising officers, employees, other individuals, corporations, and LLCs, fails to give each individual defendant notice of the actual grounds of the unjust enrichment claim against them. Thus, the court turns to the body of the SAC to determine whether it alleges sufficient facts to plausibly show that each defendant received a direct benefit from Plaintiffs.[434]

The SAC alleges that several parties received commissions or marketing fees from Plaintiffs as part of the TIC transactions.[435] However, it asserts no facts showing that any such payments went to defendants Thomas Smith, GTR, Spencer Taylor, Smart Cove, Adam Long, or

---

[430] *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr*., 492 F.3d 1158, 1163 (10th Cir. 2007).

[431] *Snyder v. ACORD Corp*., No. 1:14-CV-01736-JLK, 2016 WL 192270, at *3 (D. Colo. Jan. 15, 2016), aff'd, 684 F. App'x 710 (10th Cir. 2017).

[432] SAC 179 ¶ 758.

[433] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

[434] The court notes that "Plaintiffs need not, at this stage, detail how exactly the stolen funds were distributed to each Defendant, a fact-intensive inquiry which will require discovery in the Defendants' possession." *Wilson v. Millcreek Com. Props., LLC*, No. 2:24-CV-00624-TC-CMR, 2025 WL 2256685, at *14 (D. Utah Aug. 7, 2025). The complaint need only allege facts from which it could be plausibly inferred that each defendant received some direct benefit from Plaintiffs.

[435] *See* SAC 93 ¶ 369 – 94 ¶ 375 (Colliers, Millcreek, Millrock, Robert M. Levenson, and Green Ivy Real Estate received commissions); 53 ¶ 243, 135 ¶ 581 (Colliers, Millcreek, Millrock, Robert M. Levenson, and Mark Machlis received commissions).

67

Long Holdings. Further, the SAC fails to state facts from which it could be plausibly inferred that any of the above-named defendants received a direct benefit from Plaintiffs. In the absence of factual allegations to that effect, the SAC does not state a claim for unjust enrichment against these defendants. In contrast, the SAC includes more specific allegations related to SARC. It states facts showing that SARC was the owner of the Draper property[436] and that it sold this property to Plaintiffs at an inflated rate.[437] Thus, the SAC plausibly shows that SARC received a direct benefit from Plaintiffs in the form of the excess purchase price that Plaintiffs paid for the Draper property. The eighteenth cause of action fails to state a claim against Thomas Smith, GTR, Spencer Taylor, Smart Cove, Adam Long, and Long Holdings, but it does state a claim against SARC.

**ORDER**

- The first cause of action is dismissed against Thomas Smith; GTR Holdings, LLC; Spencer Taylor; Smart Cove, LLC; Jerald Adam Long; Long Holdings, LLC; and SARC Draper, LLC;

- The second cause of action is dismissed against Kevin Long; GTR Holdings, LLC; Millrock Investment Fund 1, LLC; Colliers International Group, Inc.; Colliers International Holdings (USA), Inc.; Colliers International Intermountain, LLC; Spencer Taylor; Smart Cove, LLC; Long Holdings, LLC; and SARC Draper, LLC;

- The third cause of action is dismissed against Thomas Smith; GTR Holdings, LLC; Spencer Taylor; Smart Cove, LLC; Long Holdings, LLC; and SARC Draper, LLC;

- The fourth cause of action is dismissed in part against Colliers International Group, Inc.; Colliers International Holdings (USA), Inc.; and Colliers International Intermountain, LLC;

- The fifth cause of action is dismissed in part against Colliers International Group, Inc.; Colliers International Holdings (USA), Inc.; and Colliers International Intermountain, LLC;

---

[436] *Id.* at 96 ¶ 379.
[437] *Id.* at 104 ¶¶ 430–31, 137 ¶ 591(f).

68

- The sixth cause of action is dismissed in part against Colliers International Group, Inc.; Colliers International Holdings (USA), Inc.; and Colliers International Intermountain, LLC;

- The seventh cause of action is dismissed against Long Holdings, LLC;

- The eighth cause of action is dismissed against GTR Holdings, LLC and Long Holdings, LLC;

- The ninth cause of action is dismissed against Spencer Taylor; Smart Cove, LLC; and Long Holdings, LLC;

- The tenth cause of action is dismissed against Spencer Taylor; Smart Cove, LLC; and Long Holdings, LLC;

- The eleventh cause of action is dismissed in part against Colliers International Group, Inc.; Colliers International Holdings (USA), Inc.; Colliers International Intermountain, LLC; and Long Holdings, LLC. It is dismissed in its entirety against Spencer Taylor and Smart Cove, LLC;

- The thirteenth cause of action is dismissed against Thomas Smith; GTR Holdings, LLC; Colliers International Group, Inc.; Colliers International Holdings (USA), Inc.; Colliers International Intermountain, LLC; Spencer Taylor; Smart Cove, LLC; Jerald Adam Long; Long Holdings, LLC; and SARC Draper, LLC;

- The sixteenth cause of action is dismissed against Thomas Smith; GTR Holdings, LLC; Jerald Adam Long; Long Holdings, LLC; and SARC Draper, LLC; and

- The eighteenth cause of action is dismissed against Thomas Smith; GTR Holdings, LLC; Spencer Taylor; Smart Cove, LLC; Jerald Adam Long; and Long Holdings, LLC.

All dismissals are without prejudice.

Signed June 8, 2026.

BY THE COURT

_____

David Barlow
United States District Judge

69