WILLIAM B. HELFAND #16686
DOUGLAS C. SMITH #10805
ANDREW R. WELCH, #14028
LEWIS BRISBOIS BISGAARD & SMITH LLP
6550 South Millrock Drive, Suite 200
Salt Lake City, Utah 84121-2318
Telephone: 801.562.5555
Facsimile: 801.562.5510
Bill.Helfand@lewisbrisbois.com
Douglas.Smith@lewisbrisbois.com
Andrew.Welch@lewisbrisbois.com
*Attorneys for Defendants Lew Cramer, Matthew Hawkins,
Gil Borok, and David Josker*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN WEBER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COLLIERS INTERNATIONAL GROUP, INC., et al.,<br><br>Defendants. | **DEFENDANTS LEW CRAMER, MATTHEW HAWKINS, GIL BOROK, AND DAVID JOSKER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**Civil No. 2:25-cv-00162-DBB-DBP**<br><br>**District Judge David Barlow**<br>**Magistrate Judge Dustin B. Pead** |

Defendants Lew Cramer, Matthew Hawkins, Gil Borok, and David Josker (collectively, the "Moving Defendants"), through undersigned counsel, respectfully move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims asserted against them in Plaintiffs' Second Amended Complaint ("SAC").

### RELIEF SOUGHT AND GROUNDS FOR RELIEF

The SAC attempts to impose personal liability on four individuals employed by various Colliers entities, based on their alleged titles and ordinary corporate or brokerage activity. The complaint does not plead sufficient facts to state the respective causes of action asserted against the Moving Defendants.

181345403.1   1

The 180-page pleading does not allege that any Moving Defendant made a representation to any Plaintiff. As to Cramer, the SAC primarily alleges that he approved terms governing Colliers' relationship with Kevin Long and his affiliates and, with Adam Long, mentored sales agents.[1] As to Hawkins, Borok, and Josker, the SAC alleges corporate positions and oversight responsibilities, adds that Josker approved draw payments for sales agents, and recites collectively that the three approved Colliers branding and failed to supervise subsidiaries and agents.[2]

The SAC attributes no misrepresentations or deceptive or manipulative acts to Cramer. Nor does it plead particularized facts supporting a strong inference of scienter, or reliance by Plaintiffs. The control-person claim fails to identify a primary violator whose management or policies Cramer had power to direct. The direct state-securities claim has the same defect. The conspiracy claim pleads a commercial relationship but no facts showing Cramer agreed to the alleged fraudulent objective. Finally, the Court has already rejected Count XIII's common-law aiding-and-abetting theory under Utah law.[3]

The negligence claim against Hawkins, Borok, and Josker likewise depends on corporate titles, supervisory authority, and collective allegations of failed oversight. Utah law does not impose personal tort liability on an executive merely because the executive supervised corporate operations.[4] A plaintiff must identify a duty owed by that individual and personal participation in wrongful conduct.[5] The SAC pleads no Plaintiff communication or investment representation by

---

[1] Second Amended Complaint ("SAC"), Dkt. 147, ¶¶ 150, 152.

[2] SAC ¶¶ 9–20, 713–717.

[3] SAC ¶¶ 62, 150, 152, 597–609, 616–650, 703–712; Memorandum Decision and Order, Dkt. 216 ("June 8 Order"), at 58–61, 69.

[4] *In re Kalinowski*, 482 B.R. 334 (B.A.P. 10th Cir. 2012).

[5] *Id.*

Hawkins, Borok, or Josker. Nor does the SAC plead knowledge or notice on the part of Josker.[6]

Finally, the unjust-enrichment claim is materially indistinguishable from the group pleading this Court already dismissed as to multiple individual defendants. Count XVIII alleges commissions, compensation, access to proceeds, and benefits collectively, but it does not identify money or property that any Plaintiff directly conferred on Cramer, Hawkins, Borok, or Josker.[7] The Court should dismiss all claims asserted against the Moving Defendants.

## STATEMENT OF RELEVANT FACTS

Plaintiffs allege a program involving the marketing and sale of tenant-in-common ("TIC") interests in commercial properties in Pine Bluff, Arkansas; Draper, Utah; Lehi, Utah; and Crockett, Texas.[8] They allege that investors received representations concerning the tenants, leases, guarantees, insurance, valuation, and investment characteristics of those properties.[9] The SAC defines a group called the "Colliers/Long Parties" and attributes many of the alleged representations and marketing activities to that group.[10] The defined group, however, does not include Cramer, Hawkins, Borok, or Josker.[11]

### A. Allegations Against Lew Cramer

Apart from the caption and cause-of-action headings, the SAC identifies Cramer by name in only six numbered paragraphs.[12] The SAC alleges that Cramer resides in Utah and was an agent and representative of Colliers, but does not specify any particular Colliers entity.[13] The SAC

---

[6]SAC ¶¶ 9–20, 293–299, 713–717.

[7]SAC ¶¶ 757–762; June 8 Order at 65–68.

[8]*SAC* ¶¶ 184–186, 293–311, 376(a)–(g).

[9]*SAC* ¶¶ 293–311, 376(a)–(g).

[10]*SAC* ¶¶ 62, 293–299, 597–609.

[11]*SAC* ¶ 62.

[12]*SAC* ¶¶ 63, 136, 139, 150, 152, 753(a).

[13] *SAC* ¶ 63.

further alleges that Kevin Long and Brandon Fugal previously worked with Cramer at Colliers and that Cramer later became Chief Executive Officer of Colliers' Utah division.[14] According to the SAC, in approximately 2020, Cramer approved terms with Long and his affiliates under which Colliers would participate in the TIC program through brokerage, due-diligence, and marketing activities.[15] Cramer and Adam Long are alleged to have mentored sales agents Taylor, McDougal, and Strong.[16] Although he is not personally named, Count XVII states that Cramer approved the terms of the Colliers-Long agreement.[17]

### B. Allegations Against Matthew Hawkins

Apart from the caption and Count XIV's subheading , Hawkins appears by name in four factual paragraphs.[18] The SAC alleges that Hawkins resides in Toronto, Ontario, Canada and Hawkins was a manager Colliers International Intermountain, LLC.[19] According to the SAC, CIGI's website described Hawkins as Vice President and Legal Counsel with responsibility for corporate, regulatory, and significant legal matters involving North American operating subsidiaries.[20] The SAC also alleges that Hawkins was secretary of Colliers International North Texas, LLC.[21] Count XIV later refers to Hawkins, Borok, and Josker collectively.[22]

### C. Allegations Against Gil Borok

Apart from the caption and Count XIV, Borok appears by name in four factual

---

[14] *SAC* ¶¶ 136, 139.
[15] *SAC* ¶ 150.
[16] *SAC* ¶ 152.
[17]*SAC* ¶ 753(a).
[18]*SAC* ¶¶ 9, 11, 13, 19, 713–717.
[19] *SAC* ¶¶ 9, 11,
[20] *SAC* ¶ 13.
[21]*SAC* ¶¶ 13, 19.
[22]*SAC* ¶¶ 713–717.

paragraphs.[23] The SAC alleges that Borok resides in California and was a manager of Colliers International Intermountain, LLC.[24] According to the SAC, Borok was President and CEO of Colliers' United States division and led Colliers' United States region.[25] The SAC also alleges that Borok was manager and director of Colliers International North Texas, LLC.[26] The SAC's detailed marketing allegations do not identify Borok among the persons who provided, reviewed, distributed, or verbally restated the Marketing Materials.[27] Nor do the allegations suggest that Borok had any notice of Kevin Long or Millcreek's conduct.[28]

### D. Allegations Against David Josker

Apart from the caption and Count XIV's subheading, Josker appears by name in in only four paragraphs.[29] Those paragraphs allege that: 1) Josker resides in California, 2) Colliers' website described him as President of the Western Region Brokerage, with responsibility for the performance and entrepreneurial initiatives of offices including Utah, 3) Josker, on Colliers' behalf, approved draw payments for sales agents selling TIC offerings through the Colliers/Long TIC Program, and 4) Josker was vice president of Colliers International North Texas, LLC.[30]

The SAC's allegations regarding marketing do not identify Josker as someone who provided, reviewed, distributed, or verbally restated the marketing materials.[31] Nor do they allege that he had notice of the conduct in question. The SAC does not identify a particular draw payment

---

[23]*SAC* ¶¶ 10–12, 18, 713–717.
[24] *SAC* ¶¶ 10–12.
[25] *SAC* ¶ 12.
[26]*SAC* ¶¶ 10–12, 18.
[27]*SAC* ¶¶ 293–299.
[28] Id.
[29]*SAC* ¶¶ 14–16, 20, 713–717.
[30]*SAC* ¶¶ 14–16, 20.
[31]*SAC* ¶¶ 293–299.

181345403.1 5

as improper or identify a Plaintiff purchase caused by a particular draw payment.[32]

### E. The Remaining Collective Allegations

Count XIV alleges collectively that Hawkins, Borok, and Josker: 1) had authority to direct and exercised substantial control over Colliers subsidiaries and agents, 2) negligently allowed subsidiaries and agents to plan, develop, and execute the alleged scheme and knew or should have known of unlawful acts, 3) were aware of and instructed, ratified, or approved the use of Colliers branding, and 4) failed to regulate, control, observe, train, monitor, supervise, or maintain safeguards.[33] The count alleges collectively that their negligence caused Plaintiffs damages.[34]

Count XVIII, entitled "Unjust Enrichment of Defendants – All Defendants," alleges collectively that Plaintiffs conferred benefits by making their TIC investments; that Defendants received commissions, compensation, access to investment proceeds, or benefits from perpetuation of the alleged scheme; that Defendants knew of those benefits; and that retention was inequitable.[35]

The September 18, 2020 memorandum of understanding from Kevin Long to Cramer ("MOU") states that: 1) the Fund would retain the Kevin Long Team "via Colliers" as its exclusive acquisition agent, 2) acquisition commissions would be processed through Colliers, 3) the Fund would list TIC resale product with the Kevin Long Team "via Colliers," 4) Millcreek would separately perform specialized branding and marketing, 5) Fund Management would receive property-evaluation fees outside commissions processed through Colliers, 6) the arrangement would provide a "clear delineation of Colliers exclusion from any liability in relation to the

---

[32] *SAC* ¶¶ 14–16, 20, 293–299, 713–717.

[33] *SAC* ¶¶ 713–716.

[34] *SAC* ¶ 717.

[35] *SAC* ¶¶ 757–762.

underwriting of properties for acquisition," 7) the Fund documents would indemnify Colliers as broker from property-selection issues, and 8) "[t]he Fund is not owned by or otherwise affiliated with Colliers outside of its relationship as a brokerage client."[36]

## LEGAL STANDARD

This Court has already stated the Rule 12(b)(6), Rule 9(b), and PSLRA standards applicable to this SAC.[37]

## ARGUMENT

### I. THE SAC FAILS TO STATE A CLAIM AGAINST CRAMER.

Count I does not plead a misrepresentation or omission by Cramer, deceptive or manipulative conduct, scienter, reliance, or loss causation. Count III fails to plead that Cramer controlled an identified primary violator. Count IV does not plead a direct state-securities violation by Cramer, and Count VI does not plead any statutory basis for secondary state-securities liability. Count XII does not plead that Cramer agreed to an alleged fraudulent objective. Each claim should therefore be dismissed against Cramer.

### A.      Count I Fails to State a Rule 10b-5 Claim Against Cramer.

Section 10(b) of the Securities Exchange Act makes it unlawful, in connection with the purchase or sale of a security, to use or employ "any manipulative or deceptive device or contrivance" in contravention of rules prescribed by the Securities and Exchange Commission. 15 U.S.C. § 78j(b). Rule 10b-5 implements that prohibition through three distinct provisions. Rule 10b-5(a) prohibits employing a "device, scheme, or artifice to defraud." 17 C.F.R. § 240.10b-5(a). Rule 10b-5(b) prohibits making an untrue statement of material fact or omitting a material fact

---

[36]*SAC* ¶ 150; Memorandum of Understanding, Dkt. 131-1, at 2–3.

[37] Dkt. 216.

necessary to make a statement not misleading. *Id.* § 240.10b-5(b). Rule 10b-5(c) prohibits engaging in an "act, practice, or course of business" that operates or would operate as a fraud or deceit. *Id.* § 240.10b-5(c). A private Rule 10b-5 claim also requires scienter, a connection between the challenged conduct and the purchase or sale of a security, reliance, economic loss, and loss causation.[38] Rule 10b-5 requires conduct be attributable to the defendant.[39]

Count I fails on four independent grounds. First, Rule 10b-5(b) fails because the SAC does not plead a material misrepresentation or actionable omission made by Cramer. Second, Rules 10b-5(a) and (c) fail because the SAC does not plead deceptive or manipulative conduct by Cramer. Third, the SAC does not plead particularized facts supporting a strong inference of Cramer's scienter. Fourth, the SAC does not plead Plaintiffs' reliance on Cramer or loss causation attributable to him. Each ground independently requires dismissal.

### 1.     The SAC Does Not Plead a Misrepresentation or Actionable Omission by Cramer Under Rule 10b-5(b).

Liability under Rule 10b-5(b) requires either a materially false statement made by the defendant or an affirmative statement made by the defendant that is rendered misleading by the omission of a material fact.[40] A pure omission, unconnected to an affirmative statement, is not actionable under Rule 10b-5(b).[41] A defendant "makes" a statement for purposes of Rule 10b-5(b) only if the defendant has "ultimate authority over the statement, including its content and whether and how to communicate it."[42]

---

[38] *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1153 (10th Cir. 2023).

[39] *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011*); In re Overstock Sec. Litig.*, 119 F.4th 787, 801–02 (10th Cir. 2024).

[40] 17 C.F.R. § 240.10b-5(b); *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263–66 (2024).

[41] *Id.* at 263–66.

[42] *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

The SAC does not plead a materially false statement made by Cramer. Instead, it expressly attributes the alleged misrepresentations and the corresponding knowing or reckless conduct to the defined "Colliers/Long Parties," a group that does not include Cramer.[43] The allegations specific to Cramer fail to identify any misrepresentation that he made or over which he exercised ultimate authority as to content and communication.[44] The SAC also does not plead an actionable omission by Cramer. It attributes the alleged omissions to the same defined "Colliers/Long Parties," which excludes Cramer.[45] More fundamentally, an omission is actionable under Rule 10b-5(b) only when the omitted fact is necessary to make an affirmative statement made by the defendant not misleading.[46] However, the SAC identifies no affirmative statement by Cramer to any Plaintiff.[47]

In addressing this same SAC, the Court has already recognized that generalized participation in financing, training, or development does not substitute for identifying the defendant responsible for an alleged misrepresentation. The Court also held that use of the collective "Colliers/Long Parties" label cannot satisfy Rule 9(b) as to an individual merely associated with the group.[48] Not only does the SAC fail to identify Cramer as the maker of any challenged representation, it goes further and expressly excludes him from the very group to which those representations are attributed.[49] The SAC therefore fails to plead that Cramer made a materially false statement within the meaning of Rule 10b-5(b). Without an affirmative Cramer statement, no omitted fact could render a Cramer statement misleading. The SAC therefore does not plead an actionable omission by Cramer under Rule 10b-5(b).

---

[43] *SAC* ¶¶ 62, 598, 603.

[44] *SAC* ¶¶ 63, 136, 139, 150, 152.

[45] *SAC* ¶¶ 62, 601.

[46] *Macquarie*, 601 U.S. at 263–66.

[47] *SAC* ¶¶ 63, 136, 139, 150, 152, 293–299.

[48] June 8 Order at 8–13.

[49] *SAC* ¶¶ 62, 598, 603.

**2.    The SAC Does Not Plead a Deceptive or Manipulative Act by Cramer Under Rule 10b-5(a) or (c).**

Rule 10b-5 requires deceptive or manipulative conduct attributable to the defendant.[50] That conduct need not consist of making a false statement. A defendant who knowingly disseminates another person's false statement with fraudulent intent, for example, may engage in deceptive conduct even though the defendant is not the "maker" of the statement under Rule 10b-5(b).[51] The defendant must nevertheless have engaged in conduct that is deceptive or manipulative.[52] Because Plaintiffs' Rule 10b-5(a) and (c) theories sound in fraud, the SAC must plead with particularity the fraudulent conduct attributable to Cramer.[53]

The SAC does not plead such conduct by Cramer. The Cramer-specific allegations state that he approved terms governing Colliers' commercial relationship with Long and his affiliates and that he and Adam Long mentored certain sales agents.[54] Neither allegation describes conduct that is itself deceptive or manipulative. The SAC does not plead that Cramer communicated false information to an investor, concealed information from an investor, or disseminated another person's allegedly false investment statement. Nor does it plead that he used the commercial relationship or his mentorship of sales agents to deceive Plaintiffs.[55]

Nor does the SAC otherwise plead with particularity a deceptive or manipulative act by Cramer. It alleges broadly that "All Defendants" participated in the TIC program through development, oversight, marketing, financing, referrals, renovations, and concealment. The allegation does not plead what deceptive act Cramer personally performed, when he performed it,

---

[50] 17 C.F.R. § 240.10b-5(a), (c); *In re Overstock Sec. Litig.*, 119 F.4th 787, 801–02 (10th Cir. 2024).

[51] *Lorenzo v. SEC*, 587 U.S. 71, 78–79 (2019).

[52] *In re Overstock*, 119 F.4th at 801–02.

[53] *See Security Sys., Inc. v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1194 (D. Utah 2019).

[54] *SAC* ¶¶ 150, 152.

[55] *SAC* ¶¶ 150, 152, 293–299.

181345403.1  10

or how it operated as a fraud or deceit.[56] That allegation therefore does not supply the particularized deceptive conduct required for liability under Rule 10b-5(a) or (c).

### 3.    The SAC Does Not Plead a Strong Inference of Cramer's Scienter.

The PSLRA requires particularized facts creating a strong inference that Cramer acted with the required fraudulent state of mind.[57] In the Tenth Circuit, scienter requires intent to defraud or recklessness approaching a conscious disregard of a known or obvious danger of misleading investors.[58] Under *Tellabs*, the pleaded inference of scienter must be at least as compelling as the opposing innocent inference.[59]

The SAC's express scienter allegation in paragraph 603 is directed to the "Colliers/Long Parties," a defined group that excludes Cramer. The Cramer-specific paragraphs do not allege that he knew a tenant or guarantor was a shell company, knew a Lloyd's bond did not exist, knew rent would be funded from investor proceeds, knew a property was allegedly overvalued, or knew a particular representation to a Plaintiff was false.[60] Approval of the commercial relationship and mentorship of agents, without facts showing knowledge of the alleged fraud, support an ordinary-business inference at least as compelling as fraudulent intent. Accordingly, Count I independently fails to plead Cramer's scienter.

### 4.    The SAC Does Not Plead Reliance on or Loss Causation Attributable to Cramer.

A private Rule 10b-5 plaintiff must also plead reliance and loss causation.[61] Reliance is an essential element of the § 10(b) private cause of action.[62] Loss causation requires a causal

---

[56]*SAC* ¶ 608.

[57] 15 U.S.C. § 78u-4(b)(2)(A).

[58] *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001).

[59] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007).

[60]SAC ¶¶ 62, 150, 152, 597–609.

[61] *Hogan*, 73 F.4th at 1153.

[62] *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159, 161 (2008).

connection between the challenged conduct and the economic loss.[63]

The SAC alleges that Plaintiffs relied on the challenged investment representations, but it does not identify a representation by Cramer or a Cramer act communicated to any Plaintiff before a purchase.[64] Nor does it allege facts showing that Cramer's approval of the Colliers-Long relationship or mentorship of agents, as distinct from the alleged tenant defaults, guarantees, insurance, valuation, or other challenged representations, caused the investment losses. The missing causal allegations independently reinforce dismissal of Count I as to Cramer. Count I should therefore be dismissed against Cramer.

**B.      Count III Fails Because the SAC Does Not Plead That Cramer Controlled an Identified Primary Violator.**

To state a prima facie claim for control-person liability in the Tenth Circuit, a plaintiff must plead: (1) a primary securities-law violation by a controlled person and (2) facts from which it can reasonably be inferred that the defendant controlled that primary violator.[65] "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of another person's management and policies.[66]

Status or association alone does not establish control.[67]  The complaint must nevertheless plead facts supporting a reasonable inference that the defendant possessed the power to control the particular person or entity that committed the primary violation.[68] In *Maher*, allegations showing only a relationship to an entity that might have controlled the primary violator were insufficient

---

[63] *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1136–37 (10th Cir. 2009).
[64] SAC ¶¶ 293–311, 604–609.
[65] *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304–05, 1306 (10th Cir. 1998); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1107–08 (10th Cir. 2003); 15 U.S.C. § 78t(a).
[66] *Adams*, 340 F.3d at 1108.
[67] *Maher*, 144 F.3d at 1306.; *see also Adams*, 340 F.3d at 1108.
[68] *Maher*, 144 F.3d at 1306.

because they did not establish that the defendants themselves possessed the power to control the primary violator.[69]

The relevant inquiry is therefore not simply whether Cramer held authority or influence somewhere within the overall enterprise, but whether the SAC pleads facts showing that he possessed the power to direct the management and policies of an identified primary violator. Count III's collective control allegations do not identify a primary violator which Cramer controlled. Count III alleges generally that Defendants acted as officers, directors, agents, or control persons; possessed employment or economic influence; exercised control through authority, contractual rights, or bargaining power; participated in business operations; and exercised power over the transactions.[70] Those allegations do not plead which primary violator Cramer controlled or how Cramer possessed the power to direct that person's or entity's management and policies.[71]

The Cramer-specific allegations likewise do not establish control over an identified primary violator. The SAC alleges that Cramer became CEO of the "Utah division of Colliers," but it does not connect that title to control over an identified person or legal entity alleged to have committed a primary securities violation.[72] Cramer's alleged approval of terms governing Colliers' commercial relationship with Long and his affiliates likewise does not plead that Cramer possessed the power to direct Long, Millcreek, Millrock, or another identified primary violator's management or policies.[73] Nor does the allegation that Cramer and Adam Long mentored certain sales agents plead that Cramer possessed the power to direct the management or policies of any of

---

[69] 144 F.3d at 1306.
[70] *SAC* ¶¶ 616–626.
[71] *Id.*
[72] *SAC* ¶ 139.
[73] *SAC* ¶ 150.

181345403.1   13

those agents.[74] Section 20(a) requires facts supporting the further inference that he possessed control over the particular primary violator.

The Court has already applied the same distinction in addressing Count III of this SAC. It rejected a control-person theory where the allegations showed participation in the TIC program and receipt of compensation but did not identify the primary violator controlled or explain how the defendant exercised the requisite control.[75] The allegations against Cramer suffer from the same defect: they describe his position and involvement but do not connect either to the power to direct the management and policies of an identified primary violator. As such, Count III should therefore be dismissed against Cramer.

### C.    Count IV Fails to State a Direct State-Securities Claim Against Cramer.

Count IV fails against Cramer because the SAC does not plead the conduct required to impose direct liability on him under any of its three state-securities theories. Count IV asserts securities-fraud theories under Utah Code § 61-1-1 and analogous statutes of other states, as well as an unregistered-sale theory under Utah Code § 61-1-7.[76] The Court has already recognized, in addressing this same count, that the non-Utah fraud statutes invoked by Plaintiffs are identified with sufficient specificity and are materially similar to the Utah provision and Rule 10b-5.[77] The issue here is therefore not whether Plaintiffs adequately identified the governing state statutes, but whether the SAC pleads the conduct those statutes require as to Cramer. The three theories fail because the SAC pleads no materially false statement or actionable omission by Cramer, no deceptive or fraudulent act by him,[78] and no offer or sale of an unregistered security by Cramer.

---

[74]*SAC* ¶ 152.

[75]June 8 Order at 38.

[76]*SAC* ¶¶ 627–638 & n.1.

[77]June 8 Order at 42–43.

[78] See Supra, Subsection A and accompanying text.

**D.    Count VI Fails to State a Secondary State-Securities Claim Against Cramer Under Any Invoked Statute.**

Count VI fails against Cramer because the SAC does not plead facts satisfying any of the distinct bases for secondary liability provided by the four state statutes it invokes. The SAC alleges that Defendants materially aided the "Liable Persons" identified in Counts IV and V and states, in the alternative, that Defendants were "officers, directors, agents, or other control people" of entities that were Liable Persons, provided information, services, labor, or funds that advanced their conduct, or otherwise materially aided unlawful securities sales.[79] The Court has already recognized that Count VI does not develop a particular statutory theory under any one state's law, but instead alleges material aid generally and lists California, Washington, Utah, and Wyoming statutes in a footnote.[80] Each statute imposes materially different requirements. Count VI does not plead facts satisfying any of them as to Cramer.

**1.    The SAC Does Not Plead Liability Under Utah Code § 61-1-22(4)(a).**

Utah Code § 61-1-22(4)(a) provides separate routes to secondary liability. Relevant here, an officer or director of a seller or buyer liable under subsection (1) may be jointly and severally liable based on that status, while an employee, broker-dealer, or agent must have "materially aid[ed] in the sale or purchase."[81]

The SAC does not plead the required officer/director relationship as to Cramer. Although the SAC alleges that Cramer became Chief Executive Officer of the "Utah division of Colliers," it does not plead that the "Utah division of Colliers" is a legal entity that was a seller or buyer liable under § 61-1-22(1). Nor does it plead that Cramer was an officer or director of a particular Colliers

---

[79]*SAC* ¶¶ 646–650 & n.3.

[80]June 8 Order at 39–40.

[81] Utah Code § 61-1-22(4)(a); *see also Steenblik v. Lichfield*, 906 P.2d 872, 878–79 (Utah 1995).

entity that constituted such a liable seller or buyer.[82] Count VI's generalized allegation that Defendants were "officers, directors, agents, or other control people" of Liable Persons does not cure that deficiency because it does not plead which status applies to Cramer or identify the Liable Person to which that status allegedly relates.[83]

The SAC likewise does not plead material aid under the employee/agent branch. Allegations that Cramer approved a general commercial relationship and mentored sales agents, without facts connecting either activity to a sale or purchase, do not plead that Cramer materially aided a sale or purchase as § 61-1-22(4)(a) requires.

### 2.    The California Theory Fails Under the Statute the SAC Invokes.

Count VI expressly invokes California Corporations Code § 25403.[84] Section 25403 provides that a person who knowingly controls and induces another person to violate California securities law, or knowingly provides substantial assistance to another person's violation, is deemed to violate the same provision.[85] California law, however, provides no private right of action under § 25403.[86]  Because Count VI seeks private damages against Cramer under § 25403, the California theory fails on that basis.

### 3.    The SAC Does Not Plead Liability Under Wash. Rev. Code § 21.20.430(3).

Washington law likewise distinguishes among different bases for secondary liability. Wash. Rev. Code § 21.20.430(3) imposes joint and several liability on a person who directly or indirectly controls a liable seller or buyer; a partner, officer, director, or person occupying a similar status or function of that seller or buyer; an employee who materially aids the transaction; and

---

[82]*SAC* ¶¶ 139, 646–650.

[83]*SAC* ¶ 647(a).

[84]*SAC* ¶ 649 n.3.

[85] Cal. Corp. Code § 25403(a)–(b).

[86] *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 253–54 (2007).

certain securities professionals who materially aid the transaction.[87] Officer or director liability does not require a separate showing of control or material aid, but the individual must hold that status with the particular liable seller or buyer.[88] A control-person theory requires active participation in the seller's operations generally and power to control the particular transaction or activity underlying the primary violation.[89]

The SAC does not plead any of those relationships as to Cramer. It does not plead that Cramer was an officer or director of a particular seller or buyer liable under Washington law.[90] Nor does it plead that he controlled such a seller or buyer or possessed power to control a particular transaction underlying the alleged violation.[91] Finally, the allegations that Cramer approved a general commercial relationship and mentored sales agents do not plead that he materially aided a Washington Plaintiff's transaction.[92]

### 4.      The SAC Does Not Plead Liability Under Wyoming Statute § 17-4-509(g).

Wyoming's statute is narrower. Section 17-4-509(g) imposes secondary liability, as relevant here, on a person who directly or indirectly controls a person subject to primary liability and on a broker-dealer, agent, investment adviser, or investment adviser representative who materially aids the conduct giving rise to that liability.[93] Unlike Utah and Washington, Wyoming does not separately impose liability merely because an individual is an officer or director.[94] Thus, Cramer's corporate title alone cannot establish liability under the Wyoming provision.

---

[87] Wash. Rev. Code § 21.20.430(3).

[88] *Hines v. Data Line Sys., Inc.*, 114 Wash. 2d 127, 149–50 (1990).

[89] *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wash. App. 840, 866–68 (2013).

[90] *SAC* ¶¶ 139, 646–650.

[91] *SAC* ¶¶ 139, 150, 152.

[92] *SAC* ¶¶ 150, 152, 646–650.

[93] Wyo. Stat. § 17-4-509(g)(i), (iv).

[94] *Id.*

The SAC does not plead that Cramer directly or indirectly controlled a person subject to primary liability under § 17-4-509. It does not identify such a person whose management, policies, or allegedly violative transaction Cramer had power to direct.[95] The SAC's general allegation that Cramer was an "agent and representative of Colliers" likewise does not plead that he was a broker-dealer, securities agent, investment adviser, or investment adviser representative within the categories covered by § 17-4-509(g)(iv).[96] Even apart from that deficiency, the SAC does not plead that Cramer materially aided the conduct giving rise to a Wyoming securities violation. His alleged approval of the Colliers-Long commercial relationship and mentorship of sales agents are not connected to any particular Wyoming transaction or underlying violation.[97] Because the SAC pleads neither the control nor the statutory material-aid relationship required by § 17-4-509(g), Count VI fails against Cramer under Wyoming law.

**E.      Count XII Does Not Plead Cramer's Agreement to the Alleged Fraudulent Objective.**

Count XII fails against Cramer because the SAC does not plead facts supporting a reasonable inference that he agreed to the alleged fraudulent objective. Utah civil conspiracy requires "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[98] The meeting-of-the-minds element requires facts showing concert of action or circumstances from which it can reasonably be inferred that the alleged unlawful acts were undertaken in furtherance of a common design.[99] Because the alleged conspiracy is fraud-

---

[95] *SAC* ¶¶ 139, 150, 152, 646–650.

[96] *SAC* ¶ 63.

[97] *SAC* ¶¶ 150, 152, 646–650.

[98] *Pyper v. Reil*, 2018 UT App 200, ¶ 16

[99] *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 35.

based, the facts supporting the alleged agreement and participation must also be pleaded with particularity.[100] Conduct consistent with an ordinary lawful business relationship, without more, does not establish agreement to an unlawful objective.[101]

The Court has already recognized that Plaintiffs need not plead that every alleged conspirator personally committed the underlying fraud.[102] The relevant deficiency as to Cramer is therefore the separate requirement that Cramer himself agreed to the alleged fraudulent objective.

The SAC does not plead that agreement. It alleges only generally that Defendants as a whole agreed expressly, tacitly, or by implication to accomplish the alleged fraud and conceal it after Plaintiffs invested.[103] As to Cramer, the SAC alleges only that he approved terms governing Colliers' commercial relationship with Long and his affiliates and that he and Adam Long mentored certain sales agents.[104] It does not plead any communication in which Cramer agreed to misrepresent tenant or guarantor finances, insurance, property values, the source of rent payments, 1031 compliance, or any other allegedly fraudulent fact.[105]

The MOU does not supply the missing agreement. It describes brokerage, acquisition, marketing, and related commercial functions and states that the Fund "is not owned by or otherwise affiliated with Colliers outside of its relationship as a brokerage client."[106] Those terms demonstrate a commercial relationship, but nothing more. They do not show that Cramer agreed to use shell tenants or guarantors, nonexistent insurance, investor-funded rent, inflated valuations,

---

[100] *Fidelity National Title Insurance Co. v. Worthington*, 2015 UT App 19, 344 P.3d 156, 161 ¶ 18.
[101] *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 792 (Utah Ct. App. 1987).
[102] June 8 Order at 58–59.
[103] *SAC* ¶¶ 703–704.
[104] *SAC* ¶¶ 150, 152.
[105] *SAC* ¶¶ 150, 152, 703–707.
[106] Memorandum of Understanding, Dkt. 131-1, at 2–3.

or other allegedly fraudulent means to induce Plaintiffs' purchases. The SAC fails to plead the meeting-of-the-minds element required for civil conspiracy. Count XII should therefore be dismissed against Cramer.

## II. COUNT XIV FAILS TO STATE A NEGLIGENCE CLAIM AGAINST HAWKINS, BOROK, OR JOSKER.

Count XIV fails against Hawkins, Borok, and Josker because the SAC attempts to impose personal negligence liability based on their corporate positions and alleged supervisory responsibilities without pleading the individual conduct required under Utah law. The SAC does not plead any duties owed by Hawkins, Borok, or Josker.  Moreover, the SAC pleads no participation in any wrongful conduct by these defendants. Count XIV also fails to plead how any particular act or omission by Hawkins, Borok, or Josker caused Plaintiffs' injuries. Independently, the negligence claim seeks losses arising from the failed TIC investments without pleading an independent tort duty owed by these executives to Plaintiffs and is therefore barred by Utah's economic-loss rule.

### A.    The SAC Does Not Plead a Duty Owed or Personal Participation in Wrongful Conduct by Hawkins, Borok, or Josker.

In Utah, an officer is not personally liable for a corporation's torts, or for torts committed by other officers or agents, merely because the individual holds corporate office.[107] Personal liability requires a duty owed by the individual officer to the injured third party together with the officer's participation in, direction of, or approval of the wrongful conduct that caused the injury.[108]

Personal liability requires a nexus between the officer's own conduct and the wrongful

---

[107] *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 19, 70 P.3d 35; *Bennett v. Huish*, 2007 UT App 19, ¶ 17, 155 P.3d 917.
[108] *In re Kalinowski*, 482 B.R. 334 (B.A.P. 10th Cir. 2012).

activity alleged to have injured the plaintiff. Count XIV does not plead that nexus. It alleges that Hawkins, Borok, and Josker possessed authority over Colliers subsidiaries and agents, knew or should have known those subsidiaries and agents were committing unlawful acts, approved or ratified the use of Colliers branding, and failed to regulate, train, monitor, supervise, or maintain safeguards.[109] These allegations describe only corporate authority and supervisory functions. They do not plead a duty arising from a relationship between any of these executives and any Plaintiff. Nor do they allege participation by any of them in the wrongful conduct allegedly causing Plaintiffs' injuries. And the allegation that Josker approved draw payments likewise does not plead participation in the underlying tort. Count XIV therefore does not plead the personal duty and participation required for individual officer liability.

### B. Count XIV Fails to Plead Causation Because It Attributes Plaintiffs' Injuries Only to the Defendants Collectively.

Count XIV independently fails because the SAC does not plead facts connecting an act or omission by any individual Moving Defendant to Plaintiffs' alleged injuries. A complaint must plead facts making it plausible that the particular defendant's conduct caused the alleged harm rather than merely reciting causation as a conclusion.[110] The SAC's sole causation allegation states only that "[b]y reason of" the negligence of the Colliers entities, Hawkins, Borok, and Josker, Plaintiffs suffered unspecified damages.[111] It does not plead which act or supervisory omission by Hawkins, Borok, or Josker caused a particular Plaintiff to purchase a TIC interest, caused a particular misrepresentation to reach a Plaintiff, prevented disclosure of a particular fact, or otherwise produced an identified loss.[112] A collective assertion that Plaintiffs suffered damages

---

[109]*SAC* ¶¶ 713–716.

[110] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[111]*SAC* ¶ 717.

[112]*SAC* ¶¶ 713–717.

"by reason of" the defendants' negligence does not plead the missing causal connection between each individual defendant's conduct and Plaintiffs' injuries.

**C. Utah's Economic-Loss Rule Independently Bars Count XIV Because the SAC Seeks Transaction-Based Losses Without Pleading an Independent Duty.**

Count XIV also fails because the negligence claim seeks recovery for losses arising from Plaintiffs' investment transactions without pleading an independent tort duty owed by Hawkins, Borok, or Josker. Under Utah's economic-loss rule, a plaintiff generally cannot recover purely economic losses in negligence absent physical injury, damage to other property, or breach of a recognized duty that exists independently of the parties' commercial obligations.[113] The independent-duty inquiry turns on whether the law recognizes a duty existing apart from the commercial relationship and the subject matter of the transaction; the absence of contractual privity with the particular defendant does not itself create such a duty.[114]

The substance of the claim, rather than isolated allegations elsewhere in the pleading, controls the economic-loss analysis. Count XIV alleges that these executives negligently supervised Colliers subsidiaries and agents in connection with the development and execution of the TIC program and concludes only that Plaintiffs suffered "damages" as a result.[115] It does not allege that Hawkins, Borok, or Josker caused bodily injury or property damage to any Plaintiff. Nor does it connect the generalized allegation elsewhere in the SAC that some Plaintiffs suffered physical and emotional injury to the conduct underlying Count XIV.[116] The injuries otherwise alleged from the TIC transactions are the loss of investment value, lost rental income, expenses

---

[113] *Hermansen v. Tasulis*, 2002 UT 52, ¶¶ 14–17; *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶¶ 18–19.
[114] *Hermansen*, 2002 UT 52, ¶¶ 14–17; *Davencourt*, 2009 UT 65, ¶¶ 18–19.
[115] *SAC* ¶¶ 713–717.
[116] *SAC* ¶¶ 713–717; *SAC* at 6.

associated with the properties, and related financial losses.[117]

The SAC also does not plead an independent duty owed by Hawkins, Borok, or Josker to Plaintiffs. It alleges no professional, fiduciary, contractual, or other special relationship between any Plaintiff and these executives.[118] The duty asserted in Count XIV is instead a duty arising from the executives' alleged responsibility to supervise Colliers subsidiaries and agents.[119] General corporate supervisory responsibilities do not create an independent tort duty required by Utah law to third-party investors sufficient to avoid the economic-loss rule.[120]

The SAC's generalized assertion that some Plaintiffs suffered physical and emotional injury does not alter the character of Count XIV. That allegation does not identify Hawkins, Borok, or Josker, does not allege that any conduct by them caused such injury, and does not seek recovery for such injury within Count XIV.[121] Count XIV remains a negligence claim predicated on alleged corporate oversight failures that allegedly resulted in Plaintiffs' failed investments. Because Count XIV seeks transaction-based economic losses without pleading physical injury caused by these defendants or an independent duty owed by Hawkins, Borok, or Josker, Utah's economic-loss rule independently bars the negligence claim.

### III. COUNT XVIII FAILS TO STATE AN UNJUST-ENRICHMENT CLAIM AGAINST ANY MOVING DEFENDANT.

In Utah, unjust enrichment requires "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention

---

[117]*See, e.g., SAC* ¶¶ 357–376, 427–439, 465–476, 497–503.

[118]*SAC* ¶¶ 9–20, 713–717.

[119]*SAC* ¶¶ 713–716.

[120] *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 19, 70 P.3d 35; *Hermansen v. Tasulis*, 2002 UT 52, ¶¶ 14–17; *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶¶ 18–19.

[121]*SAC* at 6; *SAC* ¶¶ 713–717.

by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[122] The benefit must be received directly from the plaintiff; an incidental benefit is insufficient.[123] A benefit conferred on a corporation likewise does not establish that an individual corporate officer received that benefit.[124]

The Court has already applied these principles to Count XVIII of this SAC.[125] In doing so, the Court held that an allegation that "Defendants each received a benefit from Plaintiffs in the form of commissions or other compensation paid from the proceeds of the sale transaction" was conclusory without factual allegations showing the benefit received by the particular defendant.[126] The Court further explained that Rule 8 requires allegations sufficient to inform each defendant of the actual grounds of the claim and that allegations against an undifferentiated group cannot satisfy that requirement when they do not show what each defendant received.[127] Plaintiffs need not trace every dollar at the pleading stage, but they must plead facts from which it can plausibly be inferred that each defendant received some direct benefit from Plaintiffs.[128]

The SAC does not plead facts supporting a plausible inference that Cramer, Hawkins, Borok, or Josker received a direct benefit from Plaintiffs. Count XVIII states generally that Plaintiffs conferred benefits by making their TIC investments and that "Defendants each received a benefit" through commissions or compensation, access to investment proceeds, and perpetuation of the alleged scheme.[129] Those allegations do not state what alleged benefit Cramer, Hawkins,

---

[122] *Howard v. Manes*, 2013 UT App 208, ¶ 30.

[123] *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 65.

[124] *Brumbelow v. L. Offs. of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 622–23 (D. Utah 2005).

[125] June 8 Order at 65–68.

[126] *Id.* at 66–67; *SAC* ¶ 758.

[127] June 8 Order at 66–67.

[128] *Id.* at 67 n.434.

[129] *SAC* ¶¶ 757–759.

Borok, or Josker personally received or which Plaintiff conferred the alleged benefit.

The transaction-specific allegations do not supply the missing facts. The SAC identifies commissions or other transaction payments to Colliers, Millcreek, Millrock, Robert Levenson, and Green Ivy Realty, among others, but does not allege that any commission or other portion of Plaintiffs' purchase proceeds was paid to Cramer, Hawkins, Borok, or Josker.[130] The allegations concerning the Moving Defendants instead describe Cramer's relationship with Colliers and the TIC program, Hawkins's and Borok's corporate positions, and Josker's approval of draw payments to sales agents. They do not plead that Plaintiffs transferred money or property to any of those individuals or that any of them personally received Plaintiffs' investment proceeds.[131]

The Court's disposition of Count XVIII confirms the distinction. The Court dismissed the claim against Thomas Smith, GTR, Spencer Taylor, Smart Cove, Adam Long, and Long Holdings because the SAC alleged no facts showing that those defendants received a direct benefit from Plaintiffs.[132] By contrast, the Court permitted Count XVIII to proceed against SARC because the SAC specifically alleged that SARC owned the Draper property and sold it to Plaintiffs at an inflated price, permitting the inference that SARC directly received Plaintiffs' excess purchase proceeds.[133] The SAC pleads no comparable transfer, payment, or receipt of purchase proceeds by Cramer, Hawkins, Borok, or Josker. Accordingly, Count XVIII should be dismissed.

## CONCLUSION

For these reasons, Lew Cramer, Matthew Hawkins, Gil Borok, and David Josker respectfully request dismissal of the causes of action asserted against them.

---

[130]*SAC* ¶¶ 365–375.

[131]*SAC* ¶¶ 9–20, 63, 136, 139, 150, 152.

[132]June 8 Order at 67–68.

[133]*Id.* at 68; *SAC* ¶¶ 379, 430–431, 591(f).

DATED:  August 4, 2026          **LEWIS BRISBOIS BISGAARD & SMITH LLP**


By:  */s/ Douglas C. Smith*
William B. Helfand
Douglas C. Smith
Andrew R. Welch
*Attorneys for Defendants Colliers*
*International Intermountain, LLC,*
*Colliers International Holdings (USA),*
*Colliers International Group, Lew Cramer,*
*Matthew Hawkins, Gil Borok and David*
*Josker*


## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August, 2026, I caused a true and correct copy of the foregoing **DEFENDANTS LEW CRAMER, MATTHEW HAWKINS, GIL BOROK, AND DAVID JOSKER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** to be electronically filed via the CM/ECF system, which sent notification of such filing to all counsel of record in this case.


/s/ Belle Wade

181345403.1 26